UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| DR DISTRIBUTORS, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 21 CENTURY SMOKING, INC., and | ) | No. 12 CV 50324 |
| BRENT DUKE, | ) | Magistrate Judge Iain Johnston |
|     Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| 21 CENTURY SMOKING, INC., | ) | |
|     Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DR DISTRIBUTORS, LLC, et al., | ) | |
|     Counterdefendants, | ) | |

## **MEMORANDUM OPINION AND ORDER**

### I. INTRODUCTION

Consistency in judicial decision making is important. Indeed, the doctrine of stare decisis – a bedrock of the American judicial system – is based upon the important considerations of consistency and predictability in judicial decisions. *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 627 (1974) (Powell, J., concurring). And the less well known judicial doctrine of "goose-and-gander" is likewise based upon consistency. *See Newman v. Chekrite California, Inc.*, 156 F.R.D. 659, 600 (E.D. Cal. 1994) (invoking the similar "same monks, same haircuts" rule).

This Court strives to be consistent, not only within a case, but also between cases. The only way the Court can achieve consistency is to adhere to the Federal Rules of Civil Procedure and to be true to those judicial decisions that faithfully and accurately follow those rules.

Before the Court is a Motion to Compel Deposition ("Motion") by 21 Century Smoking, Inc. and Brent Duke ("Defendants") that seeks to require the deposition of Plaintiff's former attorney to testify about Plaintiff's application for the trademark

1

and use of the mark at issue. [Dkt. #155] When this Court applies the relevant legal standard under Rule 16(b)(4) to the circumstances presented, the Court denies Defendants' Motion, just as it previously denied Plaintiff's motion to amend its affirmative defenses to Defendants' counterclaims. [Dkt. #154]

## II. FACTS

This case has a long history. The Complaint was filed on September 7, 2012. [Dkt. #1] There are currently 161 docket entries.

After the Complaint was filed, Magistrate Judge Mahoney entered a case management order on November 14, 2012, giving the parties nearly a year to complete discovery; namely, until October 1, 2013. [Dkt. #16]

A motion for preliminary injunction and for partial summary judgment followed, with Judge Kapala granting in part and denying in part both motions. [Dkt. ##26, 80] On July 29, 2013, Magistrate Judge Mahoney extended fact discovery to June 2, 2014, adding eight more months to complete fact discovery. [Dkt. #45]

Following Magistrate Judge Mahoney's retirement, the case was transferred to the undersigned. [Dkt. ##74, 76] After Judge Kapala's ruling on the motion for partial summary judgment, on August 25, 2014, this Court held a settlement conference. Obviously, that conference was unsuccessful. [Dkt. ##83, 84]

On September 3, 2014, Defendant filed the parties' revised proposed case management order. Among other things, this order states the following: "**These dates will not be amended absent a showing of good cause. The parties understand that motions for extension of time should be brought as soon as possible, but at a minimum, before the cut-off date, and a party's failure to do so runs the serious risk that the motion will be denied.**" [Dkt. #85]

On September 5, 2014, the Court entered a revised case management order, adopting the parties proposed fact discovery cut-off date of April 1, 2015. [Dkt. #86]

Based upon an unopposed motion by Plaintiff, on March 4, 2015, the Court extended fact discovery to July 1, 2015. [Dkt. #116] The Court's order stated the following: "This is the FINAL extension." As the Seventh Circuit recently and correctly noted, "When a judicial order includes key phrases in capital letters . . . it is the literary equivalent to shouting." *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 875 n.3 (7th Cir. 2015).

Throughout the spring of 2015, the parties litigated discovery motions, including two motions relating to certain documents and information regarding Plaintiff's investigation into the mark at issue as well as the application for the trademark.

