**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DR DISTRIBUTORS, LLC, et al. | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 21 CENTURY SMOKING, INC., and | ) | No. 12 CV 50324 |
| BRENT DUKE, | ) | |
|     Defendants/Counterclaimants, | ) | |
| | ) | Magistrate Judge Iain Johnston |
| | ) | |
| v. | ) | |
| | ) | |
| DR DISTRIBUTORS, LLC, et al., | ) | |
|     Counterdefendants, | ) | |

### MEMORANDUM OPINION AND ORDER

Defendants' motion to supplement their expert's report [171] is granted as set out in greater detail herein. The stay on expert discovery is lifted and the deadline to complete expert depositions will be set at the next court status date. Telephonic status set for 8/11/2016 at 1:30 PM. By 8/8/2016, counsel will provide direct-dial telephone numbers for the hearing to the Court's operations specialist who will initiate the call.

### ISSUE

Before the Court is defendants' motion to supplement the report of their expert, David A. Haas, to account for inaccuracies in his initial report. Specifically, in his initial report while criticizing plaintiffs' expert, Haas stated the following:

> 66. I have reviewed documents produced by DR and CB which indicate CB's profitability in the retail sale of e-cigarette products and accessories. These documents suggest that CB earned a profit margin of approximately 30.6% on average throughout the claimed damages period. DR, the plaintiff, earned profits of approximately 8.7% of CB revenue in the years for which both entities' separate financial data are available. Thus, the combined profit of the two entities – expressed as a percentage of CB's selling price – was approximately 39.4%, fairly consistent with Mr. Bengoa's estimate of 40% profitability. Based on deposition testimony from Mr. Bengoa, I understand that the CB gross profit

1

figures stated above do not include consideration of at least the following costs: cost of employees, placement money, liability insurance, and recall insurance.

> 67. *Because CB is not a plaintiff in DR's action against Defendants, I understand that DR is not eligible to collect damages for the portion of profitability that would have been earned by CB in the event that DR lost any sales at all. This error has led to a material overstatement of lost profits.* Even if Mr. Bengoa's 40% benchmark is an accurate assessment of the combined profitability of the two entities (expressed as a percentage of CB's revenue), CB's 30.6% profit margin is not appropriate to apply to any lost sales that plaintiff may demonstrate. If anything, DR's 8.7% profit as a percentage of the arms-length sales price of CB's products is the only amount that could possibly be applied to such lost sales. Mr. Solomon's failure to apply the profits generated by the only plaintiff in this matter and failure to perform any independent corroboration of DR's profitability has thus resulted in an overstatement of lost profits by more than a factor of four (i.e., 40% instead of 8.7%).

(Emphasis added). At his deposition, Haas was confronted, apparently for the first time, with the undisputed fact that CB Distributors, Inc. has filed its own claim against defendants, thereby making CB Distributors "a plaintiff in DR's action against Defendants." As a result of that confrontation, Haas purportedly reviewed CB Distributor's claim for the first time after the deposition and issued a supplemental report which states, in brief, that the mistake has no bearing on his ultimate conclusion that plaintiffs' loss was $0 due to the alleged actions of 21 Century Smoking, Inc.

## CONTENTIONS

Before addressing the parties' contentions concerning whether Haas's supplement should be allowed, the Court notes that this motion presents an unusual procedural posture. Typically, the Court sets a discovery scheduling order, but the Rules envision the parties dealing with the remainder of discovery without much Court intervention. *See generally* Fed. R. Civ. P. 26-36. If one party believes the other has withheld information it has a right to, requested information to which it has no right, or has disclosed something in an untimely or impermissible fashion—in other words one party accuses the other of misconduct in some manner—then the Rules provide that the aggrieved party *may*, but is under no obligation to, seek judicial assistance or protection in the discovery process. *See generally* Fed. R. Civ. P. 26(c), 37. When experts discover that something in their reports or depositions must be changed, experts *must* issue supplements pursuant to Rule 26(e)(2). 8a Charles Alan Wright, et al., *Federal Practice and Procedure* § 2049.1 (3d ed.). It is then the receiving party's right to move for court assistance to strike or otherwise disallow that supplement pursuant to Rule 37(e)(1) if it believes the supplement is somehow inappropriate. *See id.* Here, the parties have approached the problem backwards—defendants have sought permission (which they did not need) to offer a

supplemental report (which was their duty) and plaintiffs have opposed that request (rather than file a motion for sanctions pursuant to Rule 37). *See Noffsinger v. Valspar Corp.*, No. 09 C 916, 21012 U.S. Dist. LEXIS 167776, at *6 (N.D. Ill. Nov. 27, 2012) ("First, Noffsinger incorrectly posits that Valspar is required to seek leave of court before supplementation. Supplementation, when required by Rule 26(e), is a *duty*. Rule 26(e) does not require that a party obtain leave of court before serving a true supplementation." (citations omitted)). Nevertheless, the Court has ordered and received helpful additional briefing from the parties on the pertinent issues in Rules 26 and 37, and thus will address the substance of the parties' contentions notwithstanding the procedural irregularity. The Court and the parties may have gone in through the out door, but we are all in the bar now.

