## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| DR DISTRIBUTORS, LLC, CB DISTRIBUTORS, INC. and CARLOS BENGOA, | ) | |
| | ) | |
| Plaintiffs/Counterclaimants, | ) | |
| | ) | |
| v. | ) | Case Number: 3:12 – cv – 50324 |
| | ) | |
| 21 CENTURY SMOKING, INC., and BRENT DUKE, | ) | Judge: Frederick J. Kapala |
| | ) | |
| Defendant/Counterclaim Defendant, | ) | Magistrate Judge: Iain Johnston |
| | ) | |
| 21 CENTURY SMOKING, INC., | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DR DISTRIBUTORS, LLC, CB DISTRIBUTORS, INC. and CARLOS BENGOA, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

## RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND MOTION FOR SUMMARY JUDGMENT

21 Century Smoking, Inc. and Brent Duke (collectively "21CS") hereby respond to Plaintiffs' Motion for Leave to Amend Motion for Summary Judgment as follows:

### PRELIMINARY STATEMENT

Plaintiffs, on summary judgment, raised certain specific issues about 21CS's document production, claiming for the first time in this litigation, that 21CS deliberately withheld documents from production that favor Plaintiffs. The claim was used to

1

support bad-faith-junior-user DR's theory that senior-user 21CS's hands are somehow unclean. 21CS investigated the claims, located the alleged missing documents and promptly produced them. Those documents do not support any of Plaintiffs claims.

Since those documents were located, 21CS has sought to understand precisely why they had not previously been provided from the hard drives from 21CS's computers that were imaged and reviewed in 2014. In its investigation, 21CS's e-discovery vendor told counsel that Mr. Duke's internet-based personal Yahoo Email Account ("Yahoo Email") was not stored on those computers but with Yahoo and accordingly, had not been searched using the agreed-upon search terms in 2014. To correct this, 21CS then engaged its e-discovery vendor to search that email account using the same search terms the parties had agreed to previously and thereafter located additional documents. New documents have been identified. With the Court's permission, 21CS will make them available to Plaintiffs.

This state of affairs is not the result of any bad-faith or willful misconduct by 21CS and does not justify any sanction against 21CS directed to the merits of the case. 21CS believes that Plaintiffs, if given the opportunity to review this newly realized material, could not truthfully or objectively say that any of it supports its Lanham Act claims or supports its cries of "unclean hands." Rather, the documents support 21CS and, in particular, show how Plaintiffs' misappropriation damaged 21CS in the market. As set forth herein, the motion should be denied.

2

BACKGROUND INFORMATION

**1.     21CS's Initial Disclosures**

DR filed the instant matter on September 9, 2012 (Dkt #1).  On January 18, 2013, DR served its First Set of Document Requests on Defendant 21CS Attorney Leavens was involved with the preparation of the response to this document request and the collection of documents responsive to the request, with the assistance of the firm's associate attorney at that time, Heather Liberman.  *See* Declaration of Thomas R. Leavens ("Leavens Dec.") at ¶3, a copy of which is attached hereto as Exhibit 1.  While preparing the defense of the claims brought against 21CS, Mr. Leavens and Ms. Liberman sat with Mr. Brent Duke as he disclosed certain electronically stored information for the company, which was produced to DR by 21CS as part of 21CS's initial document disclosure.  *Id.*  Included in that disclosure were certain documents that either referenced Mr. Duke's personal email account, "BrentDuke@Yahoo.com," or were screenshots from that account.  At all relevant times, 21CS had been advised to preserve any and all of its electronic records relative to the matter.  *Id.*

The Yahoo Email existed in 2009 when Mr. Duke started 21CS, and Mr. Duke continued to use it for company business after his business email, "support@21centurysmoking.com" and "bduke@21century smoking.com" came into existence.  At all relevant times, emails from "support@21CenturySmoking.com" and

3

"bduke@21CenturySmoking.com" were automatically forwarded to the Yahoo Email. Tab 2, Declaration Travis Life ("Life Dec.") at ¶15.

Early in the case, 21CS made a document production to Plaintiffs, which included emails from the Yahoo Email as well as references to Mr. Duke's Yahoo emails. Tab 1, Leavens Dec. at ¶3. Other documents were produced as well.

