UNITED STATES DISTRICT COURT FOR THE
NOTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | |
|---|---|
| DR DISTRIBUTORS, LLC, and CB DISTRIBUTORS, INC. )<br>)<br>Plaintiffs/Counterclaimant, )<br>)<br>v. )<br>)<br>21 CENTURY SMOKING, INC., and BRENT DUKE, )<br>)<br>Defendant/Counterclaim Defendant, )<br>)<br>21 CENTURY SMOKING, INC., )<br>)<br>Counterclaimant, )<br>)<br>v. )<br>)<br>DR DISTRIBUTORS, LLC, CB DISTRIBUTORS, INC. and CARLOS BENGOA, )<br>)<br>Counterclaim Defendants. ) | Case Number: 3:12 – cv – 50324<br><br>Judge Frederick J. Kapala<br><br>Magistrate Judge Iain Johnston |

**MOTION FOR SANCTIONS PURSUANT FED. R. CIV. P. 37(e)**

Defendant/Counterclaimant, 21 Century Smoking, Inc., and Counterclaim Defendant, Brent Duke (collectively "21CS"), by their undersigned counsel, state as follows for their Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(e) against Plaintiffs/Counterclaim Defendants DR Distributors, LLC ("DR") and CB Distributors, Inc. ("CB"), and Counterclaim Defendant Carlos Bengoa ("Bengoa") (and unless

otherwise indicated through context, "DR" should be construed to include CB and Bengoa):

## INTRODUCTION

21CS brings this motion for sanctions to redress the likely deliberate destruction of the email account used by CB's IT Manager Mr. Martin Hewes while CB employed him. Hewes is a material witness who signed a Declaration for DR—a bad-faith user of 21CS's mark—concerning the metatag issues DR contends (erroneously) constitute the "smoking gun" that might defeat 21CS's claims. Within weeks of signing that Declaration, Bengoa fired Hewes. Then, his emails vanished. Because this unexplained ESI destruction happened sometime *after* the commencement of this action, and *after* Hewes executed a sworn Declaration herein, a hearing to determine the proper sanctions is warranted. To put Hewes' Declaration and DR's imagined "smoking gun" claim in context, Hewes' March 4, 2013 Declaration is attached hereto as Exhibit 1.

21CS initially intended to raise in a motion *in limine* the issue of DR's destruction of Hewes' electronically stored information (ESI). With issues of 21CS's ESI production now before the Court, and given Your Honor's recent admonitions concerning its task in preparing the case for Judge Kapala, 21CS believes that fairness and the administration of justice would be better served if 21CS raises these issues now. 21CS, therefore, requests that the Court conduct a hearing to address whether the destruction of Mr. Hewes' emails was intentional under FRCP 37(e) as interpreted in *Snyder v. Danfoss, LLC,* 2017 US Dist

2

LEXIS 107591 (2017) and if so, to impose the appropriate sanctions including 1) presuming that the ESI was unfavorable to DR; 2) instructing the jury that it must so presume; and/or 3) dismissing DR's claims and defenses.

## BACKGROUND INFORMATION

### *21CS's Initial Disclosures*

1. DR filed the instant matter on September 9, 2012 (Dkt #1).

2. On August 27, 2013, 21CS served a Rule 26(a) disclosure upon DR, wherein 21CS identified "three or four" computers located at the offices of 21CS as the location of 21CS's electronically stored information. These were the computers 21CS used to run its business. Exhibit 2, Leavens Dec. at ¶4.

### *DR's Initial Disclosures*

3. In DR, CB, and Bengoa's Rule 26(a) disclosures, no where did they identify any electronically stored information. Each Rule 26(a) Disclosure is attached hereto as Exhibits 3, 4, and 5 respectively.

4. In a March 28, 2014 email from Mr. Gaynor to Mr. Leavens, CB testified that that CB's email server was located at CB's offices in Beloit, Wisconsin, and that they are archived and backed up using "Symantec Backup Exec. 2012" on a "nightly, monthly and yearly basis" on "LTO Data Cartridges" which are stored off site. *See* Exhibit 6.

*ESI Productions*

5. During the discovery process, no ESI Protocol Order, stipulated or otherwise, was entered.[1]

6. When the parties conferred regarding e-discovery terms in the fall of 2014, 21CS had identified four specific 21CS hard drives to be searched.

7. In late 2014, DR's lawyers advised counsel for 21CS that it would run 21CS's search terms through DR's own e-discovery vendor. DR, again, did not specifically identify the electronic storage media that would be searched, and did not identify whether the Gmail and Yahoo email accounts used by DR's President Carlos Bengoa were included in such search.[2] Exhibit 7, Carlos Bengoa Deposition 38:16 – 40:1.

