UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DR DISTRIBUTORS, LLC, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> 21 CENTURY SMOKING, INC., and BRENT DUKE, <br><br> Defendants/Counterclaimant, <br><br> v. <br><br> CB DISTRIBUTORS, INC., and CARLOS BENGOA, <br><br> Counter-Defendants/Counterclaimants. | **Case Number:** 3:12 – cv – 50324 <br><br> **Judge:** Frederick J. Kapala <br><br> **Magistrate Judge:** Iain D. Johnston |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS**

Plaintiff/Counter-Defendant DR Distributors, LLC ("DR"), and Counter-Defendants/Counterclaimants CB Distributors, Inc. ("CB") and Carlos Bengoa ("Bengoa") (collectively "Plaintiffs"), submit this brief in response to the Motion for Sanctions filed by Defendant/Counterclaimant 21 Century Smoking, Inc. and Defendant Brent Duke (collectively "Defendants") on June 15, 2018 at Dkt. No. 257.

{0065-1370/00481596-1}                -1-

**PRELIMINARY STATEMENT**

In what this Court has already recognized as a "pivot" to deflect the recent focus on their own litigation misconduct,[1] Defendants now seek sanctions against Plaintiffs centered on an allegation of lost e-mails of a former CB employee, an issue which Defendants had full knowledge of and explored through extensive deposition testimony of Plaintiffs' senior management over three years ago, but took no action until now. In a desperate attempt to distract the Court from their own sanctionable misconduct, Defendants offer absurd explanations as to why they waited until now to raise this issue, and mischaracterize and exaggerate the limited knowledge and role that the former employee had in this case. The former CB employee, Martin Hewes, worked for six months – starting <u>after</u> this litigation commenced from November 2012 to April 2013. As Defendants learned more than three years ago and as they acknowledge in their moving papers, Hewes' company e-mails were deleted from CB's company email server, most likely by Hewes upon learning his employment was being terminated. See Defendants' Motion for Sanctions dated 06/15/18 (Dkt. No. 257) at pp. 8-10.

Contrary to Defendants' broad and unsubstantiated accusations, there is no credible evidence suggesting that Plaintiffs were responsible for deleting Hewes' e-mails, had knowledge that it occurred, or that the data from his emails was lost or was not otherwise produced. There is no evidence presented whatsoever to substantiate that any of the relevant information contained in the alleged missing e-mails has not already been provided through deposition testimony and/or Plaintiffs' collection and production of e-mails from other record custodians in this litigation who emailed internally with Hewes during his brief employment with CB. These, and other

---

[1] See Transcript of Court Hearing on May 17, 2018 at 20:19-21:3.

{0065-1370/00481596-1}  -2-

deficiencies in Defendants' current motion, are addressed in more detail below, but can be summed up as follows:

(1) Defendants' motion is not made in good faith and does not comply with Fed. R. Civ. P. 37(a) or Local Rule 37.2;

(2) Defendants' motion is untimely and unfounded;

(3) There is no plausible basis to claim or infer that Defendants have suffered any prejudice as a result of the allegedly missing e-mails, as is required for sanctions under Fed. R. Civ. P. 37(e)(1); and

(4) There is no plausible basis to claim or infer the intent necessary for sanctions under Fed. R. Civ. P. 37(e)(2).

Any one of the above reasons alone would serve as a basis for denying Defendants' Motion for Sanctions in its entirety. The Court should not entertain Defendant's frivolous strategy of raising and exaggerating a baseless issue in an obvious effort to try and avoid the consequences of their own litigation misconduct which is the focus of Plaintiffs' pending motion for sanctions.

