**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DR DISTRIBUTORS, LLC, and CB DISTRIBUTORS, INC. | ) ) ) | |
| Plaintiffs/Counterclaimant, | ) ) | |
| v. | ) ) | |
| 21 CENTURY SMOKING, INC., and BRENT DUKE, | ) ) ) | Case No. 3:12-cv-50324 Judge Thomas M. Durkin |
| Defendant/Counterclaim Defendant | ) ) | Magistrate Judge Iain Johnston |
| 21 CENTURY SMOKING, INC., | ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| DR DISTRIBUTORS, LLC, CB DISTRIBUTORS, INC. and CARLOS BENGOA, | ) ) ) ) | |
| Counterclaim Defendants. | ) ) | |

**DEFENDANTS' RESPONSE**
**TO PLAINTIFFS' RENEWED MOTION FOR SANCTIONS**

Defendants, 21 CENTURY SMOKING, INC., and BRENT DUKE, by and through their undersigned counsel, submit this Response in opposition to the Plaintiffs' March 25, 2019, Renewed Motion for Sanctions ("Motion").

## I.    INTRODUCTION.

Plaintiffs' Motion represents a failed attempt to use Defendants' unintentional mishandling and untimely production of ESI discovery to defeat Defendants' multimillion-dollar Counterclaim for Plaintiffs' bad faith junior use of Defendants' trademark. Plaintiffs conflate a

1

Rule 37(e) ESI spoliation analysis with their novel and legally unsupported "unclean hands" defense to their bad faith junior use of Plaintiffs' trademark.

Under the appropriate Rule 37(e) analysis, Plaintiffs fail to meet their burden to establish any spoliation, let alone any prejudice to their ability to prosecute or defend their claims and defenses. Nor do they establish any other intentional withholding of production.

As discussed below, there was no perjured testimony, false declarations or other false statements. If there has been, then Plaintiffs' can certainly make use of this as "evidence before a jury at a trial on the merits of the parties' respective claims and defenses. Any belatedly produced ESI complained of by Plaintiffs, at most goes to impeachment, not sanctions.

At most, Plaintiffs may have incurred certain limited extra litigation costs from the confusion caused by former defense counsel's misunderstanding of the fact that Defendants' emails were web-based and did not reside on the four (4) computer hard drives, and thus had not been subjected to the parties' 2014 ESI search protocol. However, any such increased litigation costs are more than offset by the costs incurred by Defendants in replying to Plaintiffs' plethora of erroneous legal arguments and unsupported factual assertions, contained in their 75-page, allegedly $850,000 Motion for Sanctions.

## II.    THE UNDISPUTED FACTS OF DEFENDANTS' SENIOR USE AND PLAINTIFFS' KNOWING AND INTENTIONAL JUNIOR USE.

On June 16, 2014, Judge Kapala granted partial summary judgment in favor of the Defendants on the issue of Defendants' senior use of its trademark. Judge Kapala held:

> Therefore, because of 21 Century Smoking's undisputed use of its trade name and 21 CENTURY SMOKING trademark and service mark in commerce prior to DR Distributors' use of its 21st CENTURY SMOKE mark, 21 Century Smoking is the senior user of the mark. Because DR Distributor admits that the marks are confusingly similar, its junior registration of the 21st CENTURY SMOKE mark

and the related SMOKE THIS BY 21st CENTURY SMOKE *are subject to cancellation*, as the 21st CENTURY SMOKE mark was registered less than five years ago. Accordingly, on the issue of senior use, the court grants summary judgment in favor of 21 Century Smoking.

(Exh.1, Dkt. No. 80, at p.6, emphasis added.)

Judge Kapala's Ruling was based on undisputed facts including, but not limited to the following:

- In early 2009, 21 Century Smoking began using the 21 CENTURY SMOKING mark as its store name for an online retail outlet which sold electronic cigarettes.

- Between March 2010 and July 2010, 21 Century Smoking opened its retail locations in California, Illinois, Nebraska and Ohio, each under the store name 21 CENTURY SMOKING.

- In the spring of 2010, DR Distributors sold its first electronic cigarettes branded with the 21st CENTURY SMOKE mark.

- "DR Distributors admits becoming aware of at least 21 Century Smoking's retail store in Chicago during the summer of 2010. Nevertheless, DR Distributors did not contact 21 Century Smoking concerning the overlap in naming, and this in spite of at least one call and one letter from 21 Century Smoking to DR Distributors asking for an opportunity to discuss the matter."

*Id.* at p. 2.

Judge Kapala declined to cancel Plaintiffs' trademark registrations because he found that a genuine issue of material fact remained as to whether Defendants delayed in seeking cancellation of Plaintiffs' marks and whether Defendants were responsible for the presence of Plaintiffs' 21st Century Smoke mark for a period of time in Defendants' website. *Id.* at p. 7-8.

3

Judge Kapala found that such facts could be the basis of an unclean hands defense to Defendants' Counts V and VI seeking cancellation of the Plaintiffs' trademark registrations. *Id.*

### III. THE PROPER ANALYSIS UNDER RULE 37(e).

Whether Defendants and/or their defense counsel should be sanctioned for any of the alleged ESI discovery misconduct asserted by Plaintiffs is controlled by Fed. R. Civ. Procedure Rule 37, as amended effective December 1, 2015. *Snider v. Danfoss, LLC*, 15 CV 4748, 2017 WL 2973464, at *3 (N.D. Ill. July 12, 2017), *Report and Recommendation adopted*, 1:15-CV-04748, 2017 WL 3268891 (N.D. Ill. Aug. 1, 2017). (Magistrate Johnston's Report and Recommendation and Judge Reinhard's adoption of it are included herewith as Exh. 20.) As Magistrate Johnston explained in Fn. 8, Rule 37(e) is the "sole basis to sanction a party for failing to preserve electronically stored information." *Id.* As discussed below in Section "VI. PLAINTIFFS' UNCLEAN HANDS DEFENSE," Plaintiffs' non-stop focus on their unclean hands defense is entirely irrelevant to the present Motion.

Rule 37(e), as articulated by Magistrate Johnston in *Snider v. Danfoss*, requires a two-step analysis. First, the Court must determine *if* spoliation of evidence occurred. Second, the Court must determine what sanction, if any, is appropriate based on the *prejudice* resulting from the spoliation.

Rule 37(e) provides as follows:

**(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

**(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

4

> **(2)** only upon finding that the party acted with the intent to deprive another party
> of the information's use in the litigation may:
>
> > **(A)** presume that the lost information was unfavorable to the party;
> > **(B)** instruct the jury that it may or must presume the information was
> > unfavorable to the party; or
> > **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

In a Rule 37(e) sanctions motion, the burden is on the moving party to show that spoliation occurred and what sanctions are appropriate. *Lexpath Techs. Holdings, Inc. v. Welch*, 13-CV-5379-PGS-LHG, 2016 WL 4544344, at *4 (D.N.J. Aug. 30, 2016), *aff'd*, 744 Fed. Appx. 74 (3d Cir. 2018)( included herewith as Exh. 49.) As the court in *Lexpath*, stated:

> Generally, the burden of proof for a spoliation claim lies with the party alleging
> spoliation. *See Nwegbo v. Colwyn Borough*, 2013 WL 3479430, *1 (E.D. Pa.
> 2013). Also, "where there is no showing that the evidence was destroyed in order
> to prevent it from being used by the adverse party, a spoliation instruction is
> improper." *U.S. v. Nelson*, 481 Fed. Appx. 40, 42 (3d Cir. 2012). Furthermore,
> "no unfavorable inference arises when the circumstances indicate that the
> document or article in question has been lost or accidentally destroyed, or where
> the failure to produce it is otherwise properly accounted for." *Id.* (internal
> quotations omitted). If the Court determines that spoliation has occurred, then it
> must determine the appropriate sanctions.

