# EXHIBIT A

```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            WESTERN DIVISION

 3   DR DISTRIBUTORS, LLC,            )Docket No. 12 CV 50324
                                      )
 4      Plaintiff-Counterdefendant,   )Rockford, Illinois
                                      )Thursday, May 15, 2014
 5            v.                      )9:00 o'clock a.m.
                                      )
 6   21 CENTURY SMOKING, INC.         )
     and BRENT DUKE,                  )
 7                                    )
        Defendants-Counterplaintiffs,)
 8                                    )
     CB DISTRIBUTORS, INC. and        )
 9   CARLOS BENGOA,                   )
                                      )
10      Counter-Defendants.           )

11                        TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE IAIN D. JOHNSTON
12
     APPEARANCES:
13
     For the Plaintiff:      NICOLL, DAVIS & SPINELLA LLP
14                           (95 Route 17 South,
                              Suite 316,
15                            Paramus, NJ  07652) by
                             MR. BRIAN M. GAYNOR
16
                             ROBERT C. von OHLEN & ASSOCIATES
17                           (1340 Deerpath Road,
                              Lake Forest, IL  60045) by
18                           MR. ROBERT C. von OHLEN, JR.

19   For the Defendants:     LEAVENS, STRAND & GLOVER, LLC
                             (203 N. LaSalle Street,
20                            Suite 2550,
                              Chicago, IL  60601) by
21                           MR. THOMAS R. LEAVENS

22   Court Reporter:         Heather M. Perkins-Reiva
                             327 S. Church Street
23                           Rockford, Illinois  61101
                             (779)772-8309
24

25
```

```
 1     (The following is from a tape-recording of proceedings:)
 2          THE CLERK:  Calling 12 C 50324, DR Distributors,
 3   LLC v. 21 Century Smoking, Inc.
 4          THE COURT:  We are going to have to take a quick
 5   break because I left my notes upstairs.
 6          I left my notes upstairs.  We will resume in a
 7   minute.
 8     (Brief pause.)
 9          THE COURT:  Sorry about that, but it's the first time
10   the case is up, and I have got pages of questions for you.  I
11   bet you are happy to hear that.
12          All right.  So let's get appearances.
13          MR. von OHLEN:  Good morning, your Honor.  Robert
14   von Ohlen for the Plaintiffs, as local counsel, and
15   introducing Brian Gaynor, who is lead counsel.
16          MR. GAYNOR:  Good morning, your Honor.
17          THE COURT:  Good morning.
18          MR. LEAVENS:  Good morning, your Honor.  Thomas
19   Leavens on behalf of the Defendants 21 Century Smoking and
20   Brent Duke, the counter-claimants.
21          THE COURT:  Okay.  I know there is a partial summary
22   judgment that's pending.
23          The status report was very thorough and complete, so
24   I appreciate that.  Thank you for that.
25          It looks like the parties aren't going to meet the
```

1  discovery deadlines.
2          Let me just kind of go through issues that I saw in
3  the status report that I have questions about.
4          Is there going to be any issue about producing Carlos
5  Bengoa --
6          MR. GAYNOR:  Bengoa.
7          THE COURT:  -- Bengoa for his deposition?
8          MR. GAYNOR:  No, no issues.
9          THE COURT:  All right.  Likewise, how about for Brent
10  Duke, any issue producing him for deposition?
11          MR. LEAVENS:  No.
12          THE COURT:  No.  All right.
13          Let me start with the Plaintiffs:  Tell me what
14  discovery the Plaintiffs have served.
15          MR. GAYNOR:  Plaintiff has served written discovery,
16  interrogatories, document requests on Defendant 21 Century
17  Smoking.  We do anticipate potential additional written
18  discovery on Brent Duke as a Counter-Defendant, cross-claim
19  Defendant, that has not been served yet.  Up until this time,
20  we have not taken any depositions.
21          THE COURT:  All right.  And when were the
22  interrogatories and document requests served?
23          MR. GAYNOR:  I believe they were served in 2013.
24          THE COURT:  Okay.  And have they been responded to?
25          MR. GAYNOR:  Yes.

1  THE COURT: Okay. And what's the difference between
2  the discovery you served on 21 Century Smoking and the
3  discovery you are going to serve on Duke?
4  MR. GAYNOR: It's not going to be duplicative
5  discovery. It is going to be additional interrogatories
6  regarding Mr. Duke's background and additional questions that
7  have come up over the course of not only discovery, but also
8  the motion practice that both parties have participated in.
9  THE COURT: Okay. And then from defense side, what
10 discovery have you served?
11 MR. LEAVENS: What discovery has been served?
12 THE COURT: By Defendant.
13 MR. LEAVENS: Yes.
14 There was interrogatories and document requests. We
15 have also conducted depositions of four -- actually, five
16 individuals.
17 THE COURT: Are they third-parties, employees? Who
18 are they?
19 MR. LEAVENS: They were two employees and three
20 third-parties.
21 THE COURT: How many more depositions do you think
22 you will need?
23 MR. LEAVENS: One of the depositions that we
24 conducted was continued because the witness needed to look for
25 additional documents. So we need to get that one back on

1  board.

