## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLNOIS
## WESTERN DIVISION

| | |
|---|---|
| DR Distributors, LLC, | ) |
| | ) |
|       Plaintiff-Counterdefendant, | ) |
| | ) |
| v. | ) No. 12 CV 50324 |
| | ) |
| 21 Century Smoking, Inc, and Brent Duke, | ) |
| | ) |
|       Defendants-Counterclaimants, | ) |
| | ) |
| v. | ) |
| | ) |
| CB Distributors, Inc., and Carlos Bengoa, | ) |
| | ) |
|       Counterdefendants. | ) |

## MEMORANDUM OPINION AND ORDER

In addition to the motion for sanctions, before the Court is defendants' motion to reopen or supplement the evidentiary record for the purposes of expert testimony [384] on plaintiff's long-pending motion for sanctions [294], [395]. The motion is denied.

## BACKGROUND

Because the motion seeks to supplement the record regarding the missing Yahoo! chat data, the facts detailed here relate to that specific issue to the extent possible.

*Pre-Evidentiary Hearing Arguments*

The possibility that Yahoo! *chat* data, rather than Yahoo! *email* data, was not preserved or searched first arose at a status hearing on August 14, 2018. *See* Dkt. 267 (transcript). At that time, the parties were discussing the recent discovery that Duke's Yahoo! email was not stored locally and that his GoDaddy accounts had been auto purged. Plaintiff's counsel highlighted that some documents (part of the approximately 15,000-page production tendered on June 1, 2018) contained Yahoo! chats evincing discussions between Kirti Saraswat and defendant Duke for the first time. *Id*. at 31. This is critical, relevant information because Saraswat was Duke's search engine optimization (SEO) consultant. For years, plaintiff had asserted that Duke or Sarswat at Duke's direction placed a metatag in a website to affect SEO. At the hearing, the Court

questioned former defense counsel Mr. Stamatis about the difference between chat and email, and whether the Yahoo! chats had been searched. Mr. Stamatis did not think there was a difference between chat and email at that time. *Id.* at 31-34. Later during the hearing, from the computer on the bench, the Court accessed the Yahoo! homepage and showed that chat and email were indeed different and directed defense counsel to determine whether both had been searched. *Id.* at 57-58. At the end of the hearing, the Court said that it would likely "have an evidentiary hearing" to "get to the bottom of this stuff," and that "facts going to intent are key . . . ." *Id.* at 63-64. A September 13, 2018 status report later confirmed that the Yahoo! chat data had also not been preserved or searched. Dkt. 268.

At the next status conference on October 16, 2018, former defense counsel Mr. Stamatis described the efforts taken to retrieve the Yahoo! chat data up to that point and the defense team's efforts to obtain a declaration from Ms. Saraswat disclaiming that she ever put plaintiff's trade name into defendants' source code. Dkt. 278 at 7-9. The Court confirmed that the Yahoo! chat issue was a subset of the many known ESI issues present in the case. *Id.* at 11. (At this time, there was another large looming ESI issue that had not yet been presented to the Court; namely, the failure to collect, search, and produce Go Daddy emails.) Plaintiff's local counsel Mr. Von Ohlen argued that Duke knew about this chat feature in 2009, defense counsel's failure to find the Yahoo! chat data evinced indifference to discovery obligations, that Yahoo! was not supporting the chat feature starting July 17, 2018[1] all but guaranteeing prejudice to his client, and that this further evinced that documents were withheld. *Id.* at 13-17.

Later at that hearing, to explain how any evidence of Yahoo! chats could exist given that the feature was no longer supported and the chat data was never searched, Mr. Stamatis explained that Duke copied and pasted *some* of his chats into email that he sent to himself. Dkt. 278 at 34. The Court asked "[w]hy would you ever do that? Why would you ever take an instant messaging communication, copy and paste it, and put it onto an e-mail? That sounds really bizarre." *Id.* at 34-35. Another former defense counsel, Mr. Shonder, suggested that the chats may have been deleted in 2012 before a duty to preserve them arose. *Id.* at 44. Near the end of the hearing, when Mr. Stamatis asked for time to discuss with his client what the next steps should be going forward, the Court suggested that he should be talking to his client extensively due to the "huge problems" in the case before setting a drop dead date of November 21, 2018 for defendants to produce the responsive Yahoo! chat documents. *Id.* at 52-53. Defendants were ultimately unable to produce the Yahoo! chat documents because they were deleted.

