when a party acts negligently. *e360 Insight*, 658 F.3d at 642-43; *Tec-Air*, 1994 U.S. Dist. LEXIS 2026, at *20-21. To the extent Defendants are using Duke's alleged honesty as a mitigating factor, bad faith is only one factor. Moreover, Duke's honesty argument is meritless. His response to Life wasn't honest when he did not even search the Yahoo! chat account, despite using that account to communicate with Saraswat. Tr. 138, 139. The prejudice factor is overwhelming under these circumstances. The first production wave of these responsive documents occurred on March 29, 2018. Dkt. 294-2, at 2-114. That wave comprised 112 pages. *Id.* The second wave, comprising nearly 15,000 pages, occurred on May 31 and June 1, 2018. Tr. 912, 1452-53; Pl.'s Ex. 91. These productions were in the middle of summary judgment briefing and years after the documents were ordered to be produced. Dkt. 132; *Tec-Air*, 1994 U.S. Dist. LEXIS 2026, at *27-28 (documents produced after the close of discovery). For nearly forty years, courts have held that ultimately producing requested documents does not absolve a party of its untimely production. *Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 145 (N.D. Ill. 1982).

As sanctions, the Court (1) awards attorneys' fees against Duke and Leavens; (2) bars Defendants from using any of the documents or information contained in the documents not produced by June 15, 2015;[60] (3) bars Defendants from contesting that Saraswat and Webrecsol were performing work for Defendants through the date the metatag containing Plaintiff's mark was removed from

---

[60] This sanction is nearly duplicative of the sanctions imposed under Rule 37(c) barring Defendants from using any documents or information not produced by the supplementation date. The sanction under Rule 37(b) is merely a subset of the Rule 37(c) sanction.

Defendants' website; and (4) bars any of Defendants' expert witnesses from testifying that their opinions would not change had they considered these documents. Fed. R. Civ. P. 37(b). These sanctions are tailored to the severity of Defendants' and Leavens' conduct and to remedy the prejudice Plaintiff has suffered. Plaintiff's trial strategy was sabotaged, and it was forced to litigate the extensive summary judgment motions without the documents the Court ordered Defendants to produce years before. *Metro. Opera Ass'n.*, 212 F.R.D. at 229 (trial strategy and summary judgment hampered by untimely production of documents). Plaintiff's entire summary judgment briefing was undone by the late production of the documents. And the barring orders are directed toward Saraswat's and Webrecsol's SEO work for Defendants, which is the precise topic upon which Plaintiff sought discovery and the Court ordered production.

In fashioning a remedy under Rule 37(b), the Court considered finding that Defendants intentionally placed Plaintiff's mark in Defendants' website. But that sanction would be equivalent to granting default in favor of Plaintiff and dismissing Defendants' counterclaim. The Court believes that sanction would be too severe. *See Worldpay, US, Inc.*, 2018 U.S. Dist. LEXIS 193562, at *17 (default and dismissal are the most extreme sanctions).

### d. Rule 37(c)

When a party fails to provide information that is required to be disclosed under Rule 26(a) or 26(e) and that failure is neither substantially justified nor harmless, sanctions are automatic and mandatory. Fed. R. Civ. P. 37(c)(1); *David*,

324 F.3d at 857. Those sanctions include barring the non-producing party from using the documents or information, requiring the payment of the moving party's attorneys' fees, and informing the jury of the party's failure to produce the documents or information. Fed. R. Civ. P. 37(c)(1)(A), (B). Rule 37(c) only authorizes sanctions against a party. Fed. R. Civ. P. 37(c); *Maynard*, 332 F.3d at 470. The following is just a sample of the admittedly tardy disclosures requiring sanctions under Rule 37(c). Dkt. 382, at 9 ("There is no dispute that documents in these ten categories were not produced until after discovery closed.").

There is no doubt that all the ESI that the former defense counsel frantically disclosed in the spring of 2018 was required to be disclosed under Rule 26(a) and Rule 26(e). They knew it should have been disclosed, but it was not. They admitted as much. Tr. 1283; Dkt. 294-2, at 2. This disclosure included the 112 pages of documents that were disclosed on March 19, 2018 in the middle of summary judgment briefing. Pl.'s Ex. 1; Dkt. 294-2, at 2-114. It also included the 15,000 pages of ESI from the Yahoo! email account that were disclosed on May 31 and June 1, 2018, years after they should have been produced. These tardy disclosures were caused in large part by Duke's repeated dishonesty with the former defense counsel.

Included within that disclosure was the ESI that substantially undermined Duke's and Saraswat's sworn testimony. Pl.'s Ex. 17; Dkt. 294-2, at 171-173. Not only was this document impeaching, but it also went to the heart of Plaintiff's unclean hands defense. Also included in this tardy production were the emails between Duke and Edmiston and the recordings that substantially undermined the

228

highly questionable defamation counterclaim. Pl.'s Exs. 22-27; Dkt. 294-2, at 221-233.

Finally, there exist over 23,000 documents in the GoDaddy email accounts that should have been produced years ago. All of these documents contain the agreed-upon search terms and should have been produced in 2015. Dkt. 116; Dkt. 318-1, at 13. Because these documents have yet to be produced to Plaintiff as of the date of this order, the full extent of the undeniable prejudice is not known.

Defendants argued that these failures were not a result of bad faith or willful intent. Dkt. 382, at 10. But once a Rule 37(c) violation occurs, sanctions are automatic. *David*, 324 F.3d at 857. Defendants appeared to be relying upon the list of factors that courts should consider when determining the extent and nature of those sanctions. *Tribble*, 670 F.3d at 760. In support of this argument, Defendants placed the blame squarely on the former defense counsel, particularly Leavens. Dkt. 382, at 10.[61] But Defendants failed to address Duke's repeated representations to the former defense counsel that "they had everything" when they didn't, and Duke knew they didn't. Tr. 604-05, 609 ("Here are the total GB on the four computers that would have anything related to 21 Century Smoking."), 1160, 1224 ("The information that we received was inaccurate."), 1242 (Duke would repeatedly and erroneously tell counsel "You have all the data. You have everything."). Defendants also failed to address that Duke reviewed and approved the initial

---

[61] This is a clever argument. Because Rule 37(c) only allows sanctions against a party, by placing blame on the former defense counsel for these particular violations and errors, Plaintiff would be left without a remedy.

disclosures that stated that all the electronic records were located on the four computers. Tr. 606-07, 629, 1029; LS Ex. 7. Duke's claim that he did not know that electronic documents included emails is not credible for the multiple reasons this Court has identified throughout this order. Tr. 1529-30, 1540, 1544-45; Dkt. 294-2, at 621.

The Court imposes the following sanctions against Duke under Rule 37(c)(1) because, as shown below, Duke has failed to establish that his failures were substantially justified or harmless: (1) Duke is barred from using any of the ESI not produced by June 1, 2015, or the information contained in that ESI; (2) Duke must pay Plaintiff's reasonable attorneys' fees; and (3) the fact finders will be informed of Defendants' failures. Fed. R. Civ. P. 37(c)(1)(A),(B).

### 2. Defendants' Failures were Not Substantially Justified or Harmless, and Sanctions would not be Unjust

Although Defendants and the former defense counsel didn't specifically address substantial justification, harmlessness, or unjustness as to each applicable rule, the Court addresses all those issues.

Neither Defendants nor the former defense counsel argued that their failures were substantially justified. Because it is their burden to show substantial justification, they have forfeited this issue and cannot prevail. *Salgado by Salgado*, 150 F.3d at 742 (burden on nonmovant to show substantial justification); *Kenall Mfg.*, 354 F. Supp. 3d at 883 (failure to respond to argument forfeits issue).

Even if they were to assert that their many failures were substantially justified, they would still lose. None of their actions or inactions, both intentional

230

and negligent, were reasonably debatable.  Their errors were fundamental.  As to the former defense counsel, they violated nearly every basic principle of e-discovery, which resulted in a multitude of rule violations.  As to Duke, his actions were not substantially justified.  Dishonesty and lack of candor with counsel is never substantially justified.

Likewise, neither Defendants nor the former defense counsel[62] argued that sanctions under Rule 37(a)(5)(A)(iii) would be unjust.  Again, it was their burden to establish that an award would be unjust, and because they have not even addressed the issue, they have forfeited this argument and cannot prevail.  *Lorillard Tobacco*, 259 F.R.D. at 327 (burden on nonmovant to show sanctions would be unjust); *Kenall Mfg.*, 354 F. Supp. 3d at 883.  Moreover, there is simply nothing unjust in requiring a party that has repeatedly failed to produce relevant and responsive ESI to pay the attorneys' fees of the party that was required to litigate the issue.  The GoDaddy emails are a good example.  The record establishes that there are over 23,000 documents in the GoDaddy accounts that contain the agreed-upon search terms.  Dkt. 318-1, at 13.  They weren't produced.  The same holds true for the Yahoo! emails.  Plaintiff should not be required to eat the cost of Defendants' and the former defense counsel's ESI failures.

---

[62] Stamatis briefly argued that the imposition of sanctions on him would be unjust under Rule 37(b)(2)(C).  Dkt. 378, at 22.  As noted previously, the Court agrees that his minimal involvement in the violation of the Court's orders weigh against imposing sanctions on him under this rule.

Read charitably, the Court discerns only two possible arguments asserting that imposing sanctions would be unjust. The arguments neither individually nor collectively meet Defendants' burden.

First, Defendants made a "whataboutism" or "monkey see, monkey do" argument based upon Plaintiff's alleged spoliation of ESI. *Lorillard Tobacco*, 259 F.R.D. at 328 n.1 (unjust circumstances focus on conduct of moving party). According to Defendants, Plaintiff has likewise destroyed a substantial amount of ESI. Dkt. 382, at 19-20. But this issue was previously raised in a motion that, by agreement, was dismissed without prejudice to be raised later in a motion in limine. Dkt. 290; Dkt. 293, at 32. Also, besides being fundamentally different in nature and timing, dkt. 278, at 56, this issue was not raised in Defendants' response brief before the hearing, so unsurprisingly nobody addressed it and no evidence was presented at the hearing on this issue. Defendants are free to raise this issue again in their motion in limine, which is precisely what Defendants agreed to do. Dkt. 293, Dkt. at 32; Dkt. 290. The issue raised in the Defendants' dismissed motion has no impact on this Court's decision on the spoliation issues before it. Moreover, Defendants cannot duck the consequences of their repeated fundamental rules violations by pointing at a single yet-to-be-determined allegation of spoliation. *Bankdirect Capital Fin.*, 2018 U.S. Dist. LEXIS 224705, at *23 (repeated rule violator cannot "slough off its violations by pointing at opponent").

Second, on the final pages of their post-hearing brief, Defendants assert, "Plaintiff should not be reimbursed for the unreasonable amount of time and money

they have spent trying to prove the alleged Duke-Saraswat conspiracy, trying to convince the Court that Mr. Duke is a liar, or that he and his former lawyers intentionally failed to comply with discovery obligations." Dkt. 382, at 25-26.[63] This cursory argument fails to show why imposing an award of attorneys' fees would be unjust.

The Court is not reimbursing Plaintiff for an unreasonable amount of time and money relating to those identified issues. The Court is reimbursing Plaintiff for Defendants' and the former defense counsel's repeated and unreasonable e-discovery failures, which the Plaintiff was required to litigate because Defendants never took Plaintiff's clearly legitimate concerns seriously. Tens of thousands of documents were not timely produced despite Court-ordered deadlines. Specific documents that the Court ordered be produced were not produced by the due date but were instead produced in the middle of summary judgment briefing. Plaintiff should be reimbursed for these clear violations of rules and court orders.

Defendants and the former defense counsel focused on—to the extent they focused on any of exceptions under Rules 37(a),(b), and (c)— the alleged lack of harm to Plaintiff. Dkt. 379, at 22; Dkt. 382, at 10, 12.

The former defense counsel and Defendants minimized the prejudice Plaintiff has suffered. Neither addressed the prejudice to the Court or the other litigants whose cases have been sidetracked because of this case. *Bankdirect Capital*, 2018 U.S. Dist. LEXIS 224705, at *23. The former defense counsel seemed to recognize

---

[63] Interestingly, Defendants' argument in this regard is no longer than Plaintiff's Rule 26(g) argument that Defendants asserted was undeveloped and, therefore, waived.

prejudice may have occurred but that they were unaware of the extent, as the extent is still unknown. Dkt. 379, at 2. Defendants focused on the lack of a trial date as their basis for claiming that their errors were harmless. Dkt. 382, at 11. The Court vehemently rejects both assertions.

The prejudice shelled upon Plaintiff was extraordinary. Parties suffer prejudice when their access to relevant information and documents impairs their ability to prepare for trial. *Laukus*, 292 F.R.D. at 511. Parties incur prejudice because they do "not have the benefit of the documents while selecting deponents, taking depositions, conducting third party discovery, and preparing [their] trial strategy and pre-trial documents." *HM Elecs*, 2015 U.S. Dist. LEXIS 104100, at *77; *see also Tec-Air*, 1994 U.S. Dist. LEXIS 2026, at *13-14 (documents produced seven months after close of discovery). All that happened here. Plaintiff repeatedly articulated the harm it has suffered. Dkt. 239, at 2-3; Dkt. 249, at 17; Dkt. 293, at 5,7; Tr. 356. Plaintiff was deprived of massive amounts of ESI during the entire pretrial litigation process.

Additionally, failing to produce tens of thousands of relevant and responsive documents and only producing them long after the close of discovery, both fact and expert, and after extensive summary judgment motions and responses have been filed is the epitome of trial by ambush. *Bankdirect Capital*, 2017 U.S. Dist. LEXIS 224705, at *11 n. 5. The gravamen of the Federal Rules of Civil Procedure is to eliminate trial by ambush. *See Hickman*, 329 U.S. at 501; *A PDX Pro Co.*, 311 F.R.D. at 652. Defendants and the former defense counsel then further prejudiced

234

Plaintiff by making Plaintiff extensively litigate the ESI issues for another 18 months, all while still having not made a complete production of relevant and responsive ESI.

Arguing that Plaintiff has not suffered prejudice because no trial date has been set is just as meritless.

Although courts can consider the impact on trial as a factor, *Tribble*, 670 F.3d at 760, it is not determinative. It is only one factor. *Cf. S. Sys. v. Torrid Oven, Ltd.*, 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000). Prejudice can still occur even though a court has not held the trial or even set a trial date. *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12cv2884, 2015 U.S. Dist. LEXIS 104100, at *75 (S.D. Cal. Aug. 7, 2015). As Magistrate Judge Cole noted a decade ago, it is rarely a good answer to simply argue a lack of prejudice because of the absence of a trial date. *Hard Surface Sols., Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010) ("[I]t is no answer to say the trial date has not been set."). That is particularly true in the U.S. District Court for the Northern District of Illinois, Western Division. As anybody who practices here should know, in the Western Division, a trial date is not given until all discovery and pretrial matters are completed. *PCM Leasing, Inc. v. BelGioioso Cheese, Inc.*, No. 16 CV 50076, 2019 U.S. Dist. LEXIS 117813, at *10-11 (N.D. Ill. July 11, 2019). The same holds true for other courts that operate with a similar system. *See McPeek v. Harrah's Imperial Palace Corp.*, No. 2:13-cv-01371, 2015 U.S. Dist. LEXIS 66545, at *12 (S.D. Nev. May 20, 2015) (the argument that no prejudice occurs because no trial date has been set ignores "the fact that a trial

date is not set in this district until after the close of discovery, after dispositive motions are decided and after the joint pretrial order is filed"). As a result, the discovery closure date has the same effect as a trial date. If parties do not meet the deadlines for discovery, the case cannot proceed, and no trial will occur.

Furthermore, cases recognize that the trial date factor implicitly also means the dispositive motion date. *Mack v. City of Chicago*, 16 C 7807, 2019 U.S. Dist. LEXIS 48554, at *7 (N.D. Ill. Mar. 25, 2019). After the Supreme Court's summary judgment trilogy, modern civil litigation implicitly recognizes the likelihood—alas, inevitability—of summary judgment motions. *See Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 935 (N.D. Ill. 2008). Consequently, "[t]hat a trial date has not been set is immaterial, for [the rules prohibit] improperly withheld evidence from disrupting a 'motion' as well as a 'trial.'" *Mack*, 2019 U.S. Dist. LEXIS 48554, at *7. So, parties and courts are prejudiced when discovery failures wreak havoc on dispositive motion deadlines, too. *Woliner v. Sofronsky*, No. 18-CV-80305, 2019 U.S. Dist. LEXIS 3431, at *12 (S.D. Fla. Jan. 8, 2019).

This entire case was derailed in the middle of extensive summary judgment briefing after years of fact and expert discovery—discovery that occurred without a complete production of relevant and responsive documents because of the multiple failures by Defendants and the former defense counsel. The lack of a trial date offers no quarter to the clear prejudice inflicted on Plaintiff here.

In a simply stunning argument, Defendants argued that even if prejudice existed, the Court should not permit a reopening of discovery to cure the prejudice.

Dkt. 382, at 11-12.  But Defendants almost immediately retreated from that meritless position.  Dkt. 382, at 12.  To the extent Defendants or the former defense counsel assert that the prejudice can be cured by reopening discovery, the Court rejects the assertion.  Merely reopening discovery—which would require reopening both fact and expert discovery—is an exceedingly poor option, particularly in a 2012 case.  Reopening discovery is not necessarily a reasonable cure for the prejudice incurred by a party. *Laukus*, 292 F.R.D. at 513.  A party suffers prejudice if it would need to reopen multiple depositions.  *Id. a*t 511.  Memories fade.  More money is spent.  Resolution is delayed.  There must be an end to litigation.  Again, this is a 2012 case.  It is the oldest rat in the barn.  Reopening discovery is not a reasonable option.

Since discovering the ESI deficiencies, at nearly every opportunity, Plaintiff has highlighted the prejudice it has suffered.  *See, e.g.*, Dkt. 239, at 2-3; Dkt. 249, at 17; Dkt. 256, at 13; Dkt. 293, at 5, 7; Tr. 356.  And it made the prejudice plain in its post-hearing brief.  Dkt. 381, at 23.  In a moment of candor, Stamatis even recognized that he'd be "hard pressed" to say that sanctions weren't warranted.  Dkt. 315, at 9.  The Court agrees.  In fact, the Court believes it would be abusing its discretion if it did *not* sanction Defendants and the former defense counsel.  *Metro. Opera Ass'n*, 212 F.R.D. at 220 (a court should not shrink from imposing harsh sanctions when they are warranted because unless sanctions are perceived as a credible threat rather than a paper tiger, the pretrial quagmire threatens to engulf the entire litigation process).

Defendants finally argued that the prejudice was not great because only a "handful of documents" were identified by Plaintiff as being critical. Dkt. 382, at 11. That argument fails. First, it does not address the over 23,000 GoDaddy documents that have yet to be produced, so it is unknown how many more critical documents exist. Dkt. 318-1, at 13. Second, the argument does not address that included in these "handful of documents" are critical documents that undermine the defamation counterclaim, substantially impeach Duke, and support Plaintiff's unclean hands defense. Dkt. 267, at 19-24, 50 (withheld ESI was "good impeaching material"). Third, it does not address that an online sales document that should have been produced, but wasn't, would have undoubtably been used to examine Duke and his market penetration expert. Fourth, the argument does not address that the late-produced documents established that the claimed auto-forwarding solution did not, in fact, prevent the spoliation of ESI that should have been preserved. Opposing counsel doesn't get to decide what's important to the other side's case.

### 3. Curative Measures are Necessary under Rule 37(e)

There is absolutely no doubt that two sets of ESI were destroyed: the Yahoo! chats and certain GoDaddy emails. Even Defendants recognized this fact in their post-hearing brief. Dkt. 382, at 4. This Court has already articulated the decision tree process to analyze destroyed ESI. *Snider*, 2017 U.S. Dist. LEXIS 107591, at *8-11. But before conducting that analysis, the Court must address two preliminary

matters regarding evidentiary issues and present background about the Yahoo! chats and the GoDaddy emails.

### a. Evidentiary Issues

First, the Court addresses an evidentiary issue raised in Leavens' post-hearing brief. Leavens argued against curative measures and sanctions by relying, in part, on a declaration found in this Court's lengthy docket, a declaration by Saraswat. Dkt. 276. There are two fundamental problems with relying on that declaration. First and foremost, the declaration was never introduced into evidence, a fact even Defendants recognized. Dkt. 382, at 8. So, the Court will not consider it.

Additionally, even if the Court were to consider the Saraswat declaration, it would not help Leavens. The declaration is demonstrably false in many respects. Indeed, it is the falsity of that very declaration in conjunction with the falsity of Duke's declaration on the same subject that only further undermines Defendants' and Leavens' arguments. The declaration claimed that Saraswat's "work for Mr. Duke and 21 Century Smoking ended in or about February of 2010." Dkt. 276, at 2. Saraswat also claimed that she "did not do any work of any kind on 21 Century Smoking's website after February of 2010," and that she "did not make any changes to its website content, keywords or metadata after that month." *Id.* These would be critical, relevant facts going to Plaintiff's unclean hands argument, as previously discussed. But these claims in Saraswat's declaration are demonstrably false. The content of the one chat that was produced establishes the falsity of Saraswat's

239

declaration. That chat established that Saraswat was working for Duke on the 21

Century Smoking website on September 13, 2010, including working on the

metadata components of the website. Dkt. 294-2, at 171-73; Pl.'s Ex. 17. At that

time, Saraswat and Duke communicated about here continued efforts to increase

Defendants' SEO. *Id.* Moreover, Saraswat's declaration even conflicts with Duke's

testimony as to when she stopped working for him. At one point, Duke claimed

Saraswat stopped working for him in April of 2010. Dkt. 234-2, at 1. But even at

the evidentiary hearing, Duke pushed that date back to the end of 2010. Tr. 1552-

53. This exhibit fundamentally establishes why ESI can be so critical to a case.

This one piece of evidence not only impeaches the Defendants' two most important

witnesses, but it also bolsters Plaintiff's main defense. So, when luckily the content

of ESI somehow survives a destruction process and that content undermines the

destroying party's claims, the destruction of the other ESI becomes exponentially

more important.

The second evidentiary issue involves how and when the chats were

destroyed. Defendants argued that the Yahoo! chats were lost because of a

changeover in the Yahoo! program in 2016. Dkt. 382, at 7. Defendants based that

argument on the opinion testimony of Yaniv Schiff. Dkt. 382, at 7. Despite Duke's

self-purported ignorance of computer science, he came to the same opinion. Tr. 138.

As explained in more detail in the separate order addressing Defendants' motion to

reopen the hearing to allow Schiff's opinion testimony, the Court is not considering

his opinion. These reasons include, but are not limited to, the following. First,

240

Defendants had months to obtain an expert witness but did not do so until after the hearing was closed—and after they repeatedly confirmed to the Court that they had no more evidence to present. Tr. 1554. Second, and critically, the expert opinion is from a hired gun who has not been subjected to cross-examination, so his opinions are inherently biased. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1231 (Fed. Cir. 2014) (retained expert witnesses are inherently biased but the bias is mitigated by the ability to cross-examine); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988) ("Hired experts, who generally are highly compensated—and by the party on whose behalf they are testifying—are not notably disinterested."). Therefore, in the Court's discretion, it is not considering Schiff's opinions. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999) (discussing that the district court has discretion to admit expert testimony); *see Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017) (non-*Daubert* issues going to admissibility of expert testimony are reviewed for abuse of discretion). Moreover, even accepting Schiff's un-cross-examined opinion, the Yahoo! program change-over occurred in 2016, long after the duty to preserve was triggered. Dkt. 382, at 7; Dkt. 373, at 7-11. Gough's testimony indicates that perhaps the chats were destroyed in 2018. Tr. 1498-1500. Schiff's opinion only moves the possible date of when the chats were destroyed forward two years from 2018 to 2016. Regardless, the duty to preserve had been

triggered before either date, which Defendants concede.  Dkt. 382, at 4 (duty to preserve began on September 2, 2012).[64]

### b. Background of Yahoo! Chats and GoDaddy Emails

### i. Yahoo! Chats

These facts are established: (1) Yahoo! chat was the major method Duke used to communicate with Saraswat, who worked on Duke's website and who input metadata into that website, Tr. 136-39; (2) Plaintiff's theory was that Duke or Saraswat or both included Plaintiff's mark in a metatag on Defendants' website; (3) Defendants knew this was Plaintiff's main theory, Dkt. 269, at 13-14; (4) Plaintiff's requested these chats; and (5) on June 11, 2015, the Court ordered Defendants to produce these communications, Dkt. 132; Dkt. 269, at 16-18.

The following facts are also established.  Despite all of the above, (1) Duke never searched for Yahoo! chats, Tr. 139, 272; (2) Duke did nothing to preserve these chats, Tr. 139, 272, even though he knew they should be preserved, Tr. 215-16, 621; and (3) Duke did not obtain copies of the chats, Tr. 272.  As a result, the chats were not preserved.  Tr. 216.  All Yahoo! chats became unrecoverable when Yahoo! suspended the program in July of 2018.  Tr. 1498-1500.  The former defense counsel knew Duke communicated with Saraswat via Yahoo! chat.  Tr. 763, 926.  Nevertheless, the former defense counsel did not instruct Duke to disable any autodeletion settings.  Tr. 936, 1208.

---

[64] Whether Duke received notice of Yahoo! terminating the chat function in 2016 is irrelevant.  Dkt. 382, at 7.  The duty to preserve already existed by then.  Moreover, as explained earlier, Duke's testimony that he did not receive notice from Yahoo! that it was terminating a major communication function is simply not credible.

The evidence at the evidentiary hearing also established that if Yahoo! chat were used and were searched for but not found, then it is a reasonable inference that the chats were deleted. Tr. 1499-1500. This is particularly true because the program should have saved these chats. Tr. 552.

Furthermore, the evidence establishes that the former defense counsel dawdled in investigating the Yahoo! chat issue and attempting to preserve the chats. They knew Duke used Yahoo! chat for business as early as 2012. Tr. 763, 926. Before May 31, 2018, they read Yahoo! emails that referenced Yahoo! chats relating to SEO, and they did nothing to investigate the Yahoo! chat issues between May 31, 2018 and August 14, 2018—and were unable to explain why they did nothing. Tr. 926. Months passed while they did nothing. Tr. 924-25. During that time, because the Yahoo! chat program was suspended in July of 2018, all chats became irretrievable. Tr. 1498-1500. The former defense counsel's dawdling was particularly costly, if the chats were destroyed in 2018 as the evidence at the hearing indicated. While the former defense counsel dawdled, Duke did nothing. Tr. 139, 272. When parties learn of potential spoliation issues, they must act quickly to address those issues to reasonably ensure that no further spoliation occurs. *J.S.T. Corp.*, 2019 U.S. Dist. LEXIS 90645, at *30-31 ("Its efforts to do so have been reluctant, delayed, and piecemeal. . . [the company] then did not take any proactive efforts to restore or replace the lost email until many months later.").

### ii. GoDaddy Emails

Duke used two GoDaddy accounts to communicate about 21 Century Smoking business. Tr. 90. Some of those communications included communications with customers who were confused about the parties to this trademark case: 21 Century Smoking and 21st Century Smoke. Tr. 197, 260, 288. At least some of these emails, as well as other emails relating to Defendants' business, were autodeleted. Tr. 286-90, 1370, 1390-92. In this 2012 case, the autodeletion was not disabled until June 29, 2015. Tr. 167-69, 310, 316, 318. The former defense counsel did not instruct Duke to disable any autodeletion settings. Tr. 936, 1208. At least one confused customer alleged that Defendants were using Plaintiff's mark to increase Defendants' sales. Pl.'s Ex. 69.

### c. Rule 37(e) Decision Tree Analysis

Rule 37(e) creates an analytical decision tree. *Oracle Am., Inc.*, 328 F.R.D. at 549. The Court applies the decision tree below.

### i. Was the Information ESI?

There is no dispute that the Yahoo! chats and GoDaddy emails are electronically stored information. The Court assumes that most parties accused of spoliating evidence will argue that the evidence was ESI, rather than physical evidence, because of Rule 37(e)'s more forgiving standard.

### ii. Was There a Duty to Preserve the ESI?

The duty to preserve is based on the common law, and Rule 37(e) does not attempt to create a new duty to preserve. Fed. R. Civ. P. 37(e), advisory committee's notes to 2015 amendments. The uniform understanding is that the

duty to preserve is triggered when litigation is commenced or reasonably anticipated. *The Sedona Principles*, *Third Edition*, *supra* at 51. The scope of the duty to preserve includes ESI that is expected to be relevant and proportional to the claims or defenses in the litigation. *Id.* In a traditional tort setting, the moving party would bear the burden of proof to establish that a duty existed. *See Shurr v. A.R. Siegler*, 70 F. Supp. 2d 900, 934-35 (E.D. Wisc. 1999). And in a traditional tort setting, duty is a question of law determined by the factual circumstances presented. *See Masters v. Hesston Corp.*, No. 99 C 50279, 2001 U.S. Dist. LEXIS 6732, at *27-28 (N.D. Ill. May 24, 2001) (*citing Quinton v. Kuffer*, 582 N.E.2d 296, 300 (Ill. App. Ct. 1991)).

This action was filed on September 7, 2012. Dkt. 1. Defendants' answer was filed on October 3, 2012. Dkt. 8. Plaintiff first learned of its mark being contained in Defendants' website, which was a basis for the preliminary injunction, no later than March 7, 2013. Dkt. 22. So, the duty to preserve was likely triggered by September 7, 2012, and certainly, no later than March 7, 2013. Even Defendants seem to recognize that the duty to preserve was triggered in September of 2012. Dkt. 382, at 4. The scope of the duty includes ESI relevant to the claims and defenses—including customer confusion, SEO of Defendants' website, and the inclusion of metadata in Defendants' website. The GoDaddy email accounts were used for all manner of Defendants' business, including tracking customer confusion correspondence. Tr. 90, 284-87. And the Yahoo! chat was used to communicate

with Saraswat about SEO and metadata in Defendants' website. Tr. 138-39; Pl.'s Ex. 17.

The GoDaddy accounts were autodeleting through mid-2015. Tr. 167-69, 310, 316, 318. And the Yahoo! chats were destroyed in either 2018 or 2016. Tr. 138, 1498-1500. All these dates are after the duty to preserve was triggered.

The GoDaddy emails and the Yahoo! chats were destroyed after the duty to preserve was triggered.

### iii. Was the ESI Relevant?

The nature of the missing evidence is beneficial for understanding relevance, as well as for determining prejudice. *Cf. Snider*, 2017 U.S. Dist. LEXIS 107591, at *12. Under general discovery principles, the party seeking to compel discovery has the burden of showing relevance. *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016); *see Zimmer, Inc. v. Beamalloy Reconstructive Med. Prods., LLC*, No. 16-cv-00355, 2019 U.S. Dist. LEXIS 47539, at * 10 (N.D. Ind. Mar. 22, 2019); *O'Gara v. Equifax Info. Servs., LLC*, No. 16-cv-01237, 2018 U.S. Dist. LEXIS 10361, at *5 (S.D. Ind. Jan. 23, 2018). This burden is not a high standard for at least two reasons. First, relevance is determined under the standard in Federal Rule of Civil Procedure 26(a)(1) and not the standard of Federal Rule of Evidence 401, which itself is not a high standard. *Jones v. Wiseman*, No. 20-5105, 2020 U.S. App. LEXIS 40040, at *25 (6th Cir. Dec. 22, 2020); *Snider*, 2017 U.S. Dist. LEXIS 107591, at *9 n.9; *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 519-20 (N.D. Ill. 2018). Second, the principle that the

party with access to the proofs generally bears the burden on an issue should temper, at least to some extent, the quantum necessary to meet the burden. *See Schaffer v. Weast*, 546 U.S. 49, 60 (2005) (the party with access to the proofs bears the burden of proof). In spoliation circumstances, the party seeking sanctions does not have access to all the necessary proofs in large part because the other side spoliated the evidence.

Again, the GoDaddy email accounts were used for multiple aspects of Defendants' business, including tracking customer confusion correspondence. Tr. 90, 284-87. Customer confusion is at the center of any trademark case. *Ziebart Int'l Corp.*, 802 F.2d at 225. And Yahoo! chat was used to communicate with Saraswat about SEO and metadata in Defendants' website. Tr. 138-39; Pl.'s Ex. 17. It is undisputed that Plaintiff's mark was in Defendants' website. Dkt. 278, at 49; Dkt. 347, at 16. Plaintiff's theory was that Duke or Saraswat included Plaintiff's mark in Defendants' website, and Defendants knew this was Plaintiff's primary argument. Dkt. 278, at 49. The GoDaddy emails and the Yahoo! chats easily meet the relevance standard under Rule 37(e).

### iv. Was the ESI Lost Because a Party Failed to Take Reasonable Steps?

There exists some authority, by well-respected ESI jurists, that places the burden on the party seeking sanctions to show that reasonable steps were not taken. *Sosa v. Carnival Corp.*, No. 18-20957, 2018 U.S. Dist. LEXIS 204933, at *47-48 (S.D. Fla. Dec. 4, 2018); *see also Glob. Hookah Distribs. v. Avior, Inc.*, No. 3:19-CV-00177, 2020 U.S. Dist. LEXIS 133985, at *33-34 (W.D.N.C. Jul. 29, 2020). This

247

Court is not so sure about that allocation of burden. Again, burdens of proof generally fall on the party with better access to the information. *Schaffer*, 546 U.S. at 60. It seems odd to place the burden on the movant to show that the party that unquestionably destroyed the ESI failed to take reasonable steps to preserve the destroyed evidence. The movant would not have access to the information programs or systems or the relevant resources and skills of the party that destroyed the ESI. Moreover, placing the burden on the movant for this requirement just begs for the dreaded discovery-on-discovery quagmire.

Regardless of which party bears the burden, it is beyond dispute that Defendants failed to take reasonable steps to preserve the GoDaddy emails and Yahoo! chats. To preserve the GoDaddy emails, Defendants simply needed to disable the autodeletion setting, which is something that Duke was able to complete after a single phone call to GoDaddy. Tr. 178, 316-17. As the legion of case law discussed earlier in this order shows, disabling an autodeletion function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI. *See, e.g.*, *Bankdirect Capital Fin.*, 2018 U.S. Dist. LEXIS 57254, at \*13, 23-25. As for the Yahoo! chat, the evidence at the hearing established how simple it would be to preserve and collect Yahoo! chats—provided they have not been deleted. Tr. 1493-1500. Further, Duke could have copied and saved this ESI at any time. Indeed, Duke could have even simply cut and pasted the chats into emails and forwarded the emails to an account, which is precisely what he did with the September 13, 2010, chat. Pl.'s Ex. 17. Instead, he took no

actions to preserve the chats. Tr. 139, 272. In fact, a reasonable inference is that Duke affirmatively deleted the chats, despite his claims to the contrary. Tr. 99-100, 1519 (chat program set to save and chats were not autodeleted); Tr. 1499-1500 (if chat used, searched for but not found, then it was deleted).

Moreover, Leavens' and Stamatis' actions were not reasonable. First, they failed to even draw the distinction between Yahoo! email and Yahoo! chat. Instead, the Court had to inform them of the distinction. And the Court's investigation consisted of simply going to the Yahoo! home page, which the Court did during a status hearing. Dkt. 267, at 31-33, 57-58. Second, Leavens and Stamatis dawdled even after the Court explained the distinction, which established that they had not yet preserved the chats. Two months passed before they took any action, and in the meantime, Yahoo! terminated its chat program. Tr. 316-17 (counsel took no actions to investigate chats between May 31, 2018, and August 14, 2018).[65] The ESI was lost because Defendants and the former defense counsel failed to take reasonable steps to preserve it.

### v. Was the Lost ESI Unable to be Restored or Replaced?

As with the reasonable steps issue, there is some authority that places the burden on the moving party to show that the lost ESI in incapable of being replaced

---

[65] This terrible scenario is the best-case scenario for Defendants and the former defense counsel. If the chats were not destroyed in the summer of 2018 when Yahoo! terminated the program, while they dawdled, then the chats were destroyed by Duke earlier or the chats were destroyed in 2016 when Yahoo! transitioned the program to a web-based system. The key is that all these dates are after the date upon which the duty to preserve was triggered.

or restored. *Glob. Hookah Distribs*, 2020 U.S. Dist. LEXIS 133985, at *33-34; *Sosa*, 2018 U.S. Dist. LEXIS 204933, at *47-48. The Court has the same concerns with respect to this allocation of burdens, too.

Regardless of which party bears the burden of proof on this issue, all the evidence establishes that the Yahoo! chats and autodeleted GoDaddy emails cannot be restored or replaced. Tr. 67, 164, 168, 180, 216, 936, 938-39, 1498-1500. They're gone.

Defendants made a strange argument that the lost chats could be restored by deposing Saraswat. Dkt. 382, at 8. Of course, allowing a deposition of a witness is *not* what Rule 37(e) meant by "restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The question is whether the *electronically stored information* can be restored or replaced. *Id.* Further, even in the context of establishing prejudice, Defendants' proposed solution is insufficient under these facts. *Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 U.S. Dist. LEXIS 216011, at *10-11 (N.D. Ill. Mar. 23, 2018). Deposing the sender and receiver of chats is not a remedy here.

The Yahoo! chats and the autodeleted GoDaddy emails that were not auto-forwarded to the Yahoo! account cannot be restored or replaced. If Plaintiff were to bear the burden on this issue, they have met this burden.

### vi. Was There Intent to Deprive/Was There Prejudice?

Intent and prejudice are both separate and related concepts under Rule 37(e). Intent must be established before a court can impose sanctions, such as adverse jury instructions, default, and dismissal under Rule 37(e)(2). Fed. R. Civ. P. 37(e), advisory committee's notes to 2015 amendments. If intent is established for these sanctions, prejudice need not be separately established because prejudice is assumed from the intent. *Snider*, 2017 U.S. Dist. LEXIS 107591, at *10 (citing Fed. R. Civ. P. 37(e)(2), advisory committee's notes to 2015 amendments). So, in that way, the concepts of intent and prejudice are interrelated. But only prejudice is required for a court to impose curative measures under Rule 37(e)(1). Fed. R. Civ. P. 37(e), advisory committee's notes to 2015 amendments. And, although there is authority requiring the moving party to establish *intent*, *Freidig v. Target Corp.*, 329 F.R.D 199, 210 (W.D. Wisc. 2018), the court is left with discretion to determine which party bears the burden to establish *prejudice*. Fed. R. Civ. P. 37(e), advisory committee's notes to 2015 amendments.[66]

There is certainly enough evidence for a reasonable person to conclude that Defendants intentionally destroyed the Yahoo! chats. But a reasonable person could likewise find, under the facts found by this Court, that Defendants did not intentionally destroy this ESI. The destruction of the GoDaddy emails is a closer

---

[66] Defendants argued in their post-hearing brief that, "In meeting their burden, Plaintiffs' [sic] must present compelling evidence of bad faith to trigger Fed. R. Civ. P. 37(e)(2). *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018)." Dkt. 382, at 8. This contention is patently false. There is nothing in *Pearson* that requires a party seeking sanctions under Rule 37(e)(2) to "present compelling evidence." The Court expects better from counsel. Misrepresenting the holdings of cases is sanctionable. *See Hill v. Norfold & W. Ry. Co.*, 814 F.2d 1192, 1200-01 (7th Cir. 1987).

call.  So, because reasonable people could disagree as to whether Defendants
intended to destroy this ESI, the Court is leaving this issue to the jury to determine
and will not impose sanctions under Rule 37(e)(2).

But, because the Court finds that Plaintiff has been prejudiced by
Defendants' destruction and failure to preserve ESI, it imposes curative measures.

Establishing prejudice can be challenging.  *Schmalz*, 2018 U.S. Dist. LEXIS
216011, at *8; *Snider*, 2017 U.S. Dist. LEXIS 107591, at *10 (determining prejudice
is "tricky business").  Under Rule 37(e), the ESI has been lost.  It's gone.  So,
prejudice takes on an additional consideration.  Courts must consider the harm
caused not only under the general concept of prejudice in other Rule 37 contexts,
but also in the context of determining the harm inflicted on account of the non-
existence of relevant information.  That is a slightly different and more difficult
undertaking.  The process can be challenging in at least two ways: (1) marshalling
the evidence to show harm because of the absence of evidence, and (2) determining
which party bears the burden of proof to show prejudice.  Because of these
difficulties, the rule gives the court discretion as to how to best determine prejudice.
Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendments.

"Prejudice" under Rule 37(e) means that a party's ability to obtain the
evidence necessary for its case has been thwarted.  *J.S.T. Corp.*, 2019 U.S. Dist.
LEXIS 90645, at *19.  Prejudice also occurs when parties are forced to
unnecessarily litigate e-discovery issues when ESI is spoliated.  *Brown*, 2014 U.S.
Dist. LEXIS 90123, at *50-51.

There is little doubt that Plaintiff has been prejudiced by Defendants' unquestionable destruction of the GoDaddy emails that were not auto-forwarded to the Yahoo! email account. Defendants' GoDaddy accounts were used for nearly every facet of Defendants' business, including communicating with confused customers, such as Ms. Wood, who specifically accused Defendant of using Plaintiff's mark to increase Defendants' sales. Pl.'s Ex. 69. There is even less room for doubt about the prejudice Plaintiff suffered because of Defendants' either intentional destruction of the Yahoo! chats or, at the very least, unreasonable failure to preserve those chats. That ESI went right to the core of Plaintiff's unclean hands defense. Because of that prejudice, the Court is not only allowing the jury to hear about Defendants' behavior in failing to preserve these chats but is also imposing an evidentiary curative measure. Had the Court not already imposed attorneys' fees under several other rules, it might be inclined to reverse its previously stated view on the availability of attorneys' fees and impose that purported curative measure under the facts of this case.

In his post-hearing brief, Leavens claimed, "Perhaps more important, there was no direct evidence that any specific chat communications material to the issues in this case have been lost and cannot now be produced." Dkt. 379, at 15. That claim is completely legally, factually, and logically incorrect. Legally, there is no legal requirement that there be "direct evidence." *Bankdirect Capital Fin.*, 2018 U.S. Dist. LEXIS 224705, at *18. Cases involving ESI spoliation nearly always involve circumstantial evidence. *Schmalz*, 2018 U.S. Dist. LEXIS 216011, at *14-

15. (discussing cases involving circumstantial evidence to establish spoliation). Additionally, the undisputed facts established that except for the contents of one chat, *all* the chats are gone and cannot be recovered. Tr. 216. In fact, Leavens hired Gough to recover the chats, but he was unable to do so. Tr. 1498-1500. Further, chats between Saraswat and Duke about SEO work were "material to the issues in this case." Finally, this entire argument is nonsensical. The fundamental problem with spoliation issues is that the evidence is gone, so, of course, a party cannot point to a specific communication.

### d. Curative Measures Imposed

The Court will instruct the jury that it can consider the behavior that resulted in the loss of the ESI. Fed. R. Civ. P. 37(e)(1). This is the remedy Defendants proposed. Dkt. 382, at 6. The jury will be allowed to consider the evidence of Defendants' behavior resulting in the loss of the ESI along with all the other evidence in making its decision. The jury will also be instructed that Defendants had a duty to preserve the spoliated Yahoo! chats and GoDaddy emails, that the spoliated Yahoo! chats and GoDaddy emails were relevant to the claims in the case, that Defendants failed to take reasonable steps to preserve the spoliated Yahoo! chats and GoDaddy emails, and that the spoliated Yahoo! chats and GoDaddy emails cannot be recovered. Fed. R. Civ. P. 37(e)(1). Additionally, Defendants are precluded from asserting that Saraswat and Webrecsol were not working for Defendants at time the metadata containing Plaintiff's mark was inserted in Defendants' webpage. Fed. R. Civ. P. 37(e)(1); *see also, e.g., Charlestown*

*Capital Advisers, LLC*, 2020 U.S. Dist. LEXIS 180982, at *54; *J.S.T. Corp.*, 2019 U.S. Dist. LEXIS 90645, at *36. This remedy attempts to alleviate the harm Plaintiff incurred because of the destruction of the Yahoo! chats. The Court has already barred this evidence under Rule 37(b)(2)(A). But the bar under Rule 37(e) will be the belt to the Rule 37(b)'s suspenders.

### 4. Default and Dismissal Are Not Warranted

The Court has spent a considerable number of pages explaining the reasoning for imposing the sanctions it believes are warranted. But the Court must also explain, even briefly, why it chose not to impose certain sanctions in its discretion. Plaintiff understandably sought default against Defendants and dismissal of Defendants' counterclaims. Dkt. 294, at 83; Dkt. 381, at 7, 25. But public policy favors decisions being made on the merits. *Innovation Ventures, L.L.C. v. Aspen Fitness Prods.*, No. 11-13537, 2014 U.S. Dist. LEXIS 47544, at *11 (E.D. Mich. Apr. 7, 2014). Default and dismissal are the most extreme sanctions available. *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 353 (N.D. Ill. 2016). The Seventh Circuit has cautioned that these extreme sanctions should only be imposed when there is a clear record of contumacious conduct or less severe sanctions are unavailable. *Rice v. City of Chicago*, 333 F.3d 780, 785-86 (7th Cir. 2003). Whether a clear record of contumacious conduct exists under these facts is reasonably debatable. As the Court stated at the outset of this order, exercising its discretion, a reasonable jurist could rightfully impose those sanctions. But there are certainly less drastic sanctions available that will remedy the prejudice to Plaintiff and allow the case to

be heard on the respective merits. The sanctions this Court has fashioned are tailored toward the discovery violations. These sanctions include reimbursement of attorneys' fees and evidentiary sanctions, so Defendants will not profit from their violations. The Court's decision not to default Defendants and dismiss their counterclaims was not made lightly. Instead, the decision was discretionary based on all the facts of the case.

*       *       *

This case is an example supporting federal judges' belief that "too many attorneys pay too little heed to both the spirit and the letter of procedural rules addressing e-discovery." George Socha, *Exterro and Duke/EDRM Judges Survey 2019 Series: Part 1, Failure to Comply with Federal Rules*, ACEDS.org (April 1, 2019), https://aceds.org/exterro-edrm-judges-survey-2019-series-part-1-failure-to-comply-with-federal-rules. Again, the Court does not and cannot require perfection. But the Federal Rules of Civil Procedure require reasonableness and good faith by the parties and counsel that appear before it. Those standards were not met even under 2012 standards, let alone 2020 standards. These failures prejudiced Plaintiff. A remedy is required.

By February 22, 2021, Plaintiff must file its fee petition. Defendants and the former defense counsel must file any response to the fee petition by March 22, 2021. Plaintiff must file any reply by April 16, 2021.

Entered: January 19, 2021                    By: _____
                                                  Iain D. Johnston
                                                  United States District Judge

256