UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| DR DISTRIBUTORS, LLC, and CB DISTRIBUTORS, INC. | ) ) ) | |
| Plaintiffs/Counterclaimant, | ) ) ) | |
| v. | ) ) ) | |
| 21 CENTURY SMOKING, INC., and BRENT DUKE, | ) ) ) ) | Case No. 3:12-cv-50324 |
| Defendant/Counterclaim Defendant | ) ) ) | Judge Iain Johnston |
| 21 CENTURY SMOKING, INC., | ) ) ) | |
| Counterclaimant, | ) ) ) | |
| v. | ) ) ) | |
| DR DISTRIBUTORS, LLC, CB DISTRIBUTORS, INC. and CARLOS BENGOA, | ) ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**DEFENDANTS' RULE 72 OBJECTIONS TO FORMER MAGISTRATE JOHNSTON'S JANAUARY 19, 2021 RULING ON PLAINTIFFS' RENEWED MOTION FOR SANCTIONS**

Defendants, 21 CENTURY SMOKING, INC., and BRENT DUKE, by and through their undersigned counsel, submit the following Objections to this Court's January 19, 2021 Ruling on Plaintiff' Renewed Motion for Sanctions ("Motion"), pursuant to Fed. R. Civ. Proc. 72 ("Rule 72"), and state as follows:

I.  **INTRODUCTION.**

As recognized by Judge Johnston in his Ruling, he entertained Plaintiffs' Motion and held five days of hearings in his capacity as a Magistrate Judge, but thereafter entered his Ruling

1

as an Article III District Court Judge. *See* Ruling, at pp. 187-188. Under Rule 72, Defendants are entitled to seek District Court review of Judge Johnston's Ruling and evidentiary rulings during the Hearing because Judge Johnston was acting in his capacity as a Magistrate Judge. Accordingly, it is Defendants' position that their Rule 72 objections must be reviewed by a different District Court Judge.

## II.     OBJECTION TO LEGAL FINDINGS IN THE RULING

1.     Defendants object to Judge Johnston Ruling as a District Court Judge on matters, i.e., the Motion, that he entertained while serving in his former capacity as a Magistrate Judge.

2.     Defendants object to any monetary sanction being imposed against Defendant Mr. Duke under either Rule 26 or Rule 37, or any other basis (*see* Ruling, at pp. 209 218, 200, 220, 227, 230) because any alleged failure to comply with Defendants' discovery obligations was substantially justified because of their attorneys' failures to comply with Rule 26 and/or to inform Defendants' of their obligations under that Rule. *See* Ruling, at p. 216 demonstrating that Mr. Duke's purported discovery failures were "substantially justified," and that the record establishes that Mr. Duke ran every search as directed by his attorneys, which did not include searching for the 20 search terms. In sum, Mr. Duke did not fail to make "reasonable inquiry."

3.     Defendant object to all monetary and curative sanctions (*see* Ruling, at pp. 226-227, 254) as not being supported by, and as contrary to, the record evidence.

4.     Defendants object to the Ruling (*see* Ruling, at p. 250) that the deposition of Ms. Saraswat would not be relevant or curative in light of the fact that it goes to the heart of certain issues raised in the Motion, and in light of the fact that Plaintiffs failed to depose her or call her as a witness at the Hearing on the Motion.

5.     Defendant object to the finding in the Ruling that non-party Bill Edmiston was an an "agent" under the control of Mr. Duke for purposes of producing Edmiston's documents and

ESI (*see* Ruling, at pp. 69-70), in light of the fact there was no factual basis in the record to support any such finding, and any such finding is contrary to law.

      6. Defendants object to the Court's holding that Mr. Duke, a non-attorney, allegedly possessed superior legal and factual knowledge about Defendants' discovery obligations than his own lawyers (*see* Ruling, at p.178), where the record evidence did not support any such inference of finding, particularly where his attorneys had duties of professional care that necessitated that they possess superior knowledge regarding Defendants' discovery obligations, and that they advise Defendants with respect to such obligations.

      7. Defendants object to the Court's holding that Mr. Duke owed fiduciary duties to his Attorneys (*see* Ruling, at p. 178), where as a matter of law his attorneys owed such duties to him.

      8. Defendants object to the Court's findings that Defendants' purportedly waived and forfeited certain arguments (*see* Ruling, at pp. 121, 210, 210 fn. 15, 212, 218, 219, 220, 224 230, 231, 233 fn. 63(, where the parameters of the Hearing were uncertain, undefined, and without limitations. *See, e.g.,* October 3, 2019 Hearing where the Court acknowledged that the parties could can raise any issues in post-Hearing briefs, at Dkt. No. 336, at 28:3 to 29:10.

      9. Defendant object to the Court's findings that sanctions should be imposed against Mr. Duke where the facts established that Defendants' attorneys' failures made Mr. Duke's alleged discovery failures substantially justified.

      10. Defendants object to the Court's finding that Mr. Duke destroyed any materials, including Yahoo Chats, in light of the complete absence of any evidence to support any such inference and in light of the record evidence to the contrary.

      11. Defendants object to the Court's solicitation and allowance of undisclosed and foundationless opinions of Mr. Gough, as well as the Court's refusal to allow Defendants' counsel to fully examine Mr. Gough with respect to the same.

      12. Defendants object to the Court's attacks and findings with respect to the expert and fact testimony of Yaniv Schiff, where there was no evidence of record upon which the Court could ignore and discount his testimony.

13. Defendants object to the Court's finding that Mr. Duke destroyed ESI where there was on record evidence to support such a finding; where the record evidence supported a contrary inference and finding; and where such a determination, including a credibility determination, was not within the province of the Court.

14. Defendants object to the Court's findings or suggestions as to why Defendants sought to dismiss their claim for defamation, and to the Court's holding that Defendants should not be allowed to dismiss that claim.

### III.   Additional Objections To Particular Portions Of The Ruling

15.  Defendants object to the Court's repeated improper reliance upon, and characterization of, Mr. Duke's deposition testimony (*see* Ruling, at pp. 30, 92-93, 100, 170), where the Court improperly interpreted and characterized such testimony and where such findings regarding Mr. Duke's credibility should be determined by the fact finder.

16. Defendants object to the Court's imposing burden upon Mr. Duke to know about and comply with Rule 26 (*see* Ruling, at pp. 196-197), particularly where, as here, Defendants' counsel was shown to have not understood that Rule's obligations; failed to comply with that Rule; and failed to explain that Rule to Mr. Duke.

17. Defendants object to the Court's holding (*see, e.g.*, Ruling, at p. 8) that Defendants are required and obligated to essentially re-do all of the document and ESI production within 30 days where such a time frame is entirely unreasonable, particularly in light of the Court's prior admonition to the parties that they need not take further action.

18. Defendants object to the lack of opportunity to conduct discovery, including the depositions of the attorneys for the Plaintiffs and document production from them, where as here Plaintiffs and their counsel seek the recovery of millions of dollars in attorneys' fees and expenses. Defendants further object to the Ruling's implication (*see* Ruling, at p. 232) that Plaintiff's attorneys' fees and expenses are somehow reasonable.

19. Defendants object to the Court's reliance upon on articles and other materials not of

record, particularly where the Court failed to provide notice of such materials or its intent to rely upon them, or to provide Defendants' with an opportunity to respond to such materials (*see, e.g.,* Ruling, at p. 17).

20. Defendants object to the Court's reliance upon only four factual possibilities (*see* Ruling, at p. 49), where the Court ignored a fifth factual scenario, i.e., that Mr. Duke was inadequately informed of his obligations by counsel; that his conduct was thus substantially justified; that he thus lacked any bad faith or culpable intent; and therefore that it would be unjust to impose sanctions against him.

21. Defendants object to not being allowed to re-file their own Motion for Sanctions against Plaintiffs based upon Plaintiffs' own failure to preserve their IT manager's (Martin Hewes) emails.

22. Defendants object to the Court's finding that Defendants never searched for certain ESI because it is unsupported and contrary to the record evidence. *See* Hearing Ex. PX 68, at 0630.

23. Defendants object to the Court's foundationless conclusion, unsupported by any record evidence, that "thousands of other litigants" affected by Defendants' alleged misconduct. *See* Ruling, at p. 12.

24. Defendants object to the Court's finding (*see* Ruling, at p. 19) that Mr. Duke allegedly deceived his former attorneys where there is no record evidence to support such a finding, and where two of his former attorneys testified that he was truthful and cooperative. The Court selectively quoted LSG EX 13 ("Here are the total gb on the 4 computers that would have anything related to 21 Century Smoking"), but ignored the prior sentence that makes clear that Mr. Duke was not including file types related to web-based emails ("I guess my confusion still remains. I looked over his answer and he said by file type. What does that mean exactly? Are we only paying for word, excel, power point, pdf docs??").

25. Defendants object to the Court's holding (*see* Ruling, at p. 22) that its common sense and ordinary life experiences could serve to supplant unrebutted record evidence.

26. Defendants object to the Court's finding (*see* Ruling, at pp. 28-29) that Mr. Duke purportedly "took advantage" of his former counsel or that Mr. Duke and such counsel are equally culpable, in light of the absence of any record evidence to support such a finding, and in light of the contrary record evidence, including the former attorneys' failure to take adequate steps to know and comply with the Rules governing discovery obligations, and to apprise Mr. Duke of such obligations.

27. Defendants object to the Court's findings regarding how many websites Mr. Duke created (*see* Ruling, at pp. 30, 52), where the record evidence demonstrated that he owned 50 domain names, and not 50 websites. (*See also* Hearing Transcript, at pp. 384-397; *see also* Tr., at p. 389: 2-3, Court stating: "In my mind there is a difference between creating and owning a website.").

28. Defendants object to the Court's mischaracterization of Mr. Duke's testimony and knowledge regarding what he meant when he told Mr. Leavens everything was on the four computers. The record evidence establishes that Mr. Duke did not understand that Mr. Leaven's question sought information about web-based emails. The Court also recognized that Mr. Leavens did not understand that distinction at that time. (See Ruling, at pp. 50, 87, 174, 178, 179, 180, 223).

29. Defendant object to the Court's finding (*see, e.g.,* Ruling, at p. 50) that Mr. Duke did not properly search for ESI, where the record evidence established that he searched for ESI responsive to Plaintiffs' written discovery requests as early as March 18, 2013, and that such ESI was produced early in the litigation. (*See, e.g.,* PX 68 at 21C 0630, reflecting Mr. Duke searching Yahoo emails and conversations for "Kirti SEO" on March 18, 2013).

30. Defendant object to the Court's finding (*see* Ruling, at pp .51, 230) that Mr. Duke knew about his attorneys' failure to run the 20 search terms on Go Daddy or Yahoo! email accounts where the record evidence demonstrates that Mr. Duke was never told of the agreement between counsel to run 20 search terms on ESI. Mr. Duke testified that he never knew of the ESI protocol (20 search term obligation), and that he only realized the problem at the time he

6

communicated with attorney Shonder in or about the end of May 2019. (*See* Hearing Tr., at pp. 223-229, 530-531, 885-889, 1413-1414).

31. Defendant object to the Court's Ruling to the extent that it stands for the proposition that Mr. Duke testified that he did not use his brentduke@yahoo.com account for business purposes where the "personal" versus "business" distinction in the testimony clearly related to distinction between the Yahoo email he had used long before 21 Century existed and continued to use thereafter, and the 21 Century business email accounts hosted at GoDaddy after the creation of 21 Century in 2010.

32. Defendants object to the Court's Ruling (*see* Ruling, at p. 54) that there was a "trove" of "relevant" emails where the record evidence does not support such a finding. Moreover, there was no comparison in the record between what was produced in response to written discovery, including responsive ESI, and what was produced late in response to running the 20 search terms pursuant to the agreed ESI Protocol. Judge Johnston later acknowledges that Mr. Duke disclosed both of his email accounts to Ms. Liberman during her interview of him on May 29, 2014. (*See* Ruling, at p. 74, second paragraph).

33. Defendants object to the Ruling (*see* Ruling, at pp. 61, 92) because question of impeachment/credibility are reserved for the jury. Further, Mr. Duke's deposition testimony was that he did "not recall," rather than "no" to the questions about whether he saw "TM" or knew what it meant at time of July 2010 email.

34. Defendants object to the Ruling (*see* Ruling, at p. 67) because it misstates the testimony. Mr. Duke testified that the "Blue Pay" program had all "online sales," not in-store sales.

35. Defendants object to the Ruling (*see* Ruling, at p. 69) regarding Mr. Duke's understanding and recall of "TM" in July 2010 email because the Court improperly used this Hearing testimony to "impeach" his deposition testimony.

36. Defendants object to the Ruling (*see* Ruling, at pp. 81, 83) because there is no record support that there is or ever was a third tape.

37. Defendants object to the Ruling (*see* Ruling, at p. 85) because the record evidence shows that Mr. Duke lacked knowledge because he was never told by the former defense counsel about the 20 search term ESI protocol.

38. Defendants object to the Ruling (*see* Ruling, at p. 91) to the extent "responsive" is used to mean the 20 search terms *and* written interrogatories and document requests. Mr. Duke himself did not search for or produce the former because he was never told about the 20 terms. He did produce later based upon on directions from counsel. (*See e.g.,* PX 68 at 21c0630).

39. Defendants object to the Ruling (*see* Ruling, at p. 93) because there is no record support for the conclusion that Mr. Duke's testimony was "slippery").

40. Defendants object to the Ruling (*see* Ruling, at p. 93) because there is no record support that Mr. Duke has a "propensity to testify falsely," and that issue is for the fact finder.

41. Defendants object to the Ruling (*see* Ruling, at p. 94) because, consistent with the Court's findings, former defense counsel was not credible and the fact that the former defense counsel did not recall the occurrence does not establish its non-occurrence, especially where Mr. Leaven was providing self-serving testimony.

42. Defendants object to the Ruling (*see* Ruling, at p. 101) because the record evidence showed that the document was a draft and there was no evidence to the contrary. Thus, this document was not "critical" to the expert's report.

43. Defendants object to the Ruling (*see* Ruling, at p. 102) because there has been no showing that there was a non-production of "thousands" of responsive documents without

44. Defendants object to the Ruling (*see* Ruling, at p. 110) because the import of the variances in Mr. Duke's Declarations are credibility determination for the fact finder. Moreover, Mr. Duke's prior statements did not contradict the denials of Mr. Duke and Ms. Saraswat that they did not place Plaintiffs' trade name in 21 Century's meta data.

45. Defendants object to the Ruling (*see* Ruling, at p. 118 fn. 31) because it improperly attacks Mr. Duke credibility with respect to the date of the meeting when the former defense counsel did not remember that date, or the existence of other critical dates, and the allegedly "critical dates" Mr. Duke allegedly forgot are not identified by the Court.

46. Defendants object to the Ruling (*see* Ruling, at p. 120) because there is no such record evidence of a "half-cocked scheme" that was devised at the San Diego meeting, let alone one that Mr. Duke concocted.

47. Defendants object to the Ruling (*see* Ruling, at p.120) because there is no record evidence to support Court's finding about why Defendants sought to drop defamation claim.

48. Defendants object to the Ruling (*see* Ruling, at p.124) because this is an improper conclusion. The Court cites its own case, and it does not address this issue. None of the former defense counsel testified that Mr. Duke was untrustworthy, and two testified that he was trustworthy.

49. Defendants object to the Ruling (*see* Ruling, at 131 at fn. 36, 132) because the Court has usurped the fact finder's function by summarily rejecting Mr. Duke's testimony about "lol" comment in his email with Edmiston.

50. Defendants object to the Ruling (*see* Ruling, at p. 155) because there in not record evidence to support the conclusion that one email was "particularly damning."

51. Defendants object to the Ruling (*see* Ruling, at pp. 169, 173) because the references refer to the alleged deficient conduct of the "Defendants," which would include Mr. Duke – where the record evidence shows that only applies to the former defense counsels.

52. Defendants object to the Ruling (*see* Ruling, at p. 180) because there is inadequate record support for the Court's finding as to the reason Mr. Duke told his former attorneys about the GoDaddy emails.

53. Defendants object to the Ruling (*see* Ruling, at p. 187) because there is no record evidence that Mr. Duke eve had the orders ever explained to him.

54. Defendants object to the Ruling (*see* Ruling, at p. 192) because there is no record

support that Mr. Duke "hoodwinked" anyone, including the former defense counsel,

55. Defendants object to the Ruling (*see* Ruling, at p. 198) because there is no evidence that there are or were "thousands" or a "substantial amount" of *relevant* documents.

56. Defendants object to the Ruling (*see* Ruling, at pp. 200, 225) because there is no no record support that Mr. Duke was made aware of the facts, Orders, and obligations by his former defense counsel.

57. Defendants object to the Ruling (*see* Ruling, at p. 201) to the extent that it implies that this was Defendants' decision collectively, as opposed to that of the former defense counsel.

58. Defendants object to the Ruling (*see* Ruling, at p. 210) to the extent "falsely" is intended by the Court to mean that Mr. Duke knew his certification was false as opposed to allegedly failing to make reasonable inquiry.

59. Defendants object to the Ruling (*see* Ruling, at p. 218) because there is no record evidence that Mr. Duke was told of the 20 search term obligation, or that he realized Mr. Leavens did not understand web-based emails - despite being shown them.

60. Defendants object to the Ruling (*see* Ruling, at p. 222) because relevance cannot be determined yet.

61. Defendants object to the Ruling (*see* Ruling, at p. 226) because any purported actual prejudice has not been established, and in any event was not caused by Mr. Duke.

62. Defendants object to the Ruling (*see* Ruling, at p. 228) because finding of "substantially" not supported by the record evidence.

63. Defendants further object to the Ruling with respect to the issue of prejudice because Defendants' counsel specifically requested that the Court wait, before proceeding with Hearing on the Motion, so that whether prejudice occurred because of the production of additional documents and ESI could be actually determined as part of the Hearing – and not merely continue to be the subject of speculation. Indeed, to-date, Plaintiffs have not pointed to a single belatedly produced document establishing prejudice, despite now having them for more than one year.

64. Defendants object to the Ruling (*see* Ruling, at p. 230) because, in seeking Mr. Duke's review of this and other disclosures, the LSG attorneys did not specifically ask him, or

even direct his attention to, the "electronic records" part of the disclosure - which consisted of a single sentence within a large document. Moreover, Mr. Duke did not understand the reference to "electronic records" to mean that all his emails or the ESI were on these computers. (See Tr., at pp. 1524:13-1530:8; 1543:14-1546:2)

65. Defendants object to the Ruling (*see* Ruling, at pp. 231, 233) because the questions of intent and knowledge are for the fact finder to determine.

66. Defendants object to the Ruling (*see* Ruling, at p. 234) because the record evidence does not a finding that the alleged prejudice was "extraordinary." In fact, no such finding can be made because, as noted above, the Court should have waited until all of the additional documents and ESI were produced to allow for the parties and the Court to determine whether any actual prejudice has been suffered.

67. Defendants object to the Ruling (*see* Ruling, at 242 at fn. 64) because this constitutes an improper credibility determination that should be left to the fact finder, and which is not supported by the record evidence.

68. Defendants object to the Ruling (*see* Ruling, at p. 243) to the implication that Mr. Duke possessed knowledge or did not cooperate in his attorneys' efforts to figure out what happened. The record evidence supports the fact that he justifiably relied upon his attorneys' competence to tell him what he needed to do.

69. Defendants object to the Ruling (*see* Ruling, at p. 253) which again presumes an amount of prejudice without any review of the ESI/20 search term documents in GoDaddy. Indeed, the Court recognized that "over 23,000 GoDaddy documents that have yet to be produced, so it is unknown how many more critical documents exist."

70. Defendants object to the Ruling (*see* Ruling, at pp. 24, 26, 32, 58, 86, 128, 173 at fn. 47, 181, 217, 222) because the Court repeatedly attacks Mr. Duke's "candor," "untrustworthiness," "false" statements, lack of "honesty," and state of mind, where the record evidence does not support such findings and where such findings should be left for the fact finder to determine.

### IV. Additional Objections Based Upon The Conduct Of The Hearings

71. The Court erred by allowing counsel to improperly "impeach" Mr. Duke during his Hearing testimony, over Mr. Duke's counsel's objections, without first demonstrating that Mr. Duke had, during prior sworn testimony, answered a specific question that inconsistent or false in comparison to his Hearing testimony. (Hearing, pp. 401:11-405:6) The Court then improperly relied upon such alleged inconsistencies in its Opinion by finding that Mr. Duke testified falsely during his deposition testimony in this matter.

72. The Court erred by allowing counsel for Mr. Leavens to question Mr. Duke on matters protected by the attorney-client privilege, here Mr. Duke's meeting with his lawyers in San Diego, over Mr. Duke's counsel's objections. (Hearing, pp. 656:25-658:20) This Court then improperly relied upon that testimony in its Opinion with respect to its factual findings regarding that San Diego meeting.

73. The Court erred by allowing Plaintiff's counsel, over Mr. Duke's counsel objections, to question Mr. Leavens regarding Mr. Duke's defamation Counterclaim, and to admit into evidence one of the recordings that relates to that Counterclaim. (Hearing, pp. 971:11-976:18; 978:515). The Court then improperly relied upon that testimony in its Opinion as a basis for attacking Mr. Duke's credibility and candor.

74. The Court erred by sustaining Mr. Leavens' counsel's objections and refusing to allow Mr. Duke's counsel to fully examine Mr. Leaven regarding his financial ability to pay a sanction, which was and is directly relevant. (Hearing, pp. 1089:11-1090:24)

75. The Court erred in objecting, on its own, to Mr. Duke's counsel's question to Mr.

Gough, and sustaining its own objection to that question, regarding the Yahoo Chats at issue and what happened to them. (Hearing, p. 1502:6-17) The question was particularly relevant in light of the fact that this Court, during Mr. Gough's testimony, elicited Mr. Gough's undisclosed opinion testimony regarding that very same subject matter. The Court further erred by then allowing Mr. Gough to testify on the same subject matter that it barred from Mr. Duke's counsel by eliciting testimony from Mr. Gough, over Mr. Duke's counsel objection. (Hearing, p. 1503:2-25)

76. In addition, the Court erred in allowing Mr. Gough to provide undisclosed opinion testimony regarding Yahoo Chats, the Yahoo Chats at issue in this case, and what happened to the Yahoo Chats at issue in this case, by way of this Court's own questioning of Mr. Gough (Hearing, pp. 1496:9-1500:25; 1503:2-25) The Court then compounded those errors by relying upon that testimony from Mr. Gough in its Opinion.

Dated: February 2, 2021

      **Respectfully Submitted for Defendants**

      By: /S/Kevin B. Salam
          Attorney for Defendants

      Kevin B. Salam
      kevin@salamlaw.com
      120 N. LaSalle, Suite 2000
      Chicago, IL 60602
      312-606-8730 (ph.)
      312- 277-2539 (fax)

By: /S/Michael I. Leonard
    Attorney for Defendants

Michael I. Leonard
mleonard@leonardtriallawyers.com
Leonard Trial Lawyers, LLC
120 N. LaSalle, Suite 2000
Chicago, IL 60602
312-380-6559 (ph.)
312-264-0671 (fax)

## CERTIFICATE OF SERVICE

The undersigned, an attorney at law in the State of Illinois and counsel for Defendants, 21 Century Smoking, Inc. and Brent Duke (collectively, the "Defendants") in the above-captioned matter, hereby state that on February 2, 2021, I caused the forgoing document to be served upon all counsel of record by way of the Court's electronic filing system.

By: */S/Michael I. Leonard*