Defendants' first motion was filed on April 15, 2015. [Dkt. #120] This motion was premised on a bad faith argument, seeking documents purportedly protected by the attorney-client privilege. In this bad faith motion, Defendants sought Plaintiff's responses to various discovery requests and production of documents for an *in camera* inspection. The bad faith motion also noted that Charles P. Guarino, Esq. was involved in the application and investigation into the trademark. [Dkt. #120, pp. 4-5] Plaintiff opposed the bad faith motion and objected to producing the documents for an *in camera* inspection. [Dkt. #124] On April 28, 2015, the Court denied the bad faith motion without prejudice and did not require Plaintiff to produce the documents to the Court. [Dkt. #125]

With the July 1, 2015 fact discovery cut-off looming large, at the end of June, the parties jammed in a tremendous amount of discovery, including multiple depositions of principals and witnesses. By this time, the case had been pending for almost three years; discovery dates had been extended; and the Court gave the March 4, 2015 warning shot that fact discovery would not be extended. "When parties wait until the last minute to comply with a deadline, they are playing with fire." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996).

Defendants' second motion was filed on June 22, 2015. [Dkt. #133] With this motion, Defendants sought the Court's assistance in requiring Plaintiff to answer questions and produce documents regarding the use of the 21 Century Smoking mark, or alternatively, sought to bar Plaintiff from using evidence relating to this issue. Defendants based this motion on a waiver of the attorney-client privilege. According to Defendants, Plaintiff waived the attorney-client privilege by placing the circumstances "at issue." Essentially, Defendants argued that Plaintiff was raising an advice-of-counsel defense, which would have waived the privilege. Plaintiff claimed it was not asserting an advice-of-counsel defense, and thus, did not waive the privilege.

On that same day (June 22, 2015), Defendants served a notice of deposition for Charles P. Guarino, Esq. This deposition was scheduled to occur on June 29, 2015. This is the relevant deposition for purposes of this Motion. Mr. Guarino was an attorney in the firm that currently represents Plaintiff and was involved in obtaining the trademark at issue in this case as well as the investigation regarding

3

the mark at issue. Back in March of 2013, Plaintiff appears to have first identified Mr. Guarino as a person with knowledge and involved in the trademark application and mark investigation. Later, Plaintiff again identified Mr. Guarino in its privilege log.

On June 25, 2015, while gathered for another deposition, the parties collectively "agreed" to postpone Mr. Guarino's deposition. The "agreement" was stated by Defendants' counsel and transcribed by the court reporter as follows: "We'll postpone that deposition of Mr. Charles Guarino pending the hearing and decision on the motion to compel which is presently set for July 28th and we would at that point – you would not oppose our being able to take his deposition subject to whatever is the outcome of that – of our motion?" In response, Plaintiff's counsel stated, "I agree. Thank you. And that is what we agreed to."[1]

The July 1, 2015, fact discovery cut-off passed before Mr. Guarino was deposed. By this time, no motion was filed regarding this disputed deposition. (In hindsight, Defendants likely did not file a motion because they thought that there was an agreement, a belief that was apparently mistaken both factually and legally.)

Plaintiff vigorously opposed the waiver motion. And, in doing so, Plaintiff noted that Defendants had subpoenaed Mr. Guarino for a deposition relating to the application of the trademark and the investigation into Defendants' use of the mark. In this opposition filing of July 9, 2015, Plaintiff sought a protective order to prevent Mr. Guarino's deposition. [Dkt. #139, pp. 14-15] This filing put Defendants on notice that if there were, in fact, an agreement, then Plaintiff was reneging on it. [Dkt. #140, p. 9]

---

[1] Although the Court encourages parties to reach agreements on discovery issues (despite the fact that the "agreement" in this case turned out not to really be an "agreement"), the Court does not find that this agreement was proper and, more importantly, effective under the circumstances of this case. As noted previously, the Court set specific deadlines to complete fact discovery, and, in fact, gave a final extension. That deadline was July 1, 2015. Rule 16 case management orders would be a nullity if parties could freely modify them on their own. Indeed, Rule 29 states the following: "*Unless the court orders otherwise*, the parties may stipulate that . . . a deposition may be taken before any person, at any time or place, on any notice, and in the manner specified – in which event it may be used in the same way as any other deposition." Fed. R. Civ. P. 29 (emphasis added). This Court ordered otherwise. The parties were not free to agree to disregard the Court's order. *See, e.g.,* 6 *Moore's Federal Practice,* § 29.07 (Matthew Bender 3d ed.) ("Courts have the authority to reject stipulations."); 8A *Federal Practice and Procedure*, Civil, § 2092, p. 425 (3d 2010).

After the parties fully briefed the waiver motion, on July 29, 2015, the Court required Plaintiff to produce the documents for an *in camera* inspection. [Dkt. #142] Plaintiff provided the documents on August 6, 2015. [Dkt. #143]

On September 1, 2015, the Court correctly, but reluctantly,[2] denied the waiver motion. [Dkt. #144] In doing so, the Court found that the waiver argument was forfeited because it was not raised at the same time as the bad faith argument. [Dkt. #144, pp. 3-4] Moreover, the Court found that, under various case-law and based upon the facts before the Court, the attorney-client issue had not been waived. [Dkt. #144, pp. 4 – 7]

On September 15, 2015, the Court held a status hearing. [Dkt. #145] During this status hearing, Defendants verbally informed the Court that they might be filing a motion to compel the deposition of Mr. Guarino.

Meanwhile, the parties filed other motions. And on October 30, 2015, this Court denied a motion [Dkt. #146] by Plaintiff to amend its affirmative defenses to Defendants' counterclaims. [Dkt. #154] The basis for denying Plaintiff's motion was that Plaintiff was not diligent in filing the motion. [Dkt. #154, pp. 5-6] Plaintiff's motion was filed about two months after obtaining the evidence Plaintiff asserted was critical to its analysis. *Id.* The Court found that Plaintiff had not acted diligently under Rule 16(b)(4) because it had not filed the motion for nearly eight weeks. [Dkt. #154]

Finally, on November 3, 2015, Defendants filed this Motion. [Dkt. #155] In this Motion, Defendants seek to compel the deposition of Charles P. Guarino, Esq. According to the Motion, the parties agreed that Mr. Guarino's deposition could occur after the Court ruled on the waiver motion. (As noted above, the agreement is disputed and, nevertheless, is rejected by the Court.) At the hearing on this Motion, Defendants clarified that they were seeking Mr. Guarino's deposition as a fact witness and would not seek information covered by the attorney-client privilege. The Motion does not cite any applicable rule of the Federal Rules of Civil Procedure, but instead asserts that Mr. Guarino possesses critical and relevant information. [Dkt. #155, pp. 4-5] In conclusion, Defendants assert that the time to bring this Motion was reasonable, and that they foreshadowed the motion back on September 15, 2015. *Id.* at 8. Defendants also note in passing that Plaintiff will not be

---

[2] The attorney-client privilege conflicts with the search for the truth. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). But this Court is not free to disregard the long-standing policy considerations behind this privilege.

5

prejudiced by the deposition and the sought-after deposition would not affect the remaining scheduled dates. *Id.*

Plaintiff opposes the Motion. [Dkt. #160] According to Plaintiff, first, they did not agree to the deposition of Mr. Guarino; second, Defendants have not established "good cause" under Rule 16(b)(4); and third, the deposition of counsel would be improper.

The Court focuses on Rule 16(b)(4) to deny the Motion. By doing so, the Court does not address the somewhat murky case law regarding the application of the attorney-client privilege to trademark searches, which seems to hold that the fact of the search and the results are not privileged, but that the advice sought and provided as a result of the search is privileged. *See, e.g., Flagstar Bank, FSB v. Freestart Bank, N.A.*, 2009 U.S. Dist. LEXIS 104414, *14-16 (D. N.H. Nov. 9, 2009); *Flagstar Bank, FSB v. Freestart Bank, N.A.*, 2009 U.S. Dist. LEXIS 76842, *12-14 (N.D. Ill. Aug. 25, 2009). Likewise, the Court need not decide the appropriate standard to apply in determining whether deposing opposing counsel is proper. *Compare In re Plasma-Derivative Protein Therapies Antitrust Litigation*, 2013 U.S. Dist. LEXIS 133252 (N.D. Ill. Sept. 18, 2013) (Keys, J.) (applying *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) *with Espejo v. Santander Consumer USA, Inc.*, 2014 U.S. Dist. LEXIS 164758 (N.D. Ill. Nov. 25, 2014) (Schenkier, J.) (refusing to apply *Shelton* factors).

### III. DEFENDANTS WERE NOT DILIGENT IN FILING THE MOTION

After a court enters a case management order establishing deadlines to complete certain pretrial matters, including the taking of depositions, generally, Rule 16(b)(4)'s good cause standard applies to motions to modify the order. *Columbia Grain, Inc. v. Hinrichs Trading, LLC*, 2015 U.S. Dist. LEXIS 20831, *3 (D. Idaho Feb. 19, 2015); *Coventry Health Care, Inc. v. Caremark, Inc.*, 2011 U.S. Dist. LEXIS 4201, *4-5 (M.D. Tenn. Jan. 14, 2011); *see also Cravatta v. Lopez*, 2015 U.S. Dist. LEXIS 142231, *4 (N.D. Ill. Oct. 20, 2015) ("What plaintiff actually was seeking to do was modify the case management order. To do so, plaintiff needed to show good cause."). The recognized exceptions, such as late disclosure of retained experts, do not apply here. *See, e.g., McCann v. Cullinan*, 2015 U.S. Dist. LEXIS 91362, *36-37 (N.D. Ill. July 14, 2015) (applying Rule 37, not Rule 16, when party failed to timely provide retained expert reports).

Under Rule 16(b)(4), the Court's primary focus is on the diligence of the party seeking the extension. *McCann*, 2015 U.S. Dist. LEXIS 91362 at *32 (citing *Alioto*, 651 F.3d 715, 720 (7th Cir. 2011)). The movant bears the burden to establish

diligence. *McCann*, 2015 U.S. Dist. LEXIS 91362 at *33 (citing *Trustmark Ins. Co. v. Gen. & Cologne Life*, 424 F.3d 542, 553 (7th Cir. 2005)).

Defendants knew of Mr. Guarino and his involvement with the trademark in March of 2013. On September 3, 2014, after adopting the parties proposed discovery cut-off dates, the Court warned the parties that motions for extensions of time should be brought as soon as possible, but at a minimum before the fact cut-off date. On March 4, 2015, the Court extended fact discovery for the final time. Nothing prevented Defendants' counsel from seeking Mr. Guarino's deposition at any time before March 4, 2015. Over three months later, and with eight days left remaining for fact discovery, Defendants served the subpoena for Mr. Guarino's deposition to occur just days before the cut-off date. On June 25, 2015, despite the Court's two warnings, the parties unilaterally "agreed" to an extension of time to depose Mr. Guarino. And by July 9, 2015, Defendants were on full notice that there was no "agreement," a fact they recognized by at least July 20, 2015. Despite these facts, the Motion was not filed until November 3, 2015 – a full four months after the close of fact discovery, three months after it became clear there was no "agreement," two months after the Court denied Defendants' waiver motion, and six weeks after Defendants foreshadowed that they would be filing the Motion. The Motion also comes on the heels of this Court's order finding that Plaintiff was not diligent in filing its motion to amend its affirmative defenses eight weeks after it allegedly learned of the necessary information to file the motion. These facts do not establish the diligence required under Rule 16(b)(4). *See, e.g., Coventry Health Care*, 2011 U.S. Dist. LEXIS 4201 at **4, 7-8 (denying motion to amend scheduling order to allow the deposition in a case pending for 16 months when the motion was filed three weeks after the deadline to file the motion).

### IV. CONCLUSION

The Motion is denied. The "agreement" was not effective under Rule 29, and the Motion was not diligently filed under Rule 16(b)(4). The remaining discovery and dispositive motion dates remain set. Likewise, this case is still set for status on January 21, 2016, at 9:00 a.m. This 2012 case will be resolved at the district court level in 2016.

Entered: December 15, 2015         By:_____
                                         Iain D. Johnston
                                         U.S. Magistrate Judge

7