Rule 26(e) states that an expert's "duty to supplement extends both to the information included in the report and to information given during the expert's depositions. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). In this case, no one disputes that the expert's supplement was timely, as Rule 26(a)(3) states that the disclosure must be made "at least 30 days before trial" and no trial date has yet been set. However, plaintiffs argue that Haas's supplement should be barred based on case law because he had access to that information when he issued his initial report, so that his purported supplement is not a supplement at all but a new report attempting to rebuild his now-damaged credibility. Nevertheless, if the supplement is improper under Rule 26, Rule 37 provides that typically the proponent of that information "is not allowed to use [it] to supply evidence on a motion, at a hearing, or at trial, unless the failure is substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). That same Rule also provides other appropriate sanctions the Court may consider in lieu of a bar on the information's use. *See id.*

## ANALYSIS

Plaintiffs base their argument on a number of cases that hold that Rule 26(e) "does not . . . permit an expert to correct mistakes based on information that was available to the expert well in advance of the issuance of his report." *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10 C 204, 2013 U.S. Dist. LEXIS 85897, at *12 (N.D. Ill. June 19, 2013) (quotation marks omitted). This view of Rule 26(e), however, which appears almost exclusively in cases dealing with this Court's local patent rules (which have a Rule presuming prejudice in supplements in certain circumstances), is far from universal. *See, e.g.*, *Talbert v. City of Chi.*, 436 F.R.D. 415, 421 (N.D. Ill. 2006) ("It is not *always* necessary, then, that the supplement be based on information acquired after the initial report was disclosed; it is enough that a party learn the expert report was incomplete or incorrect in some material aspect. . . . Here, the plaintiff was made aware that in the City's view the initial report was incomplete. Thus, the plaintiff provided a supplemental report. It is of no moment that the CR files employed in the report's supplementation had been in the plaintiff's possession at the time the plaintiff provided Mr. Waller's initial expert report.").

3

Indeed, the 2007 Advisory Committee Notes indicate that language was removed from Rule 26 to avoid the very result plaintiffs seek:

> Rule 26(e) stated the duty to supplement or correct a disclosure or discovery response "to include information thereafter acquired." This apparent limit is not reflected in practice; parties recognize the duty to supplement or correct by providing information that was not originally provided although it was available at the time of the initial disclosure or response. These words are deleted to reflect the actual meaning of the present rule.

Fed. R. Civ. P. 26 advisory committee's note (2007).

Next, plaintiffs argue that Rule 26(e)(1) commands this result, even if Rule 26(e)(2) does not, and applies to experts. As far as the portion of plaintiffs' argument concerning Rule 26(e)(1)'s application to experts, the issue has not been settled by the Seventh Circuit. Plaintiffs cite to the 1993 committee notes and various cases from the Seventh Circuit issued before 2007 to make their point, but all of that authority is irrelevant, as Rule 26(e)(1), as it was numbered then, contained all the language now split up into Rule 26(e)(1) and Rule 26(e)(2). The contemporary renumbering, wherein Rule 26(e) was split into one section discussing discovery generally and a more specific section dealing with experts generally, occurred in 2007. So those older authorities said Rule 26(e)(1) applied to experts because, on its face, it did. Nevertheless, some more recent district court cases in this area have continued to apply Rule 26(e)(1) to experts, notwithstanding the more specific application of Rule 26(e)(2). *See, e.g.*, *Black & Decker Corp. v. Positec USA Inc.*, No. 11-cv-5426, 2015 U.S. Dist. LEXIS 127193, at *48 (N.D. Ill Sept. 22, 2015); *Shen Wei (USA) Inc. v. Sempermed USA, Inc.*, No. 05 C 6004, 2008 U.S. Dist. LEXIS 109486, at *6 (N.D. Ill. June 20, 2008). A reading of these cases does not indicate whether the distinction was raised before these courts, and none of these decisions discuss the legal doctrine that a specific provision applies over a general provision. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1980) (superseded by statute on other grounds).

Regardless, even if it were to apply, plaintiffs overstate the impact of that application. In pertinent part, Rule 26(e)(1) states: "A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Plaintiffs focus on the last clause, "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," to argue that defendants already knew about CB Distributor's claim and thus that information was already known by them and supplementation is not permissible. But that is not what the Rule says. The Rule limits the *duty* to supplement to situations where the *other* parties to the litigation (i.e. not the supplementing party) already know the supplemental information. *See* Fed. R. Civ. p. 26 advisory committee's note (1993) ("The

4

obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect. There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report.").[1] The supplemental information here was that Haas's opinion would remain the same, even taking into account CB Distributor's claim of which he was unaware at the time of his report, which plaintiffs did not know through some other means before supplementation. Accordingly, defendants had a duty to supplement, even under Rule 26(e)(1). Thus, and notwithstanding plaintiffs' citations, the Court is dubious of whether defendants have violated Rule 26 at all—it is undisputed that, shortly after his deposition in which he apparently learned for the first time of CB Distributor's claim, Haas issued a supplement addressing the effect of his mistake on his ultimate analysis.

Even if there were a violation of Rule 26, however, the Court would find such a violation harmless and therefore refuse to bar the supplement under Rule 37(c)(1). Here, plaintiffs admit that another deposition of Haas is in the offing—currently stayed pending this order—so they have the opportunity to discuss the matter with their own expert first and cross examine Haas about it before any trial. In *Gicla v. United States*, 572 F.3d 407 (7th Cir. 2009), the Seventh Circuit considered the harmfulness of expert testimony in a similar, yet more egregious, situation in a case dealing with an ankle replacement surgery. There, an expert provided a report without reviewing x-rays of plaintiff's ankle taken before the surgery. *Id.* at 410. When cross examined on that point at trial, however, the expert disclosed that he had looked at the x-rays the morning of trial and that they—like the additional information here—did not affect his ultimate conclusion. *Id.* The Seventh Circuit affirmed the admission of that testimony, notwithstanding plaintiff's objection pursuant to Rule 26, because the expert's testimony was that his opinion was unchanged by the new information, the district court offered plaintiff's counsel a recess to discuss the matter with his own expert, and plaintiff's counsel nevertheless had the opportunity to cross examine the expert on that point. *Id.* at 412. Here, plaintiffs have plenty of opportunity to discuss this matter with their own expert to determine their examination strategy and an opportunity to not only cross examine Haas at trial, but also at another upcoming deposition. In the Court's estimation, the proper use of this unquestionably embarrassing gaffe is to impeach Haas's credibility at any future trial or hearing. The Court recognizes that the sting of impeachment might be lessened due to the supplement, but that result is caused by the policy decision of the drafters of the Federal Rules of Civil Procedure. Of course, theoretically, the

---

[1] The Court notes that the last sentence of the 1993 Advisory Committee Notes contemplates that no duty to supplement arises when an expert makes the correction at his deposition. Thus, if Haas had asked a moment to rerun his numbers after learning of CB Distributor's claim while still sitting at his deposition, the notes contemplate that this is not only permissible, but negates the duty to supplement entirely, thus strongly supporting defendants' position that the supplement here is not improper.

impeachment may have been devastating had it occurred at trial before a jury rather than in a deposition before a court reporter. But that is a strategy decision counsel must make when deciding whether to depose an expert. *See* Gregory P. Joseph, *The Temptation to Depose Every Expert*, 40 A.B.A. Sec. Litig. 1 (2014); William Cirignani, *The Case for Not Taking Defense Expert Depositions*, 18 Trial Journal (Winter 2016). The Court finds that any violation of Rule 26 is harmless in these particular circumstances.

That being said, the Court will provide parameters on Haas's upcoming deposition. *See* Fed. R. Civ. P. 37(b)(2)(A), (c) (court may issue "just orders" for the failure to disclose under Rule 26(a)). Specifically, plaintiffs may depose Haas for an additional two hours as to his supplemental report in the upcoming deposition. Moreover, it is inequitable to force plaintiffs to pay Haas's fees due to this gaffe, and thus plaintiffs will not be responsible for any expert fees generated by those two hours of deposition time.[2] The time for the deposition examination concerning the supplemental report directly flows from the modifications of Haas's report—modifications required because plaintiffs noted the fundamental flaw in Haas's original report.

Date: 8/1/2016

_____

Iain D. Johnston, Magistrate Judge

---

[2] Indeed, the Court assumes—perhaps hopes—Haas did not charge defendants for his supplemental report.