### 2.    The E-Discovery Process

21CS served a Rule 26(a) disclosure upon DR on August 27, 2013, wherein 21CS identified "three or four" computers located at the offices of 21CS as the location of 21CS's electronically stored information. These were the computers 21CS used to run its business. Tab 1, Leavens Dec. at ¶4.

Following the settlement conference between the parties held on August 25, 2014, counsel for the parties discussed various discovery matters, including conducting discovery of electronically stored information. Heather Liberman was the principal attorney in contact with counsel for Plaintiffs and Carlos Bengoa concerning these matters. These discussions were in accordance with the Proposed Case Management Order filed with the Court on September 3, 2014. Tab 1, Leavens Dec. at ¶5. Several weeks later, Heather Liberman announced her resignation from Leavens, Strand & Glover, LLC to become the General Counsel of SXSW, Inc. in Austin, Texas, effective December 31, 2014. Mr. Travis Life assumed the responsibilities of Ms. Liberman in this

case, starting in mid-December, 2014. Ms. Liberman continued to work on this case through mid-December. Leavens Dec. at ¶6.[1]

On or about October 6, 2014, Ms. Liberman and Brian Gaynor, one of the attorneys for Plaintiffs, discussed e-discovery. Included in those discussions was the designation of search terms to be used by a third-party e-discovery vendor. On October 7, 2014, Ms. Liberman sent Mr. Gaynor the Defendants' proposed search terms. A month later, on November 5, 2014, Mr. Gaynor submitted proposed search terms on behalf of the Plaintiffs and on November 24, 2014, Ms. Liberman and Mr. Gaynor discussed the possibility of engaging the same third-party e-discovery vendor for the Plaintiffs and the Defendants. However, on November 26, 2014, Mr. Gaynor informed Ms. Liberman that "the electronic discovery process is underway for our client'" and then on December 1, 2014, that the Plaintiffs would be using their own third-party vendor. Counsel does not believe a more formal e-discovery plan was entered between the parties. Tab 1, Leavens Dec. ¶7.

---

[1] In April, 2017, Leavens, Strand & Glover, LLC, changed its on-line cloud storage service providers. During the course of the change of providers, access to the email account of Ms. Liberman with the firm was lost. Further, on-line access to email messages for all attorneys of the firm for the year 2015 until mid-April, 2016 is currently unavailable, with the resolution of such access currently unknown. Therefore, the following statements have been prepared based upon our very best investigation and recollection, despite the fact that written information and materials may be incomplete. Leavens Dec. at ¶6, Life Dec. at ¶7.

Following the disclosure that the Plaintiffs were moving ahead with their own e-discovery vendor, Leavens, Strand & Glover, LLC engaged a third-party e-discovery vendor called 4Discovery on behalf of the Defendants. 21CS reviewed the search terms proposed by the Plaintiffs and accepted them. The scope of the e-discovery search included the four computer hard drives that were used by Mr. Duke and two others at 21CS. *Id.* at ¶8. It was Ms. Liberman's understanding that the scope of the search to be conducted by the vendor was consistent with the discussions she earlier had with Mr. Gaynor. She did not understand that any email accounts of Mr. Duke might be excluded from the search. Nor did she believe that the e-discovery search might not pick up all of Mr. Duke's e-mail accounts. *Id.* Mr. Leavens understood that, while the search was of four computer hard drives, the search to be conducted by the vendor would be comprehensive, within the understanding discussed with Mr. Gaynor, and that no email account of Mr. Duke might be excluded. *Id.* Further, neither Ms. Liberman nor Mr. Leavens was advised by their third-party vendor, the Plaintiffs, or Plaintiffs' third-party vendor that any type of email account might not be included in the results of the search it was conducting of the computer hard drives. *See* Leavens Dec. at ¶9. 4Discovery imaged the four computer hard drives on or about December 22, 2014 and conducted the search shortly thereafter. *Id.*

### 3.    DR's Motion for Summary Judgment

On January 15, 2018, Plaintiffs filed their Motion for Summary Judgment (Dkt. #213), raising claims of unclean hands and bad faith relative to certain documents including those concerning Kirti Saraswat ("Kirti" or "Ms. Saraswat"), a web designer based in India who worked on the 21CS website in 2009 and 2010, prior to Plaintiffs' adoption of the mark "21st Century Smoke."   Plaintiffs alleged that emails from Ms. Saraswat were missing and that they must therefore contain a "smoking gun" that proves she was ordered to include, some two years later, the mark "21st Century Smoke" in 21CS's web-site metadata.  In other words, under Plaintiffs' theory, it just had to be Kirti!

Counsel for 21CS checked with its client about these so-called "smoking gun" documents, and other purported "unclean hands emails" including those concerning Frank Gu (a supplier) and Ms. Woods (a confused customer).  Tab 2, Life Dec. at ¶11. Documents were located in Mr. Duke's Yahoo Email and counsel received them on March 17 and 18, 2018.  *Id.*  After receiving and reviewing them, and in conjunction with filing 21CS's Response to Plaintiffs' Motion for Summary Judgment, counsel produced those documents to Plaintiffs by email the following day, on March 19, 2018.  *Id.* at ¶ 12.  Again, and as the documents reveal, there was no Kirti smoking gun.   Kirti's work on behalf of 21CS ended months before DR sold e-cigarettes under the "21st Century Smoke" mark. The documents, which are attached hereto as Exhibit 3, show two things: (i) they have nothing to do with DR's "21st Century Smoke" mark appearing in 21CS's metatags

because they predate the existence of "21st Century Smoke," and (ii) that 21CS was not hiding adverse information.

Notwithstanding that the documents do not support Plaintiffs, on April 6, 2018, Plaintiffs filed this instant motion for leave to amend their Motion for Summary Judgment to further support their bad-faith argument with 21CS's good-faith production of newly discovered documents.

### 4.    Brent Duke's Yahoo Email

Following counsel's appearance before Your Honor on April 17, 2018, and in accordance with 21CS's continuing good faith in this litigation, 21CS continued to investigate why the Kirti and Gu emails had not been disclosed in the e-discovery protocol. *See* Leavens Dec. at ¶11, Life Dec. at ¶13. Counsel learned that Mr. Duke's *Yahoo.com* email was not on the hard drive; it was web based. Leavens Dec. ¶10; Life Dec. ¶13. Accordingly, such documents were not identified and produced. At no time was counsel for 21CS ever aware, nor was counsel advised by its or Defendants' e-discovery vendor, that this was an issue to watch out for or that this might affect search results in the context of e-discovery and search terms. *See* Leavens ¶10; Life Dec. at ¶ 13.

At the time the hard drives were searched, counsel for 21CS was not aware that the Yahoo Email was not stored on 21CS's computers, or that it would not be identified by 4Discovery's key-word searches. *Id.* 21CS's e-discovery vendor did not make it aware that email in accounts accessed over the Internet would not be located on the computer.

*Id.* Counsel for 21CS first understood this oversight after receiving Plaintiffs' Motion for Summary Judgment and investigating their claims.

Given this, 21CS determined that the proper course of action was to re-engage 4Discovery to run DR's search terms against the *BrentDuke@yahoo.com* email account. *See* Tab 1, Leavens Dec. at ¶11; tab 2, Life Dec. at ¶14. The search was run for the period January 1, 2009 through the close of fact discovery, July 1, 2015. After eliminating nonresponsive email, the documents were reviewed again for responsiveness. In doing so, counsel erred on the side of inclusion. For example, there is nearly an entire banker's box primarily devoted to 21CS's efforts to market its product in the spring and summer of 2014; responsive, but not relevant. 21CS is currently in the process of preparing them for disclosure, if the Court deems fit. Tab 2, Life Dec. ¶15. Approximately four banker's boxes of documents were identified.

## ARGUMENT

### I. PLAINTIFFS' SHOULD NOT BE PERMITTED TO AMEND THEIR MOTION BECAUSE THERE IS NO BAD FAITH

Plaintiffs seek to amend their Motion for Summary Judgment to raise issues about 21CS's imperfect disclosure of documents and preservation of electronically stored information (ESI). As shown above, the late production of documents was not deliberate, there was no intent to withhold them and any prejudice can be cured. This is also true with respect to the ESI issues. 21CS's admittedly imperfect discovery responses do not involve any bad faith or willful misconduct. Therefore, no sanction going to the merits

of the case is warranted, and, therefore, it would be futile to allow Plaintiffs to raise these issues in the context of summary judgment.

### A. 21CS's Late Production Is Excusable

Fed. R. Civ. P. 37(c) provides, in pertinent part, as follows:

> If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless….

While 21CS does not dispute that the newly identified documents were not disclosed prior to the close of discovery, the failure was "substantially justified or is harmless," and, therefore, no sanction should be imposed. *See* Fed. R. Civ. P. 37(c)(1); *Ablan v. Bank of Am. Corp.*, No. 11 C 4493, 2014 U.S. Dist. LEXIS 164751, at *7 (N.D. Ill. Nov. 24, 2014).

### 1. 21CS Late Production was "Substantially Justified"

Viewed outside the judgmental lens of hindsight, it appears that the failure to have previously produced the Yahoo Email is the result of misunderstanding as to the universe of material contained on the four hard drives used by 21CS. Although Counsel for 21CS was aware of the Yahoo Email, they were not aware that the Yahoo Email were not being saved on those hard drives when negotiating the scope and terms of the ESI search. Therefore, and unknown to 21CS's counsel, the Yahoo Email was not subject to the electronic search using the agreed-upon search parameters during the discovery period. 21CS then investigated why the Yahoo Email were not part of 4Discovery's search after

Plaintiffs raised the issue of the smoking-gun missing documents in its Summary Judgment Motion.

### 2. 21CS's Late Production is "Harmless"

In exercising its discretion in determining whether 21CS failure to produce the Yahoo Email is harmless, the Court is directed to the following factors: (i) prejudice or surprise to the party against the requesting party; (ii) the ability of the producing party to cure the prejudice; (iii) any likelihood of disruption of the trial; and (iv) bad faith or willfulness involved in failing to disclose the documents earlier. *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2010); *Ablan*, 2014 U.S. Dist. LEXIS 164751 *8.

Here, there is no prejudice to the Plaintiffs and any prejudice to Plaintiffs could be easily cured by, as was acknowledged by Plaintiffs' counsel at the hearing on April 17, 2018, producing Duke again for examination on documents that contain any new information. There is no "smoking gun" or really any evidence that favors Plaintiffs claims. In fact, the bulk of the new documents favors 21CS, which further lends support to a finding that there was no bad faith or willfulness involved on 21CS's part. Finally, as the Court noted, it appears likely that resolution of this issue will not delay trial. Based on these factors, the Court would be well within its discretion to find that the failure to produce the Yahoo Email earlier was harmless and that no sanction is justified.

**B.     21CS Did Not Deliberately Delete Email and Many Deleted Email Can Be Obtained Through Other Means**

As a result of its investigation of the charges in Plaintiffs' Motion for Summary Judgment, 21CS's current counsel discovered that outgoing email from 21CS's Godaddy email accounts, *support@21centurysmoking.com* and *bduke@21centurysmoking.com*, had been "auto purged" by Godaddy after an approximately six-month period. 21CS believes that this setting was in place since 2009, years before any threatened or actual litigation.

Rule 37(e), which governs electronic discovery, states as follows:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1)     upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2)     only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A)     presume that the lost information was unfavorable to the party;
>
> (B)     instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C)     dismiss the action or enter a default judgment. [Fed. R. Civ. P. 37(e); *Snider v. Danfoss*, Case No. 15 CV 4748, 2017 U.S. LEXIS 107591 ** 7, 8 (July 12, 2017).]

In *Snider*, the Court established five prerequisites that must be established prior to the imposition of any sanction. The lost information (i) must be ESI, (ii) existing during anticipated or actual litigation, (iii) which "should have been preserved" because it is relevant; (iv) was "lost because [] a party failed to take [] reasonable steps to preserve it and (v) cannot be restored or replaced through additional discovery. The Court noted that "[i]f any of these five prerequisites are not met, the court's analysis stops and sanctions cannot be imposed under Rule 37(e)." *Snider*, 2017 U.S. LEXIS 107591 ** 8-10.

There is no question that the lost information is ESI, much of which was lost well before there was any thought of litigation and, therefore, there was no obligation preserve it. To the extent that ESI was lost after the litigation commenced, that should have been preserved only if relevant. But it is not relevant. Plaintiffs' primary complaint is that 21CS is attempting to hide communications regarding an email directing someone, perhaps Kurti Saraswat, to add "21st Century Smoke" to the metadata in 21CS's web site in October 2011. *See* Plaintiffs' SUMF 151 (DKT #215.) Thus, any email, if one existed, directing the inclusion of "21st Century Smoke" into the metadata in 21CS's web site would have been sent in or before October 2011. Given the six-month lag time, the Godaddy "auto purge, would have deleted that email in or before March 2012. This still would have been six months *before* Plaintiff filed suit and 21CS knew of Plaintiffs' suit. Given that there was no actual or anticipated litigation, there was no duty to preserve. The analysis ends here. *See Snider, supra.* Further, although Plaintiffs claim to have some

13

text message exchange showing that *21CS* was planning to file suit, those messages occurred much later, in April 2012, and probably by then were a merely pipe dream as 21CS brought no claim until it was sued and insurance coverage was triggered to pay for 21CS's counsel. Thus, the relevant documents were auto-deleted well before any litigation was actual or anticipated, again, well before any duty to preserve.

Further, although 21CS was told that it had to retain all documents, including email, and it had every incentive to do so after the litigation commenced, it apparently did not review the Godaddy "auto purge" settings at that time. This was reasonable, because 21CS was not even aware that "auto purge" was deleting the email.

Finally, this lost ESI is limited to email sent from either, *support@21centurysmoking.com* and *bduke@21centurysmoking.com*. Responses, showing the original sent email would still be retained. Further, while working with its vendor to search the Yahoo Email, 21CS confirmed that any email sent to those email addresses was automatically forwarded to and is now located on the Yahoo Email account. Therefore, any email responding to a now lost email sent from *support@21centurysmoking.com* or *bduke@21centurysmoking.com* would also be duplicated in the Yahoo Email.

Plaintiffs' reliance on *Alban v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 164751, *9 (N.D. Ill., November 24, 2014), is misplaced. Unlike *Alban*, 21CS shows its good faith, offers a valid justification for the late production, and demonstrates a lack of or ability to cure any prejudice. The other cases are readily distinguishable. *See Tamari v. Bache and*

14

*Co. (Lebanon) S.A.L.*, 729 F.2d 469, 473-474 (7th Cir. 1984) (failure to comply with court order); *Koulouris v. Estate of Chalmers*, No. 89 C 734, 1993 U.S. Dist. LEXIS 3774, at *3 (N.D. Ill. Mar. 22, 1993) (failure to provide discovery and comply with discovery orders); *Capital Chem. Indus., Inc. v. Community Management Corp*. 887 F.2d 332 (D.C. Cir. 1989) (ignoring repeated Court orders); *Network Computing Servs. Corp. v. Cisco Sys.*, C/A No. 3:01-0281-17, 223 F.R.D. 392, 400 (Aug. 3, 2004, D.S.C. 2004) (untruthful statements to federal magistrate). The other cases relied on by Plaintiffs do not support its apparent claim the discovery violations give rise to some sort of sanction that affects the merits of the case so that it would support their motion for summary judgment. *See Moore v. City of Chi. Heights*, Case No. 09 C 3452, 2011 U.S. Dist. LEXIS 126738, *38039 (N.D. Ill., Feb. 15, 2011) (barring delinquent party from using late documents); *Int'l Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 88 C 9838, 1992 U.S. Dist. LEXIS 16939, *10-12 (N.D. Ill., Nov. 5, 1992) (attorneys' fees as remedy).

## CONCLUSION

In hindsight, it is clear that the e-discovery process in this case was not perfect. That said, the failings did not prejudice any party in a way that cannot be cured by, as Plaintiffs have suggested, allowing them the depose 21CS on these newly disclosed documents. Thus, no sanction is warranted. Given this, Plaintiffs should not be permitted to amend their motion with alleged discovery violations that do not give rise to sanctionable conduct.

Dated: May 14, 2018

21 CENTURY SMOKING, INC. and
BRENT DUKE


By:       /s/ Peter S. Stamatis
_____
One of their Attorneys


| | |
|---|---|
| Thomas R. Leavens (Bar No. 1601016) | Peter S. Stamatis (Bar No. 6217496) |
| Travis W. Life (Bar No. 6279244) | Steven S. Shonder |
| Leavens Strand & Glover, LLC | Law Offices of Peter S. Stamatis, PC |
| 203 North LaSalle Street, Suite 2550 | 1 East Wacker Drive, Suite 2350 |
| Chicago, Illinois 60601 | Chicago, Illinois 60601 |
| (312) 488-4170 | (312) 606-0045 |