8. After learning that DR would be using its own e-discovery vendor, 21CS then employed "4Discovery," an e-discovery vendor in Chicago, to image 21CS's four

---

[1] In April, 2017, Leavens, Strand & Glover, LLC, changed its on-line cloud storage service providers. During the course of the change of providers, access to the email account of its Attorney Liberman, who had been handling discovery on the case, was lost. Further, on-line access to email messages for all attorneys of the firm for the year 2015 until mid-April, 2016 is currently unavailable, with the resolution of such access currently unknown. Therefore, the following statements have been prepared based upon our very best investigation and recollection, despite the fact that written information and materials may be incomplete. Exhibit 2, Leavens Dec. at ¶6, Life Dec. at ¶7.

[2] On June 7, 2018, counsel for 21CS requested from DR's counsel confirmation that the Gmail and Yahoo email accounts of DR's President Carlos Bengoa were included in the electronic storage media searched by DR's e-discovery vendor, but as of the filing of this motion DR's counsel has not provided a response.

hard drives and to extract documents containing the search terms specified by DR. 4Discovery has advised 21CS that it has retained those hard-drive images to date.

9. Both parties then produced their ESI PDF's in hard copy format.

### *Martin Hewes, CB's IT Manager*

10. Afterwards, 21CS learned that the emails of DR's former IT Manager Martin Hewes and all of the email therein had *not* been produced in discovery because they had been destroyed.[3] No explanation has ever been provided for this ESI destruction.

11. CB employed Martin Hewes as its IT Manager. His employment began on or about November, 2012, just two months *after* DR filed suit against 21CS. *See* Exhibit 8, Hewes Dep. at 36:20-22 (Hewes entire deposition is attached). Bengoa hired Hewes to handle CB's SEO, to be in charge of keeping CB's servers and the desktop computers running, and to solve CB's IT problems as they came up. *See* Exhibit 8 at 37:1-8.

### *Hewes' March 4, 2013 Declaration*

12. On March 4, 2013, Mr. Hewes signed a Declaration in Support of DR's application for an injunction against 21CS (Dkt. 22-4). In his declaration, Hewes testified to his personal knowledge concerning the discovery of the phrase "21st Century Smoke" in the metatags on 21CS's website, and among other things, regarding:

- The workings of the "Wayback Machine," an internet archival service;
- Viewing source code, and in particular, the source code of 21CS's website;

---

[3] In deposition transcripts, court reporters also spell the name "Hughes."

5

- Search engine optimization;

- 21CS's keyword field;

- A putative motive behind 21CS's key word field was to "influence who would be directed to their website."

- Removal of other phrases from 21CS's website;

- Viewing metadata and source code; and

- 21CS "caused and created confusion as people searching for Plaintiff's product … [will] never find what they are looking for…"

*See* Exhibit 1.

13. In other words, Hewes testified to the circumstance that kept Judge Kapala from granting summary judgment in its entirety for 21CS on June 16, 2014, where Judge Kapala *granted partial summary* judgment for 21CS. (Dkt. #80).

14. By the end of the following month, April of 2014, Bengoa fired Hewes. Exhibit 8 at 48:24 – 49:11.

*The April 25, 2014 Subpoena to Martin Hewes*

15. On April 25, 2014, 21CS issued a subpoena for Mr. Hewes's deposition. A copy of that subpoena is attached hereto as Exhibit 9. In the Rider to that subpoena, 21CS demanded production of all documents regarding 21CS including emails and phone records and the allegations set forth in Hewes' March 4, 2013 Declaration.

16. The following month, on May 6, 2014, Hewes appeared for his deposition. At the deposition, Mr. Hewes was represented by Mr. Anthony Davis, who is also counsel for DR, CB, and Bengoa. Hewes testified of his full knowledge of CB's email system

6

including the maintenance and storage of CB's emails, as well as the indexing, maintenance and archival of the same. Exhibit 8 at 58:5-18.

17. Though he was the IT Manager, Hewes testified that he received "no instruction" whatsoever regarding the preservation of emails, documents, document preservation/destruction of documents at CB, and that he was kept in the dark regarding CB's inner workings:

> Q. Are you aware of any instance where any of the e-mails that were stored by CB Distributors may have been deleted?
>
> A. I couldn't tell you either way. I really don't know. My gut feel is, and I don't know if there is any place for gut feel in the discussion, my gut feel was I was never considered a trusted insider. There were probably discussions going on that I'd hear snippets of here and there, especially regarding this, but if they needed something from me, they'd bring it to me, otherwise I pretty much wasn't included. So I heard some comments about e-mails but nobody asked me to retrieve them, nobody asked me to delete them. I never read them. I really have no knowledge of it.

[Exhibit 8 at 76:2-17].

18. With regard to the documents requested in his Subpoena Rider, Exhibit A, Hewes testified that he had no such documents personally but had left the responsive documents at CB:

> Q. Did you read the list of documents that were sought to be identified in Exhibit A?
> A. Yes, I did.
> Q. What did you do in response to the request?

7

> A. Well, I called because I don't have any of these documents. They're all CB's intellectual property. I left it all behind when they dumped me. They basically laid me off. I didn't take any of it with. I didn't copy myself on any of it in an e-mail or anything. Maybe I should have but I didn't. So I haven't got access to any of this.
>
> Q. No electronic documents at all?
>
> A. No copies, no.
>
> [Exhibit 8 at 31:4-20]

19. Sometime thereafter, Mr. Hewes's email mysteriously disappeared.

20. No witness from DR could explain the disappearance of the Hewes's email, though speculation ran rampant. Bengoa testified:

> Q. When was the search concerning the e-mail files of Mr. Hewes initiated?
>
> A. I just said that I don't know. I couldn't answer that.
>
> Q. Can you describe for me the steps that were undertaken by CB in order to protect the files of Mr. Hewes' e-mail account when he was terminated?
>
> A. He was under the same instructions as everybody else.
>
> Q. Which are what?
>
> A. Which was not to destroy any document or delete documents.
>
> Q. Do you know who deleted Mr. Hewes' e-mail files?
>
> A. I would assume it was Mr. Marty Hewes.
>
> Q. Do you know for certain whether Mr. Hewes had deleted his files?
>
> A. No.

8

      Q.    So there were no other steps undertaken to protect his files other than telling him not to erase them?

      A.    The same rules applied to him that apply to everybody else.

      Q.    But there were no other steps undertaken to protect those files?

      A.    Not that I -- not that I'm aware of.
[*See* Exhibit 7, Deposition of Carlos Bengoa at 37:13 – 37:15]

21.    At a Fed. R. Civ. P. 30(b)(6) deposition, CB testified that the company had no idea what happened to Mr. Hewes' email account:

      Q.    Do you know who Marty Hughes is?

      A.    Yes, I do.

      Q.    He had a file of emails when he worked for CB, correct?

      A.    Correct.

      Q.    That file has been lost, right?

      A.    Correct.

MR. DAVIS: Objection, mischaracterizes the testimony that was given in the case.

BY MR. STAMATIS:

      Q.    Okay. What happened to that file?

      A.    I don't know what happened to that file.

      Q.    Have you searched for the file?

      A.    Yes.

[*See* Exhibit 10, Rule 30(b)(6) Deposition of CB Distributors (Loreen MacDonald testifying at 50:8-21.]

22. At her personal deposition, Loreen MacDonald, CB's Operation's Manager, testified:

> Q. Was any of the account of Mr. Hughes that you've looked for ever located?
>
> A. No.
>
> Q. Did you ever determine when the file was deleted?
>
> A. I do not know that.
>
> Q. Have you heard from anybody that it was determined when it was deleted?
>
> A. Not that I recall.
>
> Q. Do you have any information with respect to why it was deleted?
>
> A. Marty had been given several disciplinary talks and written warnings concerning his work performance, and we do not know for sure, but his box is gone, may be due to he knew he was going to be terminated.
>
> Q. Have you determined that with any certainty?
>
> A. No.
> [*See* Exhibit 11, Deposition of Loreen MacDonald at 20:24 – 21:17]

23. Thus, no one at CB or DR knows, or at least no one is willing to say, what happened to Mr. Hewes' email. With no third party identified as being responsible for destroying this likely crucial evidence, DR must be held responsible for deleting them.

24. Moreover, two DR/CB/Bengoa witnesses, MacDonald and Chris Menken, testified that tape backups were made of the DR/CB computers. Mr. Hewes too confirmed the tape backups. Exhibit 8, Hewes Dep 59:3-7. Nevertheless, it appears that Hewes'

10

email was somehow *deleted* from the backups as well, because Hewes' email account has never been produced. *See* Exhibit 11, Deposition of Loreen MacDonald at 54:22 – 56:22; Exhibit 12, Deposition of Chris Menken, 24:12 – 26:15.

### *The May 17, 2018 Telephonic Court Appearance*

25. At the May 17, 2018 telephonic court appearance, the parties discussed various e-discovery issues with Your Honor. One issue that arose was the 2014 imaging of 21CS's hard drives. In this regard, the Court questioned the efficacy of 21CS's litigation preservation actions because its hard drives were imaged during discovery, not when the case was filed.

26. 21CS's preservation conduct at least appears rational when compared to DR's preservation lapse. The disappearance of the Hewes' email and failure to provide it from back-up tapes demonstrates that DR was either grossly negligent, or worse, that it did not act in good faith to image or backup its hard drives at the commencement of the litigation or apparently, at any time. A hearing is, therefore, needed to allow this Honorable Court to make this determination in order to fashion the appropriate sanction under FRCP 37(e).

### ARGUMENT

Rule 37(e), which governs electronic discovery, states as follows:

> (e) failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it,

11

and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment. [Fed. R. Civ. P. 37(e); *Snider v. Danfoss*, Case No. 15 CV 4748, 2017 U.S. LEXIS 107591 ** 7, 8 (July 12, 2017).]

In *Snider*, the Court established five prerequisites that must be established prior to the imposition of any sanction. The lost information (i) must be ESI, (ii) existing during anticipated or actual litigation, (iii) which "should have been preserved" because it is relevant; (iv) was "lost because [] a party failed to take [] reasonable steps to preserve it" and (v) cannot be restored or replaced through additional discovery. The Court noted that "[i]f any of these five prerequisites are not met, the court's analysis stops and sanctions cannot be imposed under Rule 37(e)." *Snider*, 2017 U.S. LEXIS 107591 ** 8-10.

Each of the five prerequisites are met here, a fact that warrants imposition of the sanctions that FRCP 37(e) sets forth. First, the missing Hewes' email is ESI. Second, the emails existed but were destroyed during the litigation. Third, they are relevant and should have been preserved because it was Mr. Hewes who allegedly discovered the

12

alleged misuse of the 21st Century Smoke mark. Fourth, the ESI was plainly lost due to DR's failure to take even the most basic reasonable steps to preserve it. Fifth, because DR admittedly had back-up tapes running and it appears that tapes with Hewes's email accounts were destroyed there is a serious suspicion of deliberate destruction. Finally, it appears that the Hewes ESI cannot be restored or replaced through additional discovery. DR has long been on notice that 21CS wants the Hewes ESI, but DR has never produced it and there is no other known source for the ESI.

Given that the five prongs have been met, sanctions are warranted, and a hearing should be conducted in accordance with the mandate of *Snider v. Danfoss, supra,* to determine the proper sanction under Rule 37(e). Destruction of the backup tapes in particular mandates the imposition of sanctions – 21CS will never be able to know what communications occurred with the person tasked with the job of surreptitiously investigating 21CS's accused web site.

A final note: during the course of the case, DR has offered the court—on more than one occasion—a "goose-gander" argument, that is, a request that the court apply the same rules and standards to *all* the parties in the case. In presentations to the Court regarding the documents 21CS recently disclosed, DR's lawyer has truculently attacked counsel personally, with unfortunate claims of "stories" and implications of bad faith. The claims are ironic, particularly given the fact that it was 21C's counsel that undertook to locate missing documents and counsel that promptly *produced them*. This stands in

13

sharp contrast to DR, which has allowed the destruction of ESI and back up tapes that center around DR's only defense in this action.

WHEREFORE, Defendant/Counterclaimant, 21 Century Smoking, Inc., and Counterclaim Defendant, Brent Duke, by their undersigned counsel, request that this Honorable Court grant their Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(e) or conduct a hearing to address whether the destruction of Mr. Hewes' emails was intentional under FRCP 37(e) as interpreted in *Snyder v. Danfoss, LLC,* 2017 US Dist LEXIS 107591 (2017) and if so, to impose sanctions including presuming that the ESI was unfavorable to DR, an instruction the jury that it must so presume or alternatively, dismissing DR's claims and defenses.

Dated: June 15, 2018

                                             21 CENTURY SMOKING, INC. and
                                             BRENT DUKE

                               By:        /s/ Peter S. Stamatis
                                                           One of their Attorneys

| | |
|---|---|
| Thomas R. Leavens (Bar No. 1601016) | Peter S. Stamatis (Bar No. 6217496) |
| Travis W. Life (Bar No. 6279244) | Steven S. Shonder |
| Leavens Strand & Glover, LLC | Law Offices of Peter S. Stamatis, PC |
| 203 North LaSalle Street, Suite 2550 | 1 East Wacker Drive, Suite 2350 |
| Chicago, Illinois 60601 | Chicago, Illinois 60601 |
| (312) 488-4170 | (312) 606-0045 |