**ARGUMENT**

Discovery disputes cannot be manufactured by a party based on meritless accusations that are not made timely or in good faith. The rules do not permit Defendants to raise a discovery issue years after they had full knowledge of it and attempt to explain their lack of diligence and timeliness in raising this issue before the discovery end date – July 1, 2015 – by offering some bizarre and unexplained strategic decision. This is especially true in a case such as this which has been hotly contested at every turn and the Court noted it was one where the parties exhibited the "'no-grain-of-sand-unturned' strategy." See Court's Order Dated 10/30/15 (Dkt. No. 154) at p. 7.

Prior to filing a motion under Rule 37, Defendants were required to make a good faith and timely effort to resolve the alleged discovery dispute before seeking the Court's intervention. Additionally, when such a motion is made pursuant to Rule 37(e), the movant must articulate at least one of two separate bases for sanctions. Under Rule 37(e)(1), there must be *proof that the moving party was somehow prejudiced by the loss of electronic evidence*, in which case the remedy (or sanction) is limited to "measures no greater than necessary to cure [that] prejudice." Fed. R. Civ. P. 37(e)(1). Under Rule 37(e)(2), there must be proof that the non-moving party "*acted with the intent to deprive another party of the information's use in the litigation*," and only then are sanctions (in the form of a presumptive inference, or a related instruction to jury, or dismissal or default) available (emphasis added). Under either subsection (1) or (2), the decision whether to impose sanctions falls within the Court's sound discretion. *Id*. Defendants' motion should be denied as it fails on all accounts.

**I. Defendants' Motion Is Not Made in Good Faith and Does Not Comply with Fed. R. Civ. P. 37(a) or Local Rule 37.2.**

Defendants' motion does not include a Fed. R. Civ. P. 37(a) or Local Rule 37.2 statement attesting to counsel's good faith efforts to resolve the dispute at issue. The Local Rule makes it

abundantly clear that the court shall "refuse to hear any and all such motions for discovery" unless this statement is included. Defendants cannot comply with the Rule as they never made any good faith effort to resolve this issue when they learned of it over four years ago. Defendants' new interest in the Hewes' e-mail account is not motivated by "good faith" but is raised now in an attempt to distract the Court from Defendants' admitted discovery misconduct. In fairness, all they have admitted to so far is that they were "less than perfect," a towering understatement if there ever was one. For this reason alone, Defendants' unfounded and recently manufactured concern over a former employees' e-mails do not merit any further discovery or any form of sanctions.

## II. Defendants' Motion is Untimely.

Fed. R. Civ. P. 37 does not reference a time limitation for filing such motions, but "unreasonable delay may render such a motion untimely." See *Brandt v. Vulcan, Inc*. 30 F.3d 752, 756 (7th Cir. 1994). The timeliness of such a motion will depend upon when the movants learned of the discovery violation, how long they waited before raising the issue to the court, and whether discovery has concluded. *Clark v. Cartwright*, 2017 U.S. Dist. LEXIS 130678 at *2 (S.D. Ill. August 16, 2017 (citation omitted).

As acknowledged in their own motion papers, Defendants were aware of Hewes' deleted e-mail account during the fact discovery phase of this litigation and well before the close of discovery in July of 2015. Defendants counsel fully explored the circumstances of these alleged missing e-mails at the 2015 depositions of Carlos Bengoa (CEO and owner), Loreen MacDonald (Operations Manager), and Jeff Piper (Sales Manager and Hewes' direct supervisor). As they knew for years, took no action, and discovery closed almost three years ago, Defendants' motion is untimely under any analysis of these circumstances and should be denied outright.

Hewes worked for CB for six months from November 2012 to April 2013 and his duties were limited to matters inside CB's offices. Defendants deposed Hewes' in May 2014, before Plaintiffs and Defendants learned that Hewes' e-mail account had been deleted. However, Defendants had ample opportunity at that deposition to explore the statements found in Hewes' March 4, 2013 Declaration which detailed his discovery of Defendants' misuse of Plaintiffs' trademark "21ST Century Smoke" in the hidden meta data of Defendants' website through his research and review of data publicly available on the so-called "Wayback Machine" (internetarchive.org). It is disingenuous for Defendants to now contend that somehow this is crucial testimony that supports their demand for further investigation of deleted e-mails when Defendants admit the existence of Plaintiffs' trademark in their website, admit removing the trademark from their website and consented to a Preliminary Injunction to cease using Plaintiffs' trademark during the pendency of this litigation. (See Dkt. 26).

Despite having full knowledge of this issue during discovery, Defendants chose to do nothing about it and offer no plausible excuse for their lack of diligence. Defendants could have sought additional deposition testimony from Hewes after the deleted e-mail account issue was discovered. They could have done so *during fact discovery* to explore the contents of his e-mail communications and the role that he played in deleting same. This was also a topic that they could have explored with Plaintiffs' outside IT company, Gemini Computer Systems, whom Defendants deposed in 2014. Defendants made a conscious decision not to take any further action during the discovery phase of this litigation because there was no genuine reason to believe that either Hewes, or his internal company e-mails, could provide any information that was either relevant to the litigation, helpful to Defendants, or not otherwise provided through other sources.

The record evidence reflects that Hewes has limited relevant knowledge of issues in this case. His employment at CB started after the litigation commenced and he was terminated six months later. As the discovery bore out and as Defendants learned, his knowledge is limited to the discovery of Defendants' use of Plaintiffs' trademark in their website. Defendants fully explored this at his deposition and Defendants now admit the existence of Plaintiffs' trademark in their website data. Their efforts to distort the record and exaggerate Hewes' role and scope of knowledge is problematic for Defendants as this version of reality underscores their complete lack of diligence on an issue that they now suggest is suddenly of great importance – despite having all of the same information years ago and taking no action.

Defendants' feigned concern over the missing Hewes' e-mails in no way equates with the concerns recently raised by Plaintiffs concerning Defendants' litigation and discovery misconduct. Critically, Defendants knew of the Hewes' e-mail *deletion* over three years ago and chose not to pursue the matter after deposing Plaintiffs' senior management on this issue. In contrast, Plaintiffs raised during discovery their concern over *missing* e-mails exchanged with Defendants' key custodians and then filed a motion to compel. In June 2015, this Court ordered Defendants to provide responsive e-mails. See Dkt. No. 132. Defendants then misleadingly produced only select e-mails (generally favorable to them), and persistently assured Plaintiffs and this Court that no relevant e-mails had been withheld or deleted. It was only recently and at the conclusion of summary judgment briefing when Defendants were accused of hiding discovery that Defendants finally admitted that they had withheld discovery, failed to fulfill their discovery obligations and their prior assurances were false. At first, Defendants first produced 112 pages of documents claiming that was the universe of improperly withheld documents. However, the Court ordered Defendants to produce all responsive documents that were withheld during discovery and

Defendants recently produced five boxes of documents totaling 15,886 pages. After reviewing these documents – all of which were baselessly marked "confidential attorneys' eyes only" by Defendants' counsel (who refused to remove such designation upon request), Plaintiffs have discovered even more disturbing problems with Defendants' misconduct and their explanations about the lost and withheld data which Plaintiffs will address with the Court at the hearing on August 14, 2018.

### III. Defendants Have Suffered No Prejudice.

Defendants describe Hewes as a "material witness" in this litigation.[2] However, they fail to explain how the loss of e-mails from Hewes' company inbox and sent folders is prejudicial to them when those same communications still reside within the e-mail folders of other CB custodians of interest. As an internal employee, all of his e-mail communications that had relevant search terms would have been found in other employees' email inboxes and sent folders, and then caught in the collection process.

Defendants also mischaracterize the scope of his testimony which was offered by Plaintiffs in opposition to Defendants' Motion for Partial Summary Judgment in 2013. They make a very general observation that Hewes "testified to the circumstance that kept Judge Kapala from granting summary judgment in its entirety." See Defendants' Motion for Sanctions at p. 6 (Dkt. No. 257). However, Plaintiffs' Opposition Brief filed on November 20, 2013 makes clear that Hewes' testimony was limited to confirming that Defendants misused Plaintiffs' trademark in their website. See Plaintiffs' Memorandum of Law In Opposition to the Defendants' Motion for Partial Summary Judgment dated November 20, 2013 Dkt. 61, at 17-23. To support their unclean hands defense, Plaintiffs relied extensively on the testimony of their internet and online marketing expert

---

[2] See Dkt. No. 257 at p. 2.

{0065-1370/00481596-1}                -8-

Peter Kent – not Hewes.  Id.  Hewes' testimony – which is now admitted by Defendants – simply facilitated the introduction of evidence about the existence of Plaintiffs' trademark in the hidden meta data of Defendants' website which is now admitted by Defendants and has also now been established through certified documents from the Wayback Machine (Internetarchive.org).

Defendants have not, and cannot, articulate why Hewes' discovery of Plaintiffs' trademark in the hidden meta data of Defendants' website adds anything to their claims or defenses in this litigation.  The fact that Plaintiffs' trademark existed in Defendants' website for over nine months is what is relevant, and this fact has already been admitted by Defendants and acknowledged by this Court.  See Dkt. No. 234-9 at p. 56- 57, ¶ 151-152 (Defendants' 03/19/18 Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts); see also Dkt. No. 80 at p. 7 (Court's June 16, 2014 Order granting in part and denying part Defendants' earlier motion for summary judgment).  At his deposition, Hewes' offered his opinion as to why he thought this occurred, and the significance of the occurrence.  However, Plaintiffs and Defendants have expert witnesses who have addressed these issues extensively.

There is nothing to suggest that any relevant information was lost as a result of Hewes deleting his email account.  There is no claim that any e-mails in the possession of employees who sent or received e-mails from Hewes were deleted.  In fact, this case is strikingly similar to *Snider v. Danfloss, LLC,* 2017 U.S. Dist. LEXIS 107591 (N.D. Ill. July 12, 2017), which was decided by Your Honor and referenced in Defendants' current motion.  In *Snider*, as in our own case, any information that may have been lost through alleged e-mail deletion was sufficiently replaced by relevant e-mails captured from other custodians of interest within the company.  Id.  Accordingly, Your Honor found "no harm, no foul," and denied the movant's request for sanctions under Fed. R. Civ. P. 37(e).  Id.  Notably, in *Snider*, the movant had additional grounds to complain, because

the deleted e-mails belonged to an actual custodian of interest and the "replacement" e-mails were only provided *after* it had moved to compel. *Id*. at *5-6.

Even if Defendants were able to demonstrate prejudice, their remedy would be within this Court's discretion and limited to measures "no greater than necessary to cure the prejudice." See Fed. R. Civ. P. 37(e)(1). Typically, the remedy would be to re-depose a witness, here CB's former employee Martin Hewes, but Defendants already chose not to pursue that option during discovery. Moreover, Defendants explored the issue of the deleted email account at length during the depositions of Plaintiffs' senior management. There was no testimony that these emails were irretrievably lost or not otherwise provided. Defendants chose to take no action to address this issue or obtain this alleged missing data years ago and should not now be heard to complain of their own lack of diligence.

## IV. Defendants Have Failed to Establish the Requisite Element of Intent.

Finally, Defendants have failed to show that Plaintiffs "acted with the intent to deprive [Defendants] of the information's use in the litigation," as is required to succeed on a motion for sanctions pursuant to Fed. R. Civ. P. 37(e)(2). As Defendants acknowledge, and as addressed above, this issue was explored at the depositions of Plaintiffs' owner and senior management, including two people to whom Hewes reported. Those witnesses were unable to verify what happened to Hewes' e-mails, but reached the logical conclusion that Hewes, who was displeased with his termination, deleted all e-mails from his own company account, but no others. As Defendants also acknowledge, Hewes denied any responsibility for decisions or actions taken by or on behalf of the company in connection with the preservation or deletion of company e-mails. See Dkt. No. 257 at p. 7, ¶ 17. Accordingly, any action taken by Hewes to delete e-mails within his CB e-mail account cannot be attributed to Plaintiffs.

Defendants also cannot make the prerequisite showing that Plaintiffs failed to take reasonable steps to preserve the evidence at issue. See *Snider*, 2017 U.S. Dist. LEXIS 107591 at * 8-9 (this "prerequisite showing" is also acknowledged in Defendants' own motion, at p. 12). Defendants recognize their own misconduct but make the unfounded accusation that Plaintiffs are culpable of a "preservation lapse," because they allegedly did not make a forensic copy of data sources when their duty to preserve arose. The obvious problem with this argument is that, as Defendants acknowledge, Hewes was not hired until approximately two months after Plaintiffs' commenced this litigation. See Dkt. No. 257, p. 5 at ¶11. Accordingly, any copy of company data sources made at or before the time this lawsuit was filed would not have contained any Hewes' e-mail communications. Likewise, Hewes' discovery of the metadata in Defendants' website did not occur until the Spring of 2013 when he first became a person with knowledge of the issues in this action.

Plaintiffs have gone to great lengths and incurred great expense to fulfill their discovery obligations in this case. It is disturbing to have to respond to these baseless accusations raised by Defendants in an obvious and desperate strategy to distract the Court from their admitted and sanctionable misconduct. Despite seeking tens of millions of dollars in damages from Plaintiffs in this case, Defendants did not do even fulfill their most basic obligation to preserve and search a main email account used by their client. Mr. Duke is their main witness and the owner of a three-person operation he ran out of his apartment. Yet, Defendants' counsel admit – but only after being accused of withholding evidence – that they failed to preserve or even search for responsive emails, despite repeated representations to Plaintiffs and this Court that they had done so.

Defendants just produced 15,886 pages of documents that they withheld during discovery. In response to having to explain their misconduct and flagrant violation of the rules, Defendants

make baseless and exaggerated accusations against Plaintiffs. Plaintiffs ensured that a litigation hold was in place, issued a written hold memo, and oversaw the search and collection of documents. Plaintiffs relied on its outside IT consultant to ensure their system was held and preserved as well as relied upon ESI consultants to gather and make searchable all relevant ESI which was produced throughout this litigation. Defendants arguments about the size of the respective productions as some indication of a problem is false and illogical. Plaintiffs searched the terms provided by Defendants which yielded documents – in whatever volume they existed – that were in Plaintiffs' possession from 2010 through the time of the production. In short, Plaintiffs produced all relevant documents that were requested and fulfilled their obligations without complaint from Defendants until their neck was in the proverbial "noose."

Despite one employee deleting an email account, there is no proof that any of Plaintiffs' data including that email account was permanently lost or otherwise not produced. Defendants' failure to take any action in connection with this issue years ago should tell the Court all it needs to know about this manufactured issue. There was no loss of any relevant data under these circumstances and there was no prejudice to Defendants.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Sanctions should be denied in its entirety. Plaintiffs request that the Court award them reasonable expenses incurred in responding to this motion, including attorneys' fees, as required under Fed. R. Civ. P. 37(a)(5)(B).

Dated:  August 10, 2018

Respectfully submitted,
Attorneys for Plaintiffs

By:    /s/  *Anthony J. Davis*
ANTHONY J. DAVIS
NICOLL DAVIS & SPINELLA, LLP
adavis@ndslaw.com
95 Route 17 South
Paramus, New Jersey 07652
201-712-1616
201-712-9444 (fax)

and

ROBERT C. VON OHLEN
rvo@vonohlenlaw.com
1340 W. Deerpath Road
Lake Forest, Illinois 60045
888-376-7475
888-354-4244 (fax)