*Id* at *2

"Spoliation" exists for purposes Rule 37(e) if: (1) the electronically stored information that should have been preserved in the anticipation or conduct of litigation, (2) such ESI is lost

because a party failed to take reasonable steps to preserve it, and (3) it cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37

As demonstrated below, most of Plaintiffs' assertions of spoliated ESI are just wrong. Emails from Mr. Duke's Yahoo! email account were produced as demonstrated by Plaintiffs' inclusion of this ESI in both their Motion for Summary Judgment as well as their instant Motion. Thus, such ESI was not "lost," even though some of Mr. Duke's Yahoo! emails were belatedly produced.

Further, to the extent other ESI may not have been previously produced, such as some of Defendants' GoDaddy email accounts, what, if any, of this information has been "lost" and cannot be recovered, is still an open question. Defendants have not had the opportunity to complete their analysis of Defendants' ESI from the corporate email accounts (@21centurysmoking.com) hosted at GoDaddy or other ESI Defendants have recovered pursuant to Magistrate Johnston's June 6, 2019 Order. (06/06/19 Order, Exh. 19; Defendants 08/13/19 ESI Status Report, Exh.11.) This analysis is a condition precedent to this Court's determination of the existence of spoliation. This analysis goes to the spoliation issue of whether any of this ESI, if lost, cannot be restored or replaced through additional discovery. If so, such ESI has not been spoliated. Additionally, such analysis is also relevant to the issue of prejudice because the information contained in what is recovered can offset or eliminate the prejudice concerning ESI that was lost.

If spoliation has first been established, in order to determine the appropriate sanctions to be imposed, the court must find either prejudice to Plaintiffs or that Defendants acted with the intent to deprive defendants of the ESI's use in the litigation. Upon either finding, when deciding what sanction to impose, the Court should consider: "(1) the degree of fault of the party who

altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and ... deter such conduct by others in the future." *Capogrosso v. 30 River Court E. Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012) (*quoting Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) ); *Lexpath Techs. Holdings*, 2016 WL 4544344, at *4.

As discussed in the following section, Plaintiffs fail to meet their burden of establishing any ESI spoliation. Even if they could meet their burden, there was no resulting prejudice, let alone even an allowable inference that Defendants or their former defense counsel "acted with the intent to deprive another party of the [spoliated] information's use in the litigation." Fed. R. Civ. P. 37(e).

## IV. ANALYSIS OF PLAINTIFFS'ALLEGATIONS OF VIOLATIONS OF RULE 37(E).

Little if any of Plaintiffs' plethora of assertions of Defendants and former defense counsel's alleged ESI discovery misconduct actually go to Rule 37(e)'s first necessary requirement - whether any ESI was spoliated. Instead, Plaintiffs erroneously focus on the admitted fact that former defense counsel did not subject certain non-spoliated ESI to the parties' 2014 agreed-upon ESI protocol.

Similarly, as to Rule 37(e)'s second requirement, prejudice, including any intent to deprive Plaintiffs of spoliated ESI, Plaintiffs again erroneously focus on the admitted fact that former defense counsel did not subject certain non-spoliated ESI to the parties' 2014 agreed-upon ESI protocol.

Instead of addressing Rule 37(e)'s requirements, Plaintiffs devote their Motion to a thinly veiled attempt to obtain summary judgment on an improper their unclean hands defense, and try

to bootstrap their unclean hands defense to their unsupported assertions that Defendants and former defense counsel intentionally spoliated ESI.

Because a foundation of Plaintiffs' Motion is their assertion that Defendants' and former defense counsels' alleged ESI spoliation was "intentional," it will be addressed first.

### A. DEFENDANTS AND FORMER DEFENSE COUNSEL DID NOT INTENTIONALLY FAIL TO COMPLY WITH ANY DISCOVERY OBLIGATIONS.

Contrary to Plaintiffs' assertions, neither the Defendants, nor *any* former defense counsel engaged in any intentional ESI spoliation, let alone, intentionally committed any other discovery misconduct.

All of the Plaintiffs' assertions of nefarious intent are disproved by the following two facts: (1) former defense counsel did not understand that Mr. Duke's Yahoo! emails in his account, brentduke@yahoo.com, did not reside on Defendants' computers' hard drives, and thus did not subject those emails to searches as part of the parties' agreed-upon 2014 ESI search protocol[1]; and (2) even after realizing that Mr. Duke's Yahoo! emails did not reside on Defendants' computers, former defense counsel did not realize for approximately another fourteen months that Mr. Duke's corporate email account bduke@21centurysmoking.com, also did not reside on Defendants' computers' hard drives, and thus had also not been subjected to being searched as part of the parties' agreed-upon 2014 ESI search protocol. (Exh. 2, Decl. of Thomas Leavens at Dkt. No. 253.1, Exh. 3, 6/4/19 hearing transcript at Dkt. No. 315 at 14:25-15:12; Exh. 4, Email chain re: ESI protocol dated October 7, 2014 to November 7, 2014, between former defense counsel and Plaintiffs' counsel.)

---

[1] The parties "ESI Protocol" was limited to running 20 search terms selected by the party against the other party's ESI.

8

The following is a detailed history of Defendants' production that is relevant to Plaintiffs' Motion.

## 1. THE ORIGINAL PRODUCTION.

On January 18, 2013, Plaintiff DR Distributors, LLC served its First Set of Document Requests on Defendant 21 Century Smoking, Inc. Former defense counsel, Thomas Leavens ("Leavens") of Leavens, Strand & Glover ("LSG"), was involved with the preparation of the Response to this Request as well as the collection of documents responsive to that Request. He was assisted in those activities by one of his then associates, Heather Liberman ("Liberman"). Leavens sat with Mr. Duke as he searched electronically stored information for 21 Century Smoking Inc. Those were the documents produced to Plaintiffs by 21 Century Smoking, Inc. as part of Defendants' Response to Plaintiffs' Request. Included in Defendants' production were certain documents that either referenced Mr. Duke's personal email account brentduke@yahoo.com or that were screenshots from that account. Mr. Duke had been advised to preserve any and all of his electronic records relative to the matter. (Exh. 2, Decl. of Thomas Leavens, Dkt. No. 253.1 at p. 2.) Thereafter, and until former defense counsel withdrew, Mr. Duke continued to cooperate with those attorneys to provide all other electronically stored information, documents, and any other information requested by them.

For example, Defendants, through former defense counsel, continued to produce thousands of pages of documents, Bates numbered 21C 0001 to 21C 63514. That production is referred to herein as the "Original Production." The Original Production represented the entirety of Defendants' document production as of March 19, 2018.

## 2. SUPPLEMENTAL YAHOO! EMAIL PRODUCTION.

Plaintiffs filed their Memorandum in Support of Summary Judgment on January 15, 2018. (Dkt. No. 216 at pp. 34-36.) In that filing, Plaintiffs raised for the first time Defendants'

9

alleged withholding of emails in four specific situations. (*Id.*) In response, former defense counsel investigated Plaintiffs' allegations. (Exh. 5, Decl. of Travis Life at ¶10, Dkt. No. 253.2. at p. 3.) Although former defense counsel did not yet understand that certain emails had not been previously produced, on or about March 15, 2018, they requested that Mr. Duke re-search his brentduke@yahoo.com email to ensure that all emails related these four matters had been produced. They were emails relating to Ms. Woods (a confused customer of Plaintiffs), Kirti Saraswat (Defendants' former consultant) [2], Webrecsol (Saraswat's company), and for requested correspondence with Frank Gu (who worked with a Chinese supplier of e-cigarettes). Mr. Duke was unable to locate any emails related to Ms. Woods, but found emails relating to Saraswat, Webrecsol, and a reply to some previously produced Gu correspondence. Mr. Duke produced those emails to attorney Travis Life on March 17, 2018. (Exh. 5, Decl. of Travis Life at ¶11.)

In turn, former defense counsel Peter Stamatis produced those documents to Plaintiffs' counsel on March 19, 2019. (Exh. 9, March 19, 2018, email from Peter Stamatis to Anthony Davis, Dkt. No. 294-2 at p. 2.) That March 19, 2019 supplemental production consisted of 122 pages and was Bates numbered 21C 63515-21C 63526. *Id.* Defendants refer to this production as the "Supplemental Yahoo! Email Production."

### 3. SECOND YAHOO! EMAIL PRODUCTION.

Shortly after the March 19, 2018, Supplemental Yahoo! Email Production, former defense counsel discovered that Mr. Duke's Yahoo! email account had never been searched in accordance with the parties' agreed-upon 2014 ESI protocol. After making that discovery, former defense counsel notified the Court and opposing counsel right away. And former defense counsel immediately arranged for their e-discovery vendor, 4Discovery, to download all of Mr.

---

[2] Ms. Saraswat's first name is "Keerti." But was sometimes referred to as "Kirti."

Duke' emails from brentduke@yahoo.com, and run searches against them in accordance with the parties' ESI protocol. (Exh. 2, Decl. of Thomas Leavens, Dkt No. 253.1; Exh. 5, Decl. of Travis Life at Dkt. No. 253.2.) After reviewing the documents yielded by those searches for privilege, former defense counsel produced additional documents to Plaintiffs' counsel in both .pdf and native formats on May 31, 2018 and June 1, 2018. (Exh. 10, June 7, 2018, email from Peter Stamatis to Anthony Davis.) This "Second Yahoo! Email Production" was Bates numbered 21C 1000001 through 21C 1015886.

The Second Yahoo! Email Production contained a substantial number of emails to or from bduke@21centurysmoking.com because, as Mr. Duke will explain at the hearing on the Motion, from sometime in 2013 forward, he set his bduke@21centurysmoking.com account to automatically forward received emails to his personal email account at brentduke@yahoo.com.

Other emails in Defendants' email accounts, bduke@21centurysmoking.com, support@21centurysmoking.com and brentduke@yahoo.com, had been produced in the Original Production. Consistent with former defense counsel's practice of asking Mr. Duke to search for responsive ESI. As Mr. Duke will explain at the hearing on the Motion, he would download responsive emails to his computer hard drive and then forward them by email to former defense counsel. Thus, when Defendants complied with the 2014 ESI protocol and ran Plaintiffs' 20 search terms, Defendants produced emails from the above three accounts that had been previously downloaded to Defendants' computer.

### 4. YAHOO! CHATS.

Plaintiffs allege that Defendants and former defense counsel failed to preserve or search Defendants' Yahoo! Messenger chat data, and then allowed it to be spoliated. This, again, is a misrepresentation of the facts.

As explained in the Status Reports to the Court filed on September 13, 2018 and October 10, 2018, in the March 2018 to May 2018 time period, Defendants' e-discovery vendor, 4Discovery, collected Mr. Duke's Yahoo! email account data and subjected such data to the parties' 2014 ESI protocol. (Exh. 12, Dkt. No. 268; Group Exh. 13, Dkt. No. 273.) The responsive documents were then produced to Plaintiffs in both native and .pdf formats on May 31, 2018 and June 1, 2018. (Exh. 10.) 4Discovery subsequently learned that the Yahoo! data recovered did not include Yahoo! Chat messages. At this time, 4Discovery also learned from Yahoo! that such chats should be recoverable up until November 2018. (Group Exh. 13, at Dkt. No. 273-1.)

However, despite all of 4Discovery's reasonable efforts, including signing up for professional Yahoo! support, and engaging with Yahoo! Engineering directly (Group Exh. 13 at Dkt. No. 273-5), 4Discovery was unable to recover any of Mr. Duke's Yahoo! chats. (Group Exh. 13.) Nor were former defense counsel any more successful, even after issuing a Subpoena. (Group Exh. 13; Exh. 50, Subpoena to (Yahoo!) Oath Holdings, Inc.)

In determining if ESI was spoliated, the court must take into consideration whether a party failed to take reasonable steps to preserve it. Fed. R. Civ. Procedure 37(e). The facts show that the ESI was not spoliated. As discussed in the prior paragraph, Defendants' e-discovery provider took such steps. (Group Ex. 13.) When those efforts were unsuccessful, former defense counsel took the additional step of subpoenaing the information. (Exh. 50.)

Even if the court were to find that the Yahoo! Chat ESI was spoliated, Plaintiffs cannot meet their burden to establish any prejudice.

Plaintiffs baldly assert that the Yahoo! Chats would establish that Mr. Duke and Saraswat conspired, on or about September 28, 2011, to place Plaintiffs' mark in Defendants' website. As both Mr. Duke and Saraswat attested to in their Declarations, neither of them placed Plaintiffs' mark in the website's metadata. Moreover, Saraswat's work on the website came to an end in or about April 2010, seventeen (17) months prior to the mark being placed on the website. (Exh. 24, March 19, 2018 Declaration of Brent Duke, Dkt. No. 234.2; Exh. 28, October 13, 2018, Declaration of Saraswat, Dkt. No. 276.)

### 5. GoDaddy.

#### (a) Discovery that GoDaddy emails had not been subjected to the 2014 ESI protocol.

While investigating the failure to subject Mr. Duke's Yahoo! email account to the parties' agreed-upon 2014 ESI search protocol, former defense counsel did not realize that the Defendants' emails in bduke@21centurysmoking.com and support@21centurysmoking.com had also not been subjected to the ESI search protocol.

On or about May 30, 2019, while preparing Defendants' response to this Motion, former defense counsel realized for first time that bduke@21centurysmoking.com and support@21centurysmoking.com were web-based, hosted at GoDaddy, and also had not been subjected to ESI searches in accordance with the parties' protocol. (Exh. 3, 06/04/19, hearing transcript, Dkt. No. 315.) As a result of that discovery, former defense counsel moved to Stay briefing on the present Motion, to Withdraw as counsel. (Dkt. Nos. 300, 303, 305, 307.) Magistrate Johnston granted those motions on June 6, 2019. (Exh. 19, Dkt. No. 313.) The Magistrate's Order also gave Defendants time to obtain new counsel, and further instructed the

Defendants to investigate and determine what ESI existed and/or had been lost. (*Id.*) Defendants fully complied with that Order on August 13, 2019, by filing a Status Report. (Exh. 11, Dkt. No. 318.) At the August 20, 2019 hearing, the Magistrate stayed further proceedings and ordered Defendants to stop any further work on the ESI investigation, other than to preserve ESI. (Exh. 21, 8/20/19 Minute Order, Dkt. No. 320; Exh. 22, 8/20/19 hearing transcript at p.14:20, Dkt. No. 321.)

(b) GoDaddy account's auto-purge.

On or about June 29, 2015, Mr. Duke discovered that the corporate email accounts ending in "@21centurysmoking.com," which were hosted at GoDaddy, contained a default setting that auto-purged, i.e. deleted, sent emails from @21centurysmoking.com email accounts, including bduke@21centurysmoking.com and support@21centurysmoking.com. Mr. Duke discovered this setting while searching for certain emails at the direction of former defense counsel. During that process, he discovered that he could no longer access or find certain emails that he had previously located, and which had been previously provided to former defense counsel for production.

On or about June 29, 2015, he called GoDaddy to find out why he could no longer access those emails. During that call, with GoDaddy's representative, he learned for the first time of GoDaddy's default auto-purge setting. Mr. Duke immediately took steps to notify former defense counsel of these facts. (Group Exh. 23, June 29, 2015, emails from GoDaddy, Brent Duke and Travis Life.)

On March 19, 2018, Mr. Duke signed a Declaration, which states in part:

In or about 2014, I first learned that the default settings for the provider of 21CS's

14

email server, Godaddy.com, automatically deleted email sent from its
@21centurysmoking.com email addresses after a short period. As soon as the provider
settings were discovered, the settings were adjusted to save all sent email.

(Exh. 24, Duke 03/19/2018 Declaration at ¶4, Dkt. No. 234-2 at p. 2)

Mr. Duke is expected to testify that, when he signed the Declaration, he did not recall the
date he called GoDaddy. However, in the process of preparing this Response, Mr. Duke called
GoDaddy to determine if it has a record of his call. He was informed that his above-referenced
interaction with GoDaddy regarding the auto purge default issue in fact occurred on June 29,
2015. (Group Exh. 23, June 29, 2015, emails related to Mr. Duke's GoDaddy support call.) [3]

The aforementioned production history establishes there was no intentional misconduct
concerning *any* of Plaintiffs' asserted instances of misconduct, let alone any intent to deprive
Plaintiffs of any allegedly spoliated ESI or other responsive discovery.

### B. DEFENDANTS DID NOT ENGAGE IN A CONSPIRACY WITH SARASWAT OR ANYONE ELSE TO PLACE PLAINTIFFS' TRADEMARK INTO DEFENDANTS' WEBSITE'S METADATA.

With respect to this topic, Plaintiffs fail to focus on any evidence that Defendants, or any
of their former defense counsel, engaged in any intentional ESI spoliation, let alone intentionally
committed any other discovery misconduct. Instead, they falsely assert that various emails they
possess (i.e. non-spoliated ESI), establishes (as a matter of law) that Mr. Duke and Saraswat are
lying about placing Plaintiffs mark into Defendants' website. These arguments go to
impeachment and are irrelevant to the issues under Rule 37(e). As discussed below, Plaintiffs
assertions that anyone is lying or that there was any intentional discovery misconduct are false
and unsupported by any evidence.

---

[3] Current defense counsel have requested GoDaddy's records related to this June 29, 2015, phone call. As of the filing of this brief, defense counsel has not received them.

15

Plaintiffs assert in their unclean hands affirmative defense to Defendants' Counterclaims that Defendants or their consultant, Saraswat, placed Plaintiffs' 21st Century Smoke mark into the keyword metadata of Defendants' website, www.21centurysmoking.com. Plaintiffs' mark appeared in Defendants' website's metadata from on or about September 28, 2011 through on or about March 25, 2013. (Exh. 25, Brian Brown's Expert SEO Rebuttal Report, Dkt. No. 218-29 at p.49:11-17.)

How Plaintiffs' mark appeared in Defendants' website is a hotly disputed question of fact, one that is also the subject of expert testimony. Most importantly, it is an issue for the trier of fact, the jury. Though disputed, this question of fact actually has little if any relevance. Here, *both* Defendants' expert *and* Plaintiffs' expert, Peter Kent, agree that the placement of Plaintiffs' mark would have been of little if any value to Defendants. (*Id.* at pp 42:18 to 45:6.) Defendants' expert Brian Brown stated in his Report in part:

> Mr. Kent himself ascribes little to no search optimization value to meta keywords, saying as much in his final report "It is probable that in fact placing keywords into the Keywords meta tag has no effect on search-engine optimization." [Peter Kent, Expert Report, November 23, 2015, 20 p. 25, #87, Exhibit X.C.4.a)]

(*Id.* at p. 42:18-21.)

In any event, it is undisputed that Mr. Duke removed Plaintiffs' mark from Defendants' website after first finding out about it while reading the Declaration of Plaintiffs' former employee, Martin Hewes, filed by Plaintiffs on March 7, 2013. (Exh. 26, Duke 06-17-2015 Deposition at pp. 483-501.)

Both Mr. Duke and Saraswat have declared under oath, *inter alia,* that neither of them were involved in the placement of Plaintiffs' trademark into the metadata of 21centurysmoking.com, and that Saraswat only performed *work* on the 21centurysmoking.com

website from 2009 through no later than April 2010 - which is well before the September 28, 2011 appearance of the metadata at issue.[4] (Exh. 24 March 19, 2018 Declaration of Brent Duke, Dkt. No. 234.2, stating he believed Saraswat stopped working on the site by April 2010; Exh. 28, October 13, 2018, Declaration of Saraswat where she gives a February 2010 date for her last work on the site and attaches her final invoice as support, Dkt. No. 276.)

Mr. Duke's and Saraswat's testimony is further supported by the opinions of Defendants' expert on SEO, Brian Brown. (Exh. 29, October 16, 2019, Declaration of Brian Brown.) Mr. Brown's opinions include the following:[5]

- Mr. Duke was neither capable nor had he demonstrated the skills or knowledge required to manually modify the meta tags;

- There is no evidence of Mr. Duke modifying meta tags in Zen Cart;

- There is no evidence that defendants added the "21st Century Smoke" text, provided it to anyone else, or instructed anyone to include it;

- The meta keywords tag is not specific to search engines nor was it used by search engines for ranking;

- The meta description tag was not used by search engines for search result ranking;

- There is no evidence that searchers saw the "21st century smoke" text in search results for 21centurysmoking.com or clicked on search results for 21centurysmoking.com because of it; and

- There is no evidence that the "21st Century Smoke" text was used in title tags and defendants demonstrated no effort to optimize for the "21st Century Smoke" text.

---

[4] While Mr. Duke stated he believed Saraswat did not *work* on his website after April 2010, Saraswat, based on her last invoice, stated she did not *work* on 21 Century Smoking's website after February of 2010. The discrepancy is at best collateral, where Plaintiffs' theory is that Saraswat placed Plaintiffs' mark in the website on or about September 28, 2011.

[5] The bulleted opinions are Mr. Brown's summary statements of his opinions. Mr. Brown's opinions are fully explained along with the bases therefor in Mr. Brown's expert report at Exh. 5 hereto.

1. **PLAINTIFFS' SPECIFIC ASSERTIONS OF ALLEGED INTENTIONAL DISCOVERY MISCONDUCT.**

Plaintiffs assert the following as their factual bases for sanctions. These bullet points below are *verbatim* quotes from Plaintiffs' brief. (Dkt. No. 294, at pp 11-12.)

- Duke falsely testified that he possessed no emails with Saraswat and disobeyed a June 11, 2015 Order for their production. (Exh.30, Dkt. No. 132)

- On March 19, 2018, Defendants selectively produced withheld Saraswat e-mails with Duke, misrepresenting they were all irrelevant. The production was accompanied by false client and attorney declarations that misrepresented the date of Mr. Duke's last communication with Saraswat, and contradicted documents in that production, while intentionally withholding more than 100 other responsive and relevant e-mails with her.

- Defendants submitted a false declaration from Saraswat, setting forth a different date of last communication, contradicting the documents they produced, and belying statements made by Duke to his SEO expert witness that Saraswat was working on his website in September 2011 when Plaintiffs' trademark was placed in Defendants' website metatags.

To support the above assertions, Plaintiffs rely on the group of emails cited in Moffit Decl. at paragraph 5. (Exh. 31, Moffitt Decl. at Dkt No. 294-1 at p. 2.) None of those emails contradicts the statements contained within the Declarations of Saraswat and Mr. Duke that they did not place Plaintiffs' mark in the website or that Saraswat stopped doing *work* on 21Centurysmoking.com (as opposed to discussions of websites) by February of 2010.

While it is true that some of these emails post-date February 2010, they do not involve "work" on the website or otherwise establish that Saraswat's or Mr. Duke's Declarations are false. Nor do any of these emails establish, or allow any inference, that Mr. Duke testified falsely about his efforts to search for Saraswat emails. (Exh. 32, Plaintiffs' Rule 56 Statement, paragraphs 139-142, which is Plaintiffs' characterization of Mr. Duke testimony they erroneously assert was intentionally false, at Dkt. No 216-2 at pp. 57-59.) Although, as discussed above, Mr. Duke's former defense counsel were confused about the fact Mr. Duke's emails were not maintained on the company's computers, Mr. Duke's testimony was truthful.

18

Nor do Defendants' expert's Brian Brown's notes of his phone interview with Mr. Duke establish, or even allow any inference, that Saraswat performed *work* on the website after February 2010. (Plaintiffs' brief at p. 21, last paragraph at Dkt No. 294 p. 29.) Mr. Brown's notes and deposition testimony, consistent with Mr. Duke's deposition testimony, only establish that anyone who had been given access, i.e., the password, still had access, including Saraswat. (Exh. 33, Moffitt Decl. at Exh. R (notes of Defendants' expert, Brian Brown.)) Thus, the notes neither establish that the Declaration of Saraswat is false, nor that Mr. Duke's Declaration or testimony is false. Nor have Plaintiff proffered any other evidence that Saraswat accessed the website after February of 2010, let alone on or about September 28, 2011.

Similarly, Defendants and former defense counsel complied with the Court's June 11, 2015 Order, which stated in relevant part "defendants shall provide complete answers to the interrogatories and produce the requested documents as explained in open court." (Exh. 30, Dkt. No. 132.) Plaintiffs' Motion to Compel was focused on compelling Defendants to provide, in Plaintiffs' opinion, less evasive answers to interrogatories. (Dkt No. 126.) There is only a single paragraph of the 15-page motion even devoted to document requests.

At the hearing on the Motion to Compel, the outstanding document requests were not at issue because former defense counsel acknowledged they were collecting the responsive documents and hoped to produce them ASAP. (06/11/15 hearing transcript at pp. 8:20, 11:6-24.) At the hearing, neither party nor Magistrate Johnston made any express reference to documents relating to Saraswat.

When Defendants and former defense counsel submitted Defendants' Supplemental Answers and document production, they all believed they were fully complying with the Court's June 15, 2015 Order. At that time, no one knew that certain GoDaddy emails had been auto

19

purged as a result of the above described GoDaddy default settings, or that Defendants' Yahoo! and GoDaddy email accounts had not been subjected to the parties' 2014 ESI protocol.

Nor did Mr. Duke, as now asserted by the Plaintiffs, misrepresent that the untimely produced emails were "irrelevant." In making that assertion, Plaintiffs are referring to former defense counsel Peter Stamatis' March 19, 2018, email to Plaintiffs' counsel Mr. Davis, producing 122 pages of Saraswat related emails. (Exh. 34, Moffitt Decl. at Exh. A, at Dkt. No. 294-2 at p.2.)

> Mr. Stamatis actually stated in full:
>
> Within the last 48 hours, we received the attached additional documents from 21CS. The documents are related to DR' s claim of missing documents, which was raised for the first time in its summary judgment motion. They have been Bates stamped 21C 63515-21C 63626. We do not believe they are relevant to any claim, other than that they belie assertions of withholding unfavorable documents.

It is expected that Mr. Stamatis will further testify at the October 28, 2019, hearing that at the time of the Supplemental Yahoo! Production, he still did not understand how or why these emails had not been previously produced. It is expected that Mr. Stamatis will testify that by "irrelevant," he meant that the recently-produced documents did not support Plaintiffs' theory that Mr. Duke and Saraswat conspired in September of 2011 to place Plaintiffs' trademark in the metadata.

### 2. PLAINTIFFS' ASSERTIONS ARE IRRELEVANT TO A RULE 37(E) ANALYSIS.

In sum, as demonstrated above, Plaintiffs' assertions that Mr. Duke or Saraswat were lying are not only irrelevant to their Motion, but are wrong. These arguments at best, go to impeachment and are for a trial on the merits.

### C. THE DEFAMATION CLAIM AND BILL EDMISTON.

The alleged ESI discovery misconduct concerning Defendants' defamation claim is wholly unrelated to the trademark claims, counterclaims and defenses. It is not, as Plaintiffs contend, a proper basis to dismiss Defendants' Counterclaims concerning their trademark. Further, untimely produced emails and recordings that fail to even capture the alleged defamatory parts of the conversation, do not amount to spoliated ESI, let alone prejudice the Plaintiffs. This is particularly true where: (1) Defendants moved to dismiss their own defamation claim; (2) Defendants' motion was denied by Magistrate Johnston based on Plaintiffs' objection, and (3) Defendants do not intend to pursue or try this claim. As discussed below, there is no spoliated ESI, let alone prejudice therefrom. Again, Plaintiffs' arguments are for impeachment for the jury at trial.

Nonetheless, Plaintiffs assert the following as factual bases for sanctions under Rule 37(e). Again, these bullet points below are *verbatim* quotes from Plaintiffs' brief at Dkt. No. 294 at pp 11-13.

- Defendants concealed documents evidencing the fact that Duke and his agent and business partner, Edmiston, orchestrated an encounter with Plaintiffs' representative at a trade show, and concealed the existence of a second, exculpatory recording.

- Defendants withheld e-mails referencing communications between Edmiston and Defendants' lawyers that make clear there were multiple recordings, and counsel let them perjure themselves and testify there was only one recording.

- Defendants withheld evidence and relied on perjured testimony in trying to avoid summary judgment.

Importantly, there is absolutely no allegation of spoliation, or any evidence that anything was intentionally withheld.

Here, Bill Edmiston ("Edmiston") testified that, in attempting to record the conversation with Adam Olcott, he made two attempts that resulted in two recordings, neither of which

21

captured any of the alleged defamatory statements of Olcott. (Exh. 35, Edmiston Deposition (06-29-2015) at pp. 32-33, 79-86.) When Edmiston was asked during his deposition if he sent both recordings to Mr. Duke, he testified, "No. I think it was just the first one because the second one, there wasn't anything." (*Id.* at p.80:12-13.)

Fully consistent with Edmiston's testimony, the emails cited by Plaintiffs do not establish that Edmiston sent two recordings. The email dated October 2, 2013 reveals that Edmiston was trying to send "PART TWO" of what appears to be the first attempted recording, but it was too long. (Group Exh. 36, Moffitt Decl. at Exh. W at Dkt No. 294-2 at pp. 223-225.) The other emails reveal that Edmiston was unable to send a second recording. (Group Exh. 36, Moffitt Decl. at Exhs X, Y and Z respectively at Dkt. No. 294-2 at pp.226-231.) Even if one could somehow conclude these emails establish that Edmiston sent the second recording, they merely establish that Edmiston was wrong when he testified at his deposition that he *thought* he only sent one recording. They do not establish perjury, or anything close to it. Indeed, if the testimony of a witness at a deposition that varies from the contents of an email constituted perjury, there would be hundreds of thousands of prosecutions for perjury. Furthermore, contrary to Plaintiffs' assertions, the emails actually establish that Mr. Duke had no intent to withhold the second recording, as he indicated that he was providing Edmiston's information about the second recording to former defense counsel. (Group Exh. 36, at Dkt. No. 294 p. 229-331.)

At page 25 of Plaintiffs' brief, they erroneously claim that the above emails establish that paragraph 113 of Defendants' Supplemental Rule 56.1(a)(3) Statement was knowingly false. Paragraph 113 states: "Edmiston attempted to record this conversation, but was only able to record the very beginning of Olcott's claims. (Exh. 37, Dkt. No 234 at p. 5.) Nothing in the

emails relied upon by Plaintiffs, even imply Paragraph ¶113 is false, let alone that it was knowingly false.

At page 26 of Plaintiffs' brief, Plaintiffs argue:

Defendants' failure to search the yahoo.com account, and spoliation of emails from the bduke@21centurysmoking.com email offer no excuse here, as four of the five emails cited above were to that account, which Defendants were admittedly capable of producing in 2015, but did not. Moffitt Decl. at Exhs. V, W, Y, and AA. (Included in Defendants' Group Exh. 36.)

Plaintiffs' argument makes no sense because, *they have the emails!* Thus, there could be no spoliation, much less any form of prejudice.

Lastly, Plaintiffs take issue with another email, Moffitt Decl. at EX BB, which relates to the Edmiston recording(s). (Group Exh. 36 at Dkt. No 294-2 at pp. 235-244.) Again, this email was produced in the Original Production. It was not withheld and in fact was used by Plaintiffs as Exhibit J at Edmiston's June 29, 2015 deposition. (Exh. 35, Edmiston Deposition 06-29-2015 at p. 80:22 to page 86.)

Accordingly, again, Plaintiffs' factual assertions are not relevant to a Rule 37(e) analysis and again, are in any event unfounded.

### D. PLAINTIFFS' REMAINING SPURIOUS ASSERTIONS.

Plaintiffs make several other factually spurious assertions that are again, directed at information that was produced, not spoliated. Again, Plaintiffs' assertions of untimely produced information goes to impeachment, not a Rule 37(e) motion. More importantly, their assertions of intentional misconduct are unfounded.

#### 1. ONLINE SALES FIGURES.

At pages 3 and 29-31 of their brief, Plaintiffs assert that "Defendants concealed and withheld online sales data that contradicts their sales, growth, market penetration, and damages

arguments, including their expert's opinions." Plaintiffs cite to Moffitt Decl. at Exhs. EE and FF, attached hereto as Exhs. 38 and Exh. 39.

Again, the fact the email in Moffitt Decl. Exh. FF was produced, even belatedly, establishes it is *not* spoliated ESI. Additionally, there is no difference between the *store sales figures by location* information in Moffitt Decl. Exh, EE and Moffitt Decl. Exh. FF. Exh. FF merely *also* includes online sales. There is no inconsistent or contradictory data between the two exhibits.

As Mr. Duke will testify at the hearing, the online sales figures in Exh. FF are not complete or final numbers as evidenced by the large difference between Exh FF online sales and the figures used by Defendant's expert. Further, Plaintiffs provide no support for their assertion that the email in Moffitt Decl. Exh. FF, let alone the information, was relied upon by Defendants' experts' in their reports. Even if it had been, this is for impeachment, not a basis for Rule 37(e) sanctions.

Further, the relevance of this information is conditional at best. Given Judge Kapala's summary judgment finding that Plaintiffs engaged in knowing and intentional junior use of their mark, Plaintiffs are likely to be found by a jury to be "bad faith" junior users. In that circumstance, Defendants' damages would not be limited based on their market penetration and they could seek disgorgement of all of Plaintiffs' profits, regardless of Defendants' market penetration.

Further, although Plaintiffs had ample time to, they do not assert Moffitt Decl. FF would have altered their experts' opinions that the value of sales lost due to Plaintiffs' trademark appearing in Defendants' website for 18 months was only $343,080. (Exh. 51, November 23, 2015 Expert Report of Leslie Solomon, Dkt. No. 232-45 at p. 5 of 10)

## 2. THE CHINESE MANUFACTURER.

At pages 3 and 27-28 of their brief, Plaintiffs assert that "Defendants concealed e-mail exchanges between Duke and its Chinese manufacturer advising that Duke had sent one of Plaintiffs' e-cigarette batteries, asking that a compatible product be manufactured for Defendants to sell to Plaintiffs' customers." Defendants further argue that Defendants "actively sought . . . to modify their e-cigarette product to be interchangeable with Plaintiffs' product—a fact never before disclosed." (Plaintiffs' brief at p. 27, second to last paragraph.)

Plaintiffs' arguments, at best, concern belatedly disclosed ESI, not spoliated ESI. As Plaintiffs again improperly argue that the belatedly disclosed information establishes their unclean hands defense and thus supports the instant Motion. Plaintiffs' unclean hands defense, if a proper defense at all to their junior use, would be an issue for the jury on the merits, not an issue to be decided in this Motion.

Plaintiffs fail to point to any discovery Request to which the ESI discussed below is responsive. And as discussed, the legal copying of a non-patented product is not the basis for an unclean hands defense in a trademark action.

Plaintiffs cite to Moffitt Decl. Exh. CC, a May 24, 2012, email from Brent Duke to Frank Gu stating in part:

> "I also put a 21st Century smoke bat in there.. I wanted to see if you had a way to
> make this threading . . . we get a lot of their customers, and it would be nice to
> have that threading    and what about 510 threading?"

(Exh. 40 at Dkt. 294-2 at 246.)

There is no basis in the record that establishes that any physical part of the e-cigarettes sold by 21st Century Smoke are patented, let alone the threading. Mr. Duke will testify at the

hearing that his reference to "510 threading" refers to a standard and common threading. Nor does the email otherwise establish any unfair competition or other alleged infringement.

As Mr. Duke is expected to testify, he believes he considered selling e-cigarette oil cartridges with threading compatible with 21st Century Smoke "bat" i.e. battery, because of the confusion caused by Plaintiffs' trademark. Plaintiffs' customers would show up at Defendants' stores complaining that an oil cartridge purchased from Defendants did not work with what turned out to be Plaintiffs' bat. The complaining customer did not realize they did not purchase the bat at issue from Defendants actually purchased Plaintiffs' product. This cost Defendants time and money interacting with these confused customers when they showed up at Defendants' stores. This was particularly the case where Defendants advertised a lifetime warranty and Plaintiffs' confused customers expected Defendants to make good on that warranty. This is consistent with Mr. Duke's prior June 23, 2015 deposition testimony. (Exh 41, Duke 06-23-15 Dep. pp 13-20.) As Mr. Duke will explain, 21 Century Smoking never went forward with making compatible products.

Plaintiffs' assertions of nefarious discovery misconduct are merely the *allegedly* untimely disclosure of the 2012 email to Frank Gu showing Defendants' consideration of selling a product that legally contained threading compatible with Plaintiffs' non-patented threads. That consideration was an attempt to deal with the product confusion created by Plaintiffs' knowing and intentional junior use, now conclusively established in Judge Kapala's summary judgment Ruling. This is not a proper basis for sanctions, let alone dismissal of the Defendants' Counterclaims.

### 3.  LAURIE DUKE'S SALE TO PLAINTIFFS' CUSTOMER.

At pages 3 and 28 of their brief, Plaintiffs assert that "Defendants concealed an e-mail exchange between Mr. Duke's wife (Laurie) and Mr. Duke, where Laurie boasts that she made a

sale to Plaintiffs' customer Plaintiffs rely on a February 4, 2012 email from Laurie to Mr. Duke.

(Exh. 42, Moffitt Decl. Exh. DD.)

This email provided:

**pac view did $1172.85 today...
online did ~$2500...I had a $220 sale from a 21st Century Smoke customer, highly discounted but big sale...called her back and she talked and talked, Brayden started getting really fussy. I explained that he had Autism and didn't always know to be quiet, I earned her respect by being a working mom at home with a special needs child and she even allowed me to call her back after the boys went to bed. Gave her a good deal, and she's going to refer all kinds of people to us (she wants the free cartridges). She's a waitress in her 50's near San Jose. Did a small order for George Newcombe and, Trumpower had a nice little order too. So without Lincoln Park, the biz did $7500 today.**

This email does not establish that Defendants were "stealing" Plaintiffs' customers. In short, trying to sell to your competitor's customers is not "stealing." There is nothing that even implies unfair competitive conduct, let alone provides any evidence to support Plaintiffs' unclean hands defense. As Laurie Duke attested to in her declaration, before she sold any product to Plaintiffs' customer, she informed the customer when the customer called, that she had not reached 21st Century Smoke but had instead contacted 21 Century Smoking.[6] Then, as described in the above-referenced email, Laurie justifiably and proudly told her husband how she had sold product to Plaintiffs' customer while juggling being a working mom from home taking care of their autistic child. (Exh. 52, Declaration of Laurie Duke.)

At p. 28 of their brief, Plaintiffs incorrectly argue that the above email establishes that Defendants' Responses to Plaintiffs' Rule 56 at ¶¶ 112-113 are false.

It is undisputed that 21Century Smoking communicated with customers confused as a result of Plaintiffs' knowing and intentional junior use of its mark. However, Defendants dispute

---

[6] As previously discussed with the Court in the phone status of September 30, 2019 [Dkt. No. 335], the Dukes reside in California and Laurie Duke is unavailable to testify on days when her husband, Mr. Duke, is in Chicago at the hearing. To the extent Plaintiffs have previously indicated they wanted Mrs. Duke to testify at the sanctions hearing, on September 30, 2019, Defense emailed Plaintiffs' counsel Ms. Duke's availability. Exh. 43, 09-30-19 email from Kevin Salam to Anthony Davis and Robert VonOhlen. Plaintiffs' counsel never responded.

that any such communications were improper. Defendants' Responses to ¶¶112-113 are not false. (Exh. 44, Defendants Rule 56.1 responses to 112-116 at Dkt. No. 234-9 pp. 45-47.) Nor in light of the above email, do these responses establish any intentionally improper conduct, let alone do they constitute prejudicial discovery misconduct by Defendants or their former defense counsel.

#### 4. MR. DUKE'S ALLEGED "FALSE BELIEF" ABOUT THE VALUE OF THE PLACEMENT OF PLAINTIFFS' MARK IN METADATA.

At pages 4 and 31-37 of their brief, Plaintiffs assert that an untimely produced email chain from April 8, 2009 involving Mr. Duke and his former college friend, Otis Chandler, establishes that Mr. Duke testified falsely that: (1) based on his communications with Otis Chandler, Mr. Duke *believed* and *understood* that the 2011 placement of Plaintiffs mark in Defendants' website would *not* have improved the website's search ranking, and (2) these emails established that Mr. Duke lacked the skills and ability to place Plaintiffs' mark into the metadata in 2011. Plaintiffs rely on Moffitt Decl. at Exh. HH, attached hereto as Exh. 45.

As Mr. Duke is expected to testify, the emails at issue are from early 2009, when the website was based on a simple template platform (Dreamweaver) and not on the much more complicated Zen Cart platform that was used instead of Dreamweaver beginning later in 2009. This Zen Cart platform was in use when, on or about September 28, 2011, Plaintiffs' mark first appeared in Defendants' website's metadata. Further, nothing on the face of these emails establishes that the matters being discussed in April of 2009 demonstrate Mr. Duke's deposition testimony about his belief and understanding with respect to SEO were false, or that he lied

28

when he testified he lacked the skills in 2011 to insert the mark in the metadata using the Zen Cart platform.[7]

Additionally, these emails actually support Mr. Duke's testimony that he lacked the skills to insert Plaintiffs' mark. Indeed he forwarded Mr. Chandler's email to Saraswat and stated: "here is an email from otis..i don't know if he is right about this stuff, just thought i'd pass it along..i showed him the site yesterday." (Exh. 45 at Dkt. No. 294-2 p. 315.)

Again, Plaintiffs' assertions about these belatedly produced emails do not establish any ESI spoliation and do not even impeach Mr. Duke's testimony.

### 5. BRYAN "SCOTT" KOS.

At pages 4 and 33-39 of their brief, Plaintiffs accuse Defendants and former defense counsel of not telling them that "Bryan Scott" was also later known as "Bryan Kos" and that this constitutes intentional ESI discovery misconduct. Plaintiffs base their argument upon Mr. Duke's 2008 work on an e-book that he did for a "Bryan Scott" on behalf of Saraswat and her company Webrecsol. All of which Mr. Duke testified to at his June 16-17, 2015 deposition.

Plaintiffs' argument is that it is Defendants' fault that Plaintiffs did not figure out sooner that the "Bryan Scott" of the 2008 e-book project was actually an individual whose full name is Bryan Scott Kos, and who later worked for 21 Century Smoking using the name Bryan Kos.

Plaintiffs blame Defendants and former defense counsel for not telling them that the Bryan Scott of 2008 was the same as the Bryan Kos disclosed in 2013, despite the following:

- Defendants' February 15, 2013, answer to Interrogatory No. 3, timely disclosed "Bryan Kos", 21 Century Smoking's employee, as someone "responsible for the marketing,

---

[7] Defendants' expert Brian Brown's review of Moffitt Decl. Exh HH did not alter his opinion that Mr. Duke lacked the skills to have placed Plaintiffs' trademark in the website as it appeared in 2011 or that the search rankings were improved by the 2011 placement of Plaintiffs' mark in the websites metadata. (Exh. 29, October 16, 2019, Declaration of Brian Brown at p. 2, ¶2.)

distribution, sale, advertising or promotion of the product and/or services" sold by 21 Century Smoking. And Mr. Kos' full contact information was provided. (Exh. 46, Moffitt Decl. Exh. ZZ, Dkt. 292-2 at p. 631.)

- Despite having Mr. Kos' contact information, Plaintiffs chose not to depose Bryan Kos, at which time they could have learned that Bryan Kos also went by the name Bryan Scott and was the Bryan Scott referred to in exhibit 15 to Brent Duke's June 17, 2015 deposition.

- On June 17, 2015, Plaintiffs deposed Mr. Duke about (1) his 2008 work on the e-book project, (2) the 2008 proposal on Webrecsol letterhead to Bryan Scott that Mr. Duke testified he did not recall being aware of in 2008 or otherwise involved in its preparation, and (3) Mr. Duke's explanations of what Plaintiffs assert was his inconsistent testimony from the first day of his deposition testimony on June 16, 2015. (Exh. 47, Duke 06-17-2019 Dep. at pp. 388-403 and Dep. Exh 15 thereto.)

As to Moffitt Decl. Exh. KK cite by Plaintiffs, it is a January 8, 2009 chat, unrelated to 21Century Smoking, which did not even exist then. As to "that flyr site", Mr. Duke then states, "it is a template, so my 'work' better be ok" and then I wouldn't be able to do that site from beginning to end though, no way!..". (Exh. 48, Moffitt Decl. Exh. KK). This conversation does not establish that Mr. Duke falsely testified that, in 2011, he did not have the ability to insert 21st Century Smoke into metadata of Defendants' website, which at that time was using a much more complex platform (Zen Cart) than the simple templates Mr. Duke was utilizing.

Based on the above, there is no merit to Plaintiffs' assertions that Defendants and former defense counsel spoliated any ESI related to Mr. Kos or otherwise engaged in intentional ESI discovery misconduct or any other discovery misconduct.

### 6. CORRUPTION OF 4DISCOVERY'S STORAGE DRIVE WITH DEFENDANTS' HARD DRIVE IMAGES.

Plaintiffs also incorrectly argue that Defendants' former e-discovery vendor's, (4Discovery's) loss of previously imaged hard drives of Defendants' four computers *that were subjected to the parties' agreed-upon 2104 ESI protocol,* constitutes spoliation.

As detailed in 4Discovery's Manager's Chad Gough's January 18, 2019 correspondence, attached to Defendants' January 22, 2019 Report to the Court, the images of Defendants' hard drives that were corrupted were previously subjected to the parties agreed-upon 2014 ESI search protocol. (Exh. 17, Dkt. No. 288 at pp. 4-5.) Further, Mr. Gough's correspondence shows that 4Discovery took all reasonable steps to both preserve and recover the images from 4Discovery's corrupted storage drive, including retaining other experts to try and recover the images from 4Discovery's corrupted storage drive.

Rule 37(e) applies only to ESI that is "lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." As explained by Mr. Gough, the corruption (loss) of the previously searched hard drive images was not due to any failure to take reasonable steps to preserve the images. More importantly, the corrupted ESI had already been subjected to the parties' 2014 ESI protocol, and responsive documents were produced. Plaintiffs cannot establish any prejudice from the corrupted images.

### 7. OTHER UNSEARCHED EMAIL ACCOUNTS.

Plaintiffs assert that Defendants and former defense counsel failed to search other employees' email accounts such as Laurie Duke and Brandon Duke who were identified in Rule 26 Disclosures.

At the time Plaintiffs filed the instant Motion, March 25, 2019, Defendants had not subjected certain email accounts, including those of Laurie Duke and Brandon Duke, to the

31

parties' agreed-upon 2014 ESI protocol. However, since then, complying with Magistrate

Johnston's, June 6, 2019 Order (Exh. 19), Defendants have recovered such ESI. (Exh. 11, Dkt.

No. 318.) Thus, this information is not spoliated.

### V.   NO SANCTION WARRANTED.

Because there was no ESI spoliation, there is no basis to sanction Defendants or their

former defense counsel under Rule 37(e). Additionally, Plaintiffs failed to meet their burden to

establish prejudice from any of the alleged spoliation, let alone any intent to deprive Plaintiffs of

the allegedly spoliated ESI.

To the extent this Court decides under some basis other than Rule 37(e), that a monetary

sanction is warranted, Defendants' strenuously disagree. Plaintiffs Motion is a thinly veiled

attempt to turn an unfortunate, but unintentional, discovery mistake, into a golden ticket granting

them a pass on what Judge Kapala has already found to be Plaintiffs knowing and junior use of

their mark. Plaintiffs have admitted they already spent $850,000 pursuing this Motion. And

Defendants have incurred substantial legal fees defending their Motion. Enough is enough. It is

time to move this matter to trial.

### VI.   PLAINTIFFS' "UNCLEAN HANDS" DEFENSE.

Although Plaintiff's unclean hands defense is not relevant to a Rule 37(e) analysis,

Plaintiffs relentless reference to their unclean hands defense demands the following discussion.

In their Motion, Plaintiffs broadly request that this Court deny Defendants all relief

requested in their Counterclaims as a result of Defendants' "unclean hands." (Plaintiffs brief at

pp. 69 et seq., Dkt. No. 294 at p. 77 et seq.) Plaintiffs attempt to improperly bootstrap and

resolve their factually disputed unclean hands affirmative defense as part of their Motion under

Rule 37. Rule 37(e).

Plaintiffs' unclean hands affirmative defense is a completely separate and distinct issue from ESI spoliation. Similarly, the doctrine of unclean hands does not include any analysis of alleged ESI spoliation or other litigation discovery violations. Plaintiffs request for relief is overbroad, not related to the alleged discovery violations, and should be denied.

In response to Defendants' trademark infringement and cancellation claims, Plaintiff asserted, among other things, the equitable affirmative defense of "unclean hands," based on Defendants' alleged use of Plaintiffs' mark as a meta-tag in Defendants' own website. Specifically, Plaintiffs asserts that Defendants mis-used the term "21st Century Smoke" as a meta-tag in its website and that Defendants hid information about such use and that amounts to unclean hands that would warrant this Court denying Defendants all relief.

However, whether a trademark owner has also allegedly infringed a defendant's purported trademark rights or has somehow misused its own trademark is not grounds for an unclean hands defense or even an affirmative claim for trademark misuse. *Flow Control Industries Inc. v. AMHI Inc.*, 278 F. Supp. 2d 1193, 67 U.S.P.Q.2d 1452 (W.D. Wash. 2003) (The trademark owner's alleged infringement of a mark of the accused infringer "has nothing to do with" the alleged infringement which is the subject matter of the litigation. . . "The remedy for plaintiff's alleged infringement is, of course, a counterclaim ... .") *Juno Online Services v. Juno Lighting, Inc.*, 979 F. Supp. 684, 691, 44 U.S.P.Q.2d 1913 (N.D. Ill. 1997) ("Trademark owner Juno Lighting's acquisition of alleged infringer's name Juno Online as a domain name did note create an affirmative cause of action for trademark misuse.")

Thus, Plaintiffs' allegations with respect to Defendants' use of the meta-tag could be the basis for Plaintiffs' claim of trademark infringement against Defendants – but Plaintiffs knows they will not succeed on their claim for infringement because they have no trademark rights to

assert. Plaintiffs have admitted to knowing of Defendants and Defendants' use of its "21 Century Smoking" mark before Plaintiffs started using the confusingly similar "21st Century Smoke" mark. Thus, Plaintiffs are not good faith junior users of the mark. As the 7th Circuit explained in *Money Store v. Harriscorp Finance, Inc.,* "[a] good faith junior user is one who begins using a mark with no knowledge that someone else is already using it." 689 F.2d 666, 674 (7th Cir. 1982). Thus, Plaintiff is not a good faith junior user and has no valid trademark rights to assert.

Generally, the unclean hands doctrine applies only "to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief.*" *Packers Trading Co. v. CFTC.,* 972 F.2d 144, 148 (7th Cir. 1992)(*quoting Precision Instrument Mfg.*, 324 U.S. 806, 814 (1945) (emphasis added.) For the purposes of an unclean hands defense in a trademark case, a plaintiff's misdeed is considered unrelated to the litigation's subject matter "when the right for which the plaintiff seeks protection in the injunction suit did not accrue to him because of the misdeed." *Redbox Automated Retail, LLC v. Xpress Retail LLC,* 2018 WL 950098, at *4-5 (N.D. Ill. Feb. 20, 2018) (Citing Restatement (Second) of Torts § 940, cmt. c (1979). In other words, any unclean hands defense in this case must relate to Defendants' acquisition of its own purported trademark rights. See, *Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 349, 138 U.S.P.Q. 101 (9th Cir. 1963)("[M]isconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands. … What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts.")

The cases cited by Plaintiffs in support of thier broad request for relief based on unclean hands are all distinguishable from the instant situation. They are all *consistent* with the unclean hands case law discussed above. And none of them deal with sanctions, let alone Rule 37(e).

Finally, this Court should not grant dismissal of all relief requested in Defendant's claims for infringement and for cancellation of Plaintiff's trademark registrations as it would not be in the public interest. Denying Defendants all relief would allow Plaintiffs to continue to use a confusingly similar mark and to maintain trademark registrations for confusingly similar marks when it is a bad-faith junior user of the mark. This would not be in the public interest. *See*, *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 2018 WL 950098, at *4-5 (N.D. Ill. Feb. 20, 2018) (Citing Restatement (Third) of Unfair Competition § 32 (1995) ("If a failure to enjoin the defendant's infringement would subject the public to a significant risk of harm, even substantial misconduct by the plaintiff will not preclude an injunction, particularly when the plaintiff's misconduct can be challenged directly through a counterclaim or an independent action.").

## VII.    CONCLUSION.

Under the appropriate Rule 37(e) analysis, Plaintiffs fail to meet their burden to establish any spoliation, let alone any prejudice to their ability to prosecute or defend their claims and defenses. Nor do they establish any other intentional withholding of production.

Accordingly, Defendants respectfully request that Plaintiffs' Motion be denied.

Dated: October 24, 2019

Respectfully submitted,
Defendants, Brent Duke and
21 Century Smoking, Inc.

By: /S/ Kevin B. Salam
     Attorney for Defendants

Kevin B. Salam
kevin@salamlaw.com
120 N. LaSalle, Suite 2000
Chicago, IL 60602
312-606-8730 (ph.)
312- 277-2539 (fax)

By: _/S/ Mike Leonard_____
    Attorney for Defendants

Michael I. Leonard
mleonard@leonardmeyerllp.com
LeonardMeyer, LLP
120 N. LaSalle, Suite 2000
Chicago, IL 60602
312-380-6559 (ph.)
312- 264-0671 (fax)

## CERTIFICATE OF SERVICE

    I, Kevin B. Salam, an attorney at law in the State of Illinois and counsel for Defendants, 21 Century Smoking, Inc. and Brent Duke (collectively, the "Defendants") in the above-captioned matter hereby state that on October 24, 2019, I caused the Defendants' Response to Plaintiff's Renewed Motion for Sanctions to be served upon Plaintiffs' counsel of record and counsel for Defendants' former defense counsel who have appeared herein by way of the court's electronic filing system.


By: _/S/ Kevin B. Salam_
    Kevin B. Salam
    kevin@salamlaw.com
    120 N. LaSalle, Suite 2000
    Chicago, IL 60602
    312-606-8730 (ph.)
    312- 277-2539 (fax)
*Attorney for Defendants, Brent Duke and 21 Century Smoking, Inc.*


Dated: October 24, 2019