2          We are looking at, probably, another four or five

3  depositions, principally employees of the Plaintiff.

4          THE COURT:  And where are these depositions being

5  held?

6          MR. LEAVENS:  There was one deposition held in

7  Edwardsville, there were three depositions held here in

8  Rockford, and then there was one yesterday over the telephone.

9          THE COURT:  Okay.  And the depositions the Plaintiff

10 anticipates taking, where are those going to be held?

11         MR. GAYNOR:  Those will probably be held in Chicago.

12         THE COURT:  Okay.

13         MR. LEAVENS:  Your Honor, there is additional

14 follow-up that we will be doing with respect to documents that

15 were identified during the depositions as well that have not

16 been produced.

17         THE COURT:  When you say "follow-up," you mean

18 follow-up depositions, or you are going to follow up with

19 Plaintiff's counsel saying, "Where are the documents?"

20         MR. LEAVENS:  Yes, that's it.  Thank you.

21         THE COURT:  All right.  I had an "or" question there.

22 So that's my fault.

23         Are you going to ask for additional documents?

24         MR. LEAVENS:  It was principally documents that had

25 been requested that were identified during the course of the

1   depositions that we believe had not been produced.
2           THE COURT:  Okay.
3           MR. GAYNOR:  In addition, your Honor, I'm going to be
4   conducting some discovery today at their offices.  They have
5   some documents in boxes I'm going to be reviewing and deciding
6   whether we want them copied and shipped to us.
7           THE COURT: All right.  Let me start with the
8   Plaintiff.  I want to talk about e-discovery.  When parties
9   start throwing around the phrase "metadata" in a status
10  report, it is going to raise some flags.
11          I assume litigation holds have gone out, right?  We
12  are not going to have that issue, right?
13          MR. GAYNOR:  Yes.
14          THE COURT:  Okay.  Let me start with the Plaintiff:
15  Have the custodians of the e-discovery materials, have they
16  been identified?
17          MR. GAYNOR:  Yes.
18          THE COURT:  All right.  How many are those?
19          MR. GAYNOR:  I believe just one individual.
20          THE COURT:  Okay.
21          MR. GAYNOR:  It's the IT employee of CB Distributors.
22          THE COURT:  All right.  And from Defendant, have you
23  identified your custodians?
24          MR. LEAVENS:  The custodians of documents, yes.
25          THE COURT:  For electronic material?

```
 1            MR. LEAVENS:  Yes.
 2            THE COURT:  Okay.  And how many?
 3            MR. LEAVENS:  It's one.
 4            THE COURT:  All right.  And who is that?  Is that
 5  also an IT --
 6            MR. LEAVENS:  Brent Duke.
 7            THE COURT:  Okay.  Do they have an IT person on-site?
 8  Do they outsource it?
 9            MR. LEAVENS:  They don't have an IT person on-site.
10  They have an IT person that works with them on an occasional
11  basis, but not somebody on-site full time.
12            THE COURT:  Okay.  Does Mr. Duke have a technical
13  background?  Once he starts getting questions about metadata
14  and native applications, is he going to have a blank look on
15  his face, or is he going to be able to respond?
16            MR. LEAVENS:  He is generally going to be able to
17  respond.  There may be some things that he may have to go to
18  people that he works with on that.  So maybe we need to
19  identify more than one.
20            THE COURT:  Okay.  Have the parties engaged in
21  identifying search terms?
22            MR. GAYNOR:  Not yet, your Honor.
23            THE COURT:  Okay.  Is the plan to use search terms
24  and then go through it personally, or are you going to use
25  predictive coding or technology-assisted review?  Have you
```

1   talked about that?
2          MR. GAYNOR:  We haven't discussed that quite yet,
3   your Honor.
4          THE COURT:  Okay.  And from the Plaintiff's side,
5   besides Mr. Duke, how many depositions do you anticipate
6   taking?
7          MR. GAYNOR:  I think probably about the same number,
8   maybe four or five.
9          THE COURT:  And where would those witnesses be
10  located?
11         MR. GAYNOR:  I believe they would all be located in
12  the Chicago area.
13         THE COURT:  Okay.
14         MR. GAYNOR:  There might be one outside the area.  I
15  know Defendant's brother lives in California.  I don't know if
16  we are going to depose him or not.
17         THE COURT:  All right.  And I know that the partial
18  summary judgment that's pending is going to probably cause a
19  little bit of the thinking on why the parties slowed down
20  discovery and haven't gone full speed ahead.  I don't have
21  control over how fast that decision is going to be rendered,
22  but here is my plan.
23         It sounds like you have got at least one or two
24  depositions lined up, ready to go?
25         MR. LEAVENS:  There is nothing that is scheduled at

```
 1   the moment.
 2             THE COURT:  Nothing scheduled.
 3             Has anybody been subpoenaed for a deposition
 4   that's -- or is a subpoena out?
 5             MR. von OHLEN:  We just finished I think three or
 6   four depositions in the last ten days.
 7             THE COURT:  Okay.
 8             MR. von OHLEN:  So the activity has been recent and
 9   active.
10             THE COURT:  Okay.  But you have got nothing scheduled
11   going forward?
12             MR. von OHLEN:  Correct.
13             THE COURT:  Okay.  Here's what I want you to do:
14   Reconvene a 26(f) conference.  Defendant can raise the issues
15   about the documents that have been identified in depositions.
16   I want the parties to talk about e-discovery issues in detail.
17   Have your IT person there.  Have Mr. Duke there or whoever
18   else is going to help him out because I don't want the parties
19   to proceed with the discovery and then we get an e-discovery
20   snag and it throws the entire schedule out the window.  So you
21   have got to get those figured out sooner rather than later.
22             I will have the parties propose a new case management
23   order, but here is what we are going to do, something a little
24   different:  I want the parties to propose two different case
25   management orders, one assuming that the partial summary
```

1  judgment is granted, one assuming the partial summary judgment
2  is denied.  All right.  I don't know how it is going to shake
3  out, and you guys probably don't know either.  You probably
4  think one way or the other, but we don't know.
5          MR. LEAVENS:  It could be a partial/partial, too.
6          THE COURT:  It could be a partial.  It could be bits
7  and pieces.
8          So that's what I want to get from the parties, after
9  you have your 26(f) and after you talk in detail about your
10 electronic discovery issues, okay?
11         File those with the court by June 13th.  That gives
12 you almost a month to get that done.  And then we will have a
13 telephonic status after that to go over the two sets of
14 proposed case management orders.
15         We have got a standard case management order that we
16 use.  Use that as a guide.  Provide all the information that's
17 on there.  Because of the unique circumstances of this case,
18 you are probably not going to be able to use the PDF fillable
19 online, but provide all that information that's requested on
20 there.  And when you are giving me the proposed case
21 management orders, keep in mind that this is a 2012 case and
22 that the case should start moving, especially once there has
23 been a ruling on the summary judgment motion.
24         How does July 1st for a telephonic status work?
25         Let me start with the Plaintiffs.

```
 1              MR. GAYNOR:  That's fine.
 2              THE COURT:  9:00 o'clock Central.
 3              MR. GAYNOR:  That should be fine with us.
 4              THE COURT:  Okay.  How about Defendant?
 5              MR. LEAVENS:  Yes.  Yes, your Honor, that works.
 6              THE COURT:  We will have a telephonic status
 7   7/1/2014, 9:00 a.m.  File the two proposed case management
 8   orders by June 13th, and we will go over it.
 9              I know the parties didn't seem that interested in a
10   settlement conference.  You missed out on the opportunity to
11   have Judge Mahoney preside over a settlement conference.
12   That's your loss.  He's phenomenal.  But if you need a
13   settlement conference, if it comes to that point, contact
14   Ms. Pedroza.  We will be glad to find some time to have the
15   parties come in.
16              Take a look at our standing orders on settlement
17   conference.  They are pretty specific.  I rarely vary from
18   those because the process works, and I don't want to mess with
19   it.  But if you get to the point where you want to talk
20   settlement, contact Ms. Pedroza.  We usually have them on
21   Mondays.  And then we will figure out what to do, okay?
22              So I will talk to you on July 1st at 9:00 a.m.
23   telephonically.
24              From the Plaintiff, anything else to add?
25              MR. GAYNOR:  No, your Honor.
```

```
1              MR. von OHLEN:  No, your Honor.
2              THE COURT:  How about from Defendant?
3              MR. LEAVENS:  No, your Honor.
4              THE COURT:  Okay.  Thank you.
5              MR. LEAVENS:  Thank you.
6              MR. von OHLEN:  Thank you very much.
7              MR. GAYNOR:  Thank you.
8       (Which were all the proceedings heard.)
9                         CERTIFICATE
10    I certify that the foregoing is a correct transcript from
11   the digital recording of proceedings in the above-entitled
12   matter to the best of my ability, given the limitations of
13   using a digital-recording system.
14
15   /s/Heather M. Perkins-Reiva          January 14, 2020
16   _____      _____
     Heather M. Perkins-Reiva                     Date
17   Official Court Reporter
18
19
20
21
22
23
24
25
```