---

[1] Specifically, Mr. Von Ohlen stated the following:

> So we have a four-year-plus delay in producing this large cache of documents, that I believe we have articulated are very relevant, and the fact that the case was litigated on, frankly, at least incomplete facts, if not straight-up perjury, it is hard to listen to the continuing rationalizations, Judge. There can be no doubt that Brent Duke, the Defendant, knew that he had a chat messenger feature to his Yahoo! account dating back to 2009. We know this because part of that chat was referenced in those 15,000 documents.

Dkt. 278 at 13-14.

Plaintiff filed its second motion for sanctions. Dkts. 294, 395.[2] Spanning a robust 75 pages, the motion describes a litany of discovery problems allegedly intentionally and negligently caused by defendants and former defense counsel, including the "spoliation"[3] of the Yahoo! chat messages. *Id*. at 5, 10. In part, the motion describes how defendants argued that Duke had not worked with Kirti Saraswat after April 2010, yet a new chat document produced for the first time on March 19, 2018 revealed that this (and other sworn deposition testimony and affidavit declarations from Duke) could not be true, arguing that "Duke made up his story about having no communications after April 2010 to fit his story that his SEO consultant stopped working for him before plaintiff's trademark was in defendants' website. The documents show this story is an intentional fabrication." *Id*. at 16-22. The motion went on to cite multiple possible avenues that the Court could use to sanction defendants and their counsel. *Id*. at 50-75. Notably, plaintiff summarized many of these arguments as follows:

> As detailed herein and initially presented at the August 14, 2018 status conference, it is now clear that Defendants have selectively and intentionally withheld and/or spoliated relevant evidence throughout this litigation. The absence of select documents from Defendants' prior productions, combined with surrounding circumstances, the ***spoliated Yahoo Messenger Chat documents***, and the loss of their entire ESI Data Set compels the reasonable inference that Defendants intentionally deleted documents that are relevant to this action and favorable to Plaintiffs.

*Id*. at 65 (emphasis added).

At the status hearing on January 29, 2019, Mr. Von Ohlen claimed that after reading plaintiff's briefs, the Court would recognize Duke's "outright deceit in his sworn testimony in this case." Dkt. 293 at 10. Yahoo! chat was cited as an example of ESI that could not be evaluated because it was "***spoliated***." *Id*. at 9 (emphasis added). The rest of the hearing dealt mostly with defendants' motion to withdraw its defamation counterclaim, the various possible avenues the Court could take to sanction defendants and concluded when the Court set a briefing schedule on plaintiff's renewed motion for sanctions. *See generally Id*.

The parties were then in on June 4, 2019 for presentment of former defense counsel's various motions to withdraw and defendants' motion to stay briefing on the motion for sanctions. *See* Dkts. 298, 300, 303, 305, 307.  At that hearing, plaintiff's counsel Mr. Von Ohlen vigorously argued against the motions:

> The timeline of events illustrates both the Defendant and [former] defense counsel's failures and misrepresentations, all of which have now unquestionably prejudiced the Plaintiff in this case. At this juncture, such failures and misrepresentations are legion, and they are documented in Plaintiff's motion for sanctions, and at some

---

[2] The motion for sanctions was refiled for administrative purposes on March 10, 2020. Dkt. 394.

[3] "[S]poliation (spoh-lee-**ay**-shən) *n*. (18c) **1.** The *intentional* destruction, mutilation, alteration, or concealment of evidence, usu[ally] of a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible. —Also termed *spoliation of evidence*." *Spoliation*, Black's Law Dictionary (11th ed. 2019) (italics added).

point, there will have to be a supplementation based upon what we have heard today.

Dkt. 315 at 28. Attorney Kevin Salam spoke on behalf of Duke at the hearing, though he had not yet appeared on Duke's behalf in the case, and argued that a stay was necessary for Duke to retain new counsel and to learn all the facts before he made any representations that might adversely affect Duke. Dkt. 315 at 17-24. The Court assured counsel that it would be holding an evidentiary hearing in which it would ask difficult questions and cross-examine witnesses on its own to get to the bottom of what went wrong in the case. *Id*. at 24. The Court recommended that whatever new counsel Duke did retain should have some experience in criminal law. *Id*. at 25. The Court also said that "from my perspective, where I'm sitting right now, this is a disaster of [Duke's] own making, and so you are asking me to make sure I protect the person who caused this." *Id*.[4] The Court ultimately agreed that a stay was necessary for Duke to retain new counsel and to ensure his interests were protected because "the extent of his problems [were] astronomical." *Id*. at 27.

The parties unsuccessfully attempted to settle the case at a Court-ordered settlement conference on August 20, 2019. On September 20, 2019, the Court told the parties via minute entry to discuss dates for an evidentiary hearing. Dkt. 323. At the next status hearing held on September 30, 2019, the Court made clear that the scope of the evidentiary hearing would be the issues raised in the pending motion for sanctions. Dkt. 335 at 10. The parties were next in on October 3, 2019, when the Court addressed perceived confusion regarding the scope of the evidentiary hearing, again clarifying that the hearing was meant to address the issues raised in the motion for sanctions. Dkt. 336 at 28, 36-38.

Starting on October 28, 2019, the Court began a five-day evidentiary hearing on plaintiff's motion for sanctions to determine the scope of any alleged misconduct and whether sanctions were warranted. *See* Dkts. 353, 354, 359, 362, 363. The hearing concluded on November 19, 2019.

*Evidentiary Hearing*

The parties and the former defense counsel's counsel exchanged proposed witness and exhibit lists before the first day of the hearing. *See* Dkt. 334. No party identified expert witnesses

---

[4] Later, when Mr. Salam mentioned a duty to supplement and preserve discovery, the Court responded with the following warning:

> Don't talk to me about a duty to supplement. It is a duty to produce, and produce it when it's requested, and not to hide it, and not to bury your head in the sand and make up a bunch of weak excuses about "I didn't know." I don't know how anybody—and I'm going to get to the bottom of this—how anybody can reasonably say, the week before the response is due, "Oh, attorneys, that's what you are looking for. It is all up in the cloud." I will be glad to hear that testimony because that's what these motions say, right? That's what they say. So that's big trouble.

Dkt. 315 at 26-27.

4

as part of these disclosures. However, plaintiff identified Chad Gough, owner of ESI vendor 4Discovery ("4D"), as a fact witness. Because 4D was originally retained by former defense counsel to image Duke's four hard drives in December 2014, had not conducted a custodian interview of him for ESI retention purposes, and the copies of the four hard drives had since been rendered inoperable, the parties apparently wanted to question Gough about 4D's ESI policies, procedures, and actions taken with regard to ESI throughout the case.

Gough testified on November 19, 2019, the final day of the evidentiary hearing. Counsel questioned Gough on a variety of issues, including the scope of work 4D was hired to and did perform, how 4D imaged Duke's hard drives, how these images were stored, and how the drives on which the images were stored ultimately failed. *See* Dkt. 365 at 1414-1493. After the parties had finished questioning Gough, as it notified the parties it would, the Court asked its own questions. *Id*. at 1493-1504. The Court first questioned Gough regarding ESI custodian interviews, whether 4D had been retained to complete one with Duke, and what one usually entails in a case involving ESI, before moving on to questions regarding Yahoo! chat. In the interest of completeness, the entire line of questioning as to Yahoo! chat reads as follows:

> THE COURT: Okay. All right. Let's talk about Yahoo! chats. You have been in the field of computer forensics for over a decade; fair to say?
>
> THE WITNESS: Almost two, 18.
>
> THE COURT: Okay. Almost. 18 years. Yahoo! has been around for a long time, right?
>
> THE WITNESS: I used Yahoo! chat in college in the mid-'90s.
>
> THE COURT: Okay. So we know Yahoo! chat has been around for a while, right?
>
> THE WITNESS: It has.
>
> THE COURT: And Yahoo! chat, as we know, is different than Yahoo! e-mail, correct?
>
> THE WITNESS: Yes.
>
> THE COURT: In your almost 20 years of experience, how many times have you preserved Yahoo! chats?
>
> THE WITNESS: There have been a few cases that I can remember that dealt specifically in evidence that was related to conversations around Yahoo! chat. So I couldn't put my finger on it, but I can think of a couple that I have actually testified on that involved Yahoo! chat.
>
> THE COURT: Okay. So Yahoo! chats were used to communicate between somebody in the case?

THE WITNESS: Two individuals, yes.

THE COURT: And they were relevant in some manner; is that right?

THE WITNESS: Yes.

THE COURT: And you ended up testifying in those cases about that Yahoo! chat?

THE WITNESS: I believe I did.

THE COURT: And how -- and did you testify about how you collected the Yahoo! chats?

THE WITNESS: These were actually stored locally on a computer in this scenario because it was a personal Yahoo! e-mail account and a corporate device they were chatting on.

THE COURT: Okay. Have you or anybody in your firm in these 18 years collected Yahoo! chats off of the cloud?

THE WITNESS: We have.

THE COURT: Okay.

THE WITNESS: There is actually a section within Yahoo! mail called "conversations" that stores the Yahoo! chats, and they can be collected in a number of different ways.

THE COURT: And if we were to get in our time machine and go back before, let's say, July of 2018, you could go on the Yahoo! web page and do a simple search and look for Yahoo! chats and learn all that information, basically, right?

THE WITNESS: Yes, there would be a "conversations" sort of folder within your Yahoo! e-mail, with access to a browser, that would have an archive of all your chats.

THE COURT: Okay. Did you ever go through that -- I'm using this facetiously -- elaborate process to obtain Yahoo! chats?

THE WITNESS: Yes, in the past, we have.

THE COURT: And, again, that's not difficult, is it?

THE WITNESS: It is not.

THE COURT: Okay. And about how many times do you think you or your firm has done that?

THE WITNESS: Specific to Yahoo! chat, I don't know.

THE COURT: Excluding this case.

THE WITNESS: I don't know.

THE COURT: More than two, three?

THE WITNESS: We collect a lot of cloud accounts and most often chat is included in that, so –

THE COURT: All right. So in this case, nobody asked 4Discovery to collect the Yahoo! chats until September 2018, right? I know I've got it written down somewhere. I don't want to make myself a liar. It is between August and November. I think we have got a document that says September 2018. Does that sound about right?

THE WITNESS: That sounds about right.

THE COURT: Anyone want to correct me on that? Okay. See, I do pay attention. All right. So September 2018, you are provided with Mr. Duke's login, password, that type of information so you can get on the Yahoo! chats, right?

THE WITNESS: Correct.

THE COURT: And then you go onto Yahoo! chat to do this basic function to obtain any chats relating to Mr. Duke's account, correct?

THE WITNESS: Yes.

THE COURT: All right. And if I got this right, you go on Yahoo! chat under Mr. Duke's account to search for Yahoo! chats, and you come up with zero, right?

THE WITNESS: That's correct.

THE COURT: Okay. Well, here is where I'm stumped -- because we know for a fact, because we have a document, we have got sworn testimony under oath, that Mr. Duke used Yahoo! chats -- where would those chats have gone?

THE WITNESS: I don't know. I haven't seen those other documents. But if they were there at some point in time, then they should be in that Yahoo! account.

THE COURT: Do you know if you can delete a Yahoo! chat?

7

THE WITNESS: You can. It is just like an e-mail message. You can delete conversations and pieces of those.

THE COURT: And if someone were to delete a Yahoo! chat, would you be able to determine that those chats were deleted by a forensic analysis?

THE WITNESS: Probably not from a web-based account and certainly not after a period of time.

THE COURT: And certainly not after the service is no longer provided, right?

THE WITNESS: That's correct.

THE COURT: So as we sit here today, as far as you know, no computer forensic person can go onto any system to determine whether or not somebody deleted Yahoo! chats off of Mr. Duke's account?

THE WITNESS: It wouldn't be possible to determine at this point.

THE COURT: Absolutely impossible to determine if documents are gone, that's a problem. Okay. I think those are all the questions I have.

*Id*. at 1493-1500. The Court allowed defense counsel to ask follow up questions, resulting in the following exchange:

Q. Just to clarify a couple of things, Mr. Gough: So this whole chat attempt to get the documents, and as the Judge put it, coming up with a goose egg, the first thing you did is you went to paid services, meaning it's a fee you had to pay to Yahoo! or their successors to have them do some more work?

A. We did sort of upgrade Mr. Duke's Yahoo! account from a free account to a paid account to get an increased level of support because, basically, a free account, you can't really contact Yahoo! support, but if you are paying for it, you get access to support for Yahoo!, and that was in order to determine if there were any additional messages or any other way to get anything out of that account, other than what was provided to us, which was no chat messages.

Q. Correct. So at that stage, I think the term you used before was "paid services." That's what you meant?

A. Yes.

Q. Okay. And no one in paid services told you that the chats had been deleted, did they, sir?

A. No, they didn't have any access to anything -- any more information than we already had.

Q. Correct. And then you did what you call an "escalation" to what's called "engineering"; is that correct?

A. That's correct.

Q. And those folks didn't tell you that they had been deleted either, did they, sir?

A. They didn't say one way or another. They just didn't have any additional information than what I already had.

Q. Understood. And for you to testify as to what happened would be entirely speculative, correct?

THE COURT: Objection. Sustained.

MR. LEONARD: I can't ask that, Judge?

THE COURT: I just objected to your question and sustained my objection.

BY MR. LEONARD:

Q. You don't have a factual basis to tell us what happened to those chats, do you, sir?

A. I have no knowledge of any Yahoo! chats, other than there were none when we got access to the account.

*Id*. at 1501-02. The Court asked counsel if there were any more questions before it again questioned Gough:

THE COURT: If you know -- again, if you know -- did you or your firm obtain any Yahoo! chats for any other matter between May of 2018 and November of 2018, if you know?

THE WITNESS: I don't recall. I know we have collected Yahoo! accounts during that period. I just don't know if –

THE COURT: If they were chats versus e-mails?

THE WITNESS: Correct.

THE COURT: We have talked about the process that you have used to obtain Yahoo! chats in the past, and it's established through exhibits and testimony that

9

Mr. Duke did use Yahoo! chats in this case. Would it be a reasonable inference that -- if you were unable to find any Yahoo! chats, would a reasonable inference be that they were deleted? Could that be a reasonable inference?

MR. LEONARD: Objection to lacks foundation and calls for speculation.

THE COURT: Overruled.

THE WITNESS: If you have an exhibit that shows the use of Yahoo! chat, and it is not there, then it would have been deleted.

*Id*. at 1502-03. The evidentiary hearing concluded and the Court set a briefing schedule for post-hearing briefing shortly thereafter. *See* Dkt. 363. No party requested that the proofs remain open. The Court repeatedly asked counsel if there was any additional evidence and was told there was none. Tr. 1554.

*Defendants' Status Report No. 5*

After the hearing, defendants filed an unsolicited status report[5] on January 21, 2020 to address "why Defendants and their e-discovery vendor were unable to recover any Yahoo chats in September of 2018." Dkt. 373 at 1. Attached to the status report is a declaration from Yaniv Schiff (an e-discovery expert) that offers another explanation as to the missing Yahoo! chat data. *Id*.

According to that declaration, Duke used a desktop version of the Yahoo! chat Messenger program on two devices until 2008 when he retired the last of those two devices. The last archived chat data from those devices was dated February 29, 2008. Duke began using a new computer in September 2011, and Messenger was never installed on that device. In Schiff's opinion, the lack of archived data is consistent with Duke using the web-based version of Yahoo! messenger. In August 2016, Yahoo! changed its legacy Messenger system, and Yahoo! discontinued the chat service entirely in July 2018. 4D had previously worked with Yahoo! support, which revealed that Duke's user profile was listed as created on August 15, 2016, despite Duke having used the service since 2001. Therefore, Schiff opines that any chat data was erased as part of the changes Yahoo! made to its own systems in August 2016 and that there is no evidence that Duke intentionally deleted chats or was responsible for the August 2016 changes to his account. *See* Dkt. 373 at 7-11.

*Motion to Re-Open or Supplement the Record*

Despite informing the Court that they had nothing else to add, Tr. 1554, defendants filed their motion to reopen or supplement the record with respect Schiff's testimony on February 20, 2020. Dkt. 384. Citing this Court's discretion and FED. R. CIV. P. 26 and 60(b), defendants argue Schiff's reported should be added to the evidentiary record because (1) defendants were

---

[5] Defendants filed the report pursuant to the Court's June 6, 2019 order. However, that order asked defendants to file *one* status report regarding the search for responsive ESI on August 13, 2019. *See* Dkt. 313 at 3. The Court did not order additional status reports nor want any additional status reports.

blindsided by the suggestion created by Gough's testimony that Duke deleted any Yahoo! chat documents because the Plaintiff had not previously made that argument; (2) Gough was not retained by any party to provide any expert opinion and had never considered the Yahoo! chat issue before the hearing, and his testimony was otherwise without foundation and speculative; (3) there is no evidence supporting the inference that Duke deleted Yahoo! chats; (4) Schiff's declaration "entirely rebuts the inference created by Mr. Gough's previously undisclosed and entirely foundationless testimony that Mr. Duke deleted his Yahoo chats;" and (5) the Schiff declaration consists of newly discovered evidence because it was not known before the hearing and there was no known need for it at that time.

## ANALYSIS

Defendants seek relief pursuant to FED. R. CIV. P. 26 and FED. R. CIV. P. 60(b). Neither procedural rule applies here. Rule 26 contains disclosure requirements applicable to parties litigating in federal court. However, the rule explicitly applies only to *parties* to litigation. *See* FED. R. CIV. P. 26. The Court is not a party to this action, thus neither the disclosure requirements of Rule 26 nor the Court's decision to question Gough provide a basis for the relief defendants seek. The Court has inherent power and a duty to question witnesses to develop the facts, particularly when no jury is present. *Glasser v. United States*, 315 U.S. 60, 82 (1942); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988); *United States ex. rel Jurena v. Thieret*, 659 F. Supp. 1165, 2272-73 (N.D. Ill. 1987). Moreover, the Court placed the parties on notice that it was going to question witnesses to determine what occurred. Dkt. 315 at 24.

Rule 60(b) is closer, but still misses the mark. Rule 60(b) provides a procedural mechanism for parties to seek relief from a final judgment, order, or proceeding. However, the Court's decision to limit the evidentiary hearing to five days of testimony is an interlocutory one. At this point there is no "final" order, judgment, or proceeding from which to seek relief, as there are still matters in the case to be decided given that the Court will not dismiss this case as a sanction and the case will instead proceed to trial. *See Mintz v. Caterpillar, Inc.*, 788 F.3d 673, 679 (7th Cir. 2015); *Kapco Mfg. Co. v. C & O Enters., Inc.*, 773 F.2d 151, 153 (7th Cir. 1985). Therefore, relief is not warranted under Rule 60(b).[6] However, Rule 60(b) does *not* limit the Court's ability to exercise its discretion to re-visit nonfinal judgments or rulings any time before final judgment. *Mitnz*, 788 F.3d at 679.

In an exercise of that discretion, the Court denies the motion to reopen. To begin, defendants' claim that plaintiff never argued that defendants or their previous counsel intentionally deleted Yahoo! chats is not based on a reasonable inquiry. Fed. R. Civ. P. 11(b). The assertion is frivolous and sanctionable. Fed. R. Civ. P. 11(c)(3). The above factual summary reveals that the issue regularly arose at status and motion hearings throughout litigation on the sanction issue and was raised within the motion for sanctions. The lengthy record and docket is peppered with plaintiff's argument that the facts and circumstances surrounding the missing ESI

---

[6] Because Rule 60(b) does not apply, the Court will not address defendants' argument that the Schiff report constitutes newly discovered evidence under Rule 60(b). However, the Court briefly notes that the report does not constitute "newly discovered evidence," and even if the report fell into that definition, the report would not change the outcome of this motion as explained below. *See LAJIM, LLC v. GE*, 917 F. 3d 933, 950 (7th Cir. 2019).

and seemingly contradictory explanations surrounding the botched discovery lead to a reasonable inference that defendants or their former counsel spoliated or ignored discovery, including the Yahoo! chat data. *See, e.g.*, Dkts. 267 at 31-34, 63-64; 278 at 13-17, 52-53; 294 at 5, 10, 16-22, 65; 315 at 28. The parties were more than on notice of the Court's concern regarding this and the other discovery issues raised by the sanctions motion as well as the Court's inclination to hold an evidentiary hearing on them. The Court afforded defendants ample opportunity to provide explanations as to what happened to the Yahoo! chat data and to explain all of the other alleged discovery violations, ultimately culminating in a *five-day* evidentiary hearing.[7] Defendants had the opportunity to present any evidence they would have liked to rationalize the missing Yahoo! chat data (or any other alleged discovery violations) which was a major issue related to possible sanctions because plaintiff identified it as an issue in August, 2018. Additionally, the Court should not consider Schiff's declaration without giving Plaintiff the opportunity to depose him. Schiff is a hired gun, hired and paid to provide opinions consistent with the party that hired and paid him. That makes his testimony inherently biased, but that bias can be addressed by allowing cross examination. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1231 (Fed. Cir. 2014) (retained expert witnesses are inherently biased but the bias is mitigated by the ability to cross examine); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988) ("Hired experts, who generally are highly compensated—and by the party on whose behalf they are testifying—are not notably disinterested."). Granting the motion would necessarily require the Court to give Plaintiff the opportunity to depose Schiff, which would continue delaying the resolution of this 2012 case.

Defendants also argue that the Schiff declaration entirely rebuts Gough's hearing testimony. The Court disagrees. Gough testified that if a document exists showing that Duke used Yahoo! chat, and Yahoo! could not recover those chats, then the chats must have been deleted; and additionally testified that because there was no chat data to evaluate, there would be no way now to forensically determine who deleted the chats. At no point did Gough specifically testify that Duke deleted chat data. But his opinion testimony certainly supports a reasonable inference that occurred. Instead, the reasonable reading of Gough's testimony is that there is no way to determine with certainty whether anyone deleted chats because the Yahoo! chats were rendered unrecoverable in July 2018 when Yahoo! suspended support for its chat service. Dkt. 365 at 1498-1500. Schiff's opinion, if assumed true, would only move the date Yahoo! removed the chat data from its servers back to August 2016, when Yahoo! updated its legacy systems. Schiff's report does *not* explain what happened to the data after the duty to preserve the chat data arose in 2012 but before August 2016. There is now no way to forensically evaluate nonexistent data to determine whether parts of it were deleted before Yahoo! removed all that data in either August 2016 or July 2018.

Importantly, Schiff's report takes no issue with the main thrust of Gough's testimony that, at this point, because the Yahoo! data is not recoverable, there is no way to forensically determine precisely how the chats were deleted. Thus, the Schiff opinion fails to rebut an opinion that Gough never gave (that Duke deleted chats), and tends to support an opinion that Gough did make: the chat data is gone, and because it was entirely erased by Yahoo! in July 2018 at the latest, there is no way to forensically determine who deleted the chats.

---

[7] The Court originally allotted the parties two days for the hearing but granted their requests for more time to allow them to present more evidence and elicit testimony. Dkts. 334, 358.

Indeed, apparently because he is a hired gun, Schiff blithely ignores this issue in his report by stating that there is no evidence that Duke deleted any chats. Dkt. 373 at 11.[8] But this reasoning fails for two related reasons. First, the parties agree that the data was deleted (or rendered irretrievable), though there are two different theories as to when this occurred: at the latest in July 2018, when Yahoo! discontinued the chat service, and possibly earlier in August 2016 when Yahoo! updated its legacy systems. However, Gough's testimony that there is no way to forensically evaluate admittedly non-recoverable material to determine whether chats were otherwise deleted remains unrebutted by Schiff's report as discussed above. The Court cannot envision—and defendants have not offered—any method to evaluate data that no longer exists. Second, and crucially, contrary to defendants' argument that no evidence exists suggesting Duke deleted Yahoo! chats aside from Gough's testimony, there *is* an avalanche of circumstantial evidence suggesting Duke did just that. Apparently, Schiff is unfamiliar with the concept of circumstantial evidence. And, apparently, despite being a purported expert witness, he is unfamiliar with the phenomenon that rarely do parties in civil litigation admit to engaging in nefarious activities, such as destruction of evidence, and that these types of allegations are usually established by circumstantial evidence and common sense. *Bankdirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 U.S. Dist. LEXIS 224705, at \*18-19 (N.D. Ill. Nov. 18, 2018); *Franklin v. Howard Brown Health Ctr.*, No. 17 C 8376, 2018 U.S. Dist. LEXIS 171609, at \*6-7 (N.D. Ill. Oct. 4, 2018).

For instance, follow this simple syllogism. First, it is and has been plaintiff's argument that Duke, or Saraswat at the direction or at least knowledge of Duke, placed the metatag on the website.[9] Second, chats are ESI. Third, it is undisputed that Duke used Yahoo! chat to communicate, specifically with Saraswat, his SEO consultant. Duke testified to this and his incredibly tardy disclosure of previously withheld documents established this fact. Fourth, their communications related to SEO. Fifth, it is plaintiff's contention that placing the metatag would drive internet traffic to Duke's website. Sixth, there is no evidence that during the relevant period of time, anybody else used Duke's login information and password. Seventh, when 4D attempted to obtain the Yahoo! chats, nothing was there. They were gone. Eighth, the chats cannot now be recovered. Ninth, Gough's opinion based upon his nearly 20 years of experience, including experience in collecting Yahoo! chats, was that if the chats no longer existed, they were deleted. That's fairly compelling evidence.

Additionally, the circumstances surrounding the missing chat data, including the shifting date Duke alleges he last spoke with Kirti Saraswat regarding SEO on his website and his changing explanations as to the nature of Saraswat's work on his website which only came to light upon the discovery of the only Yahoo! chat document that was not deleted, *could* lead a reasonable person to the conclusion that Duke deleted other unfavorable chats, regardless of Gough's testimony. That's likewise compelling evidence.

---

[8] Specifically, Schiff opines that "I have seen no evidence to indicate that Duke intentionally deleted his historical Yahoo! Messenger data or that he was responsible for the August 2016 changes to his Messenger account." Dkt. 373 at 11 ¶ 30.

[9] This would be similar to Duke's non-suggestion that Edmiston record the September 2013 Las Vegas trade show. Duke claims he was only kidding. But, nevertheless, Edmiston recorded Plaintiff's agent at the trade show. A reasonable person would wonder why these situations keep occurring.

Conversely, it is possible a reasonable person might also conclude from the same set of facts and testimony that Duke did not delete the chats. Maybe a reasonable finder of fact would find Duke's denials compelling. But because the answer to the question of what happened to the Yahoo! chats rests largely on the credibility of Duke's explanations regarding the chat data and his data retention practices in general, the Court will allow a jury to decide this issue one way or the other rather than reopen the evidentiary hearing for more unnecessary and time-consuming argument.

Finally, to the extent defendants reargue that Gough's testimony lacks foundation or is speculative, the Court already overruled these objections at the evidentiary hearing, and defendants have offered no argument compelling a different result. The foundation for Gough's opinion testimony was established at the hearing.

This is a 2012 case. Although aggressive litigation tactics by both sides contributed to the time this case has remained pending, the vast majority, if not all, of the recent delay is attributable to the many discovery errors from the defense side of the "v" which are the subject of the motion for sanctions. The motion to reopen is simply another belated attempt for defendants to provide yet more shifting explanations for discovery deficiencies despite the Court giving them ample and repeated opportunities to do so. Reopening the issue would waste yet more time, money, and court resources while bringing this trademark case (yes, this is at its core a trademark case) no closer to a definitive an end.

Entered: January 19, 2021           By: _____
                                    Iain D. Johnston
                                    U.S. Judge