**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DR Distributors, LLC, | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | No. 12 CV 50324 |
| | ) | Judge Iain D. Johnston |
| 21 Century Smoking, Inc. and Brent Duke, | ) | |
| Defendants/Counterclaimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CB Distributors, Inc. and Carlos Bengoa, | ) | |
| Counterdefendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

If Dante were a judge, he would have placed fee litigation as an inner circle of judicial hell.

On January 19, 2021, the Court entered an order sanctioning Defendants and two of their former counsel for discovery violations. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839 (N.D. Ill. 2021). Sanctions included an award of reasonable attorneys' fees Plaintiff incurred litigating its motion for sanctions plus the work done on summary judgment motions that were derailed because of the discovery failures of Defendants and their former counsel. The Court directed Plaintiff to submit a fee petition, which has now been fully briefed. A ruling was delayed by one of former counsel's bankruptcy proceeding, but the automatic bankruptcy stay has now been lifted. The Court states no position on the collectability of this fee award in light of the bankruptcy.

For the following reasons, Plaintiff's motion for fees [450] is granted in part and denied in part. The Court awards fees totaling $2,526,744.76, to be apportioned as follows consistent with the January 19, 2021, sanctions order: defendant Brent Duke to pay 50% and the former defense counsel to pay the remaining 50%, with former defense counsel Thomas Leavens paying 80% of the 50% and former defense counsel Peter Stamatis paying 20% of that 50%. *See DR Distributors*, 513 F. Supp. 3d at 864.

In its fee petition, Plaintiff seeks fees totaling $3,991,138.77, consisting of fees actually paid by the plaintiff of $2,417,552.21, the recovery of discounts, credits and travel time that Plaintiff was never charged amounting to $312,028.40, plus an increase of $1,261,558.16 based on "rare and exceptional circumstances as illuminated by the scope of the Sanctions Parties' misconduct." Motion [450] at 2. In support of the motion, Plaintiff submitted affidavits from counsel, billing summaries, and billing statements. The Court received three responses to the motion, from Defendants and each of the two former defense counsel. None object to the hourly

rate charged by Plaintiff's counsel, but they do object to the reasonableness of the number of hours billed, and to any recovery beyond the amounts billed to and paid by Plaintiff.

## ANALYSIS

The usual method to determine a reasonable fee is multiplying the number of hours reasonably expended by a reasonable hourly rate, known as the lodestar method. *See Paz v. Portfolio Recovery Assocs.*, 924 F.3d 949, 954 (7th Cir. 2019). "[T]here is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). However, "that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* The burden falls on the party advocating for fees other than the lodestar calculation to convince the court that an adjustment is warranted. *See Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007). In this case, an additional presumption of reasonableness exists too. Plaintiff already paid the fees. A client's payment of a bill for attorneys' fees is evidence that the hourly rate, the level of detail in the billing statements, and the number of hours incurred is presumptively reasonable. *See Cintas Corp. v. Perry*, 517 F.3d 459, 469–70 (7th Cir. 2008) ("the best evidence of whether attorney's fees are reasonable is whether a party has paid them."); *Stark v. PPM America, Inc.*, 354 F.3d 666, 675 (7th Cir. 2004) ("We have previously stated that the best evidence of the market value of legal services is what people will pay for it."); *In re Synthroid Mkt'g Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more."); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999) ("If the bills were paid, this strongly implies that they meet market standards" including for level of detail provided); *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) ("the best guarantee of reasonableness is willingness to pay."). So, Defendants are fighting against two independent presumptions of reasonableness.

In determining the reasonableness of the hours expended, a court has broad discretion, and may strike vague or unjustified billing entries. *See Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014). When substantial fees are at stake, a court must address each of the opposing party's objections and provide a fulsome explanation of how it resolved each objection. *See REXA, Inc. v. Chester*, 42 F.4th 652, 674–75 (7th Cir. 2022). But a court need not "conduct a line-by-line review of the bills to assess the charges for reasonableness." *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010).

The party seeking fees bears the burden of establishing that it is entitled to fees and documenting the appropriate hours expended and hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). But "[o]nce a petitioning party provides evidence of the proposed fees' reasonableness, the burden shifts to the other party to demonstrate the award's unreasonableness.'" *Vega v. Chicago Park District,* 12 F.4th 696, 703 (7th Cir. 2021) (quoting *Wachovia Secs., LLC v. Banco Pamaericano, Inc.*, 674 F.3d 743, 759 (7th Cir. 2012)). Ultimately, the determination of the reasonable fee to award is within the discretion of the district court. *See Park v. City of Chicago*, 297 F.3d 606, 617 (7th Cir. 2002)

A. **Amounts Billed and Paid**

The Court first considers the reasonableness of the fees and costs Plaintiff was billed and paid. According to a declaration from Plaintiff's counsel, they spent 8,783.3 hours working on the summary judgment filings and sanctions issues, for which they billed and the plaintiff paid a total of $2,417,552.21. *See* Dkt. 450-3 (Declaration of Anthony J. Davis) ¶¶ 64–67, 85. The only challenge to counsel's declaration that the bills were paid is buried in a footnote in one of the response briefs, where it is presented as "an aside." Stamatis Response [465] at 9 n.6. Former defense counsel notes that Plaintiff has not identified *all* of the fees billed and paid, which "begs the question whether there is any outstanding receivable for amounts that have been billed, but not yet paid? And whether there has been any allocation of payments." *Id.* But counsel points out that he does "not suggest that there has been an intentional manipulation in the allocation of fees paid." *Id.* The assertion that Plaintiff allocated payments to the bills covered by the sanctions order while leaving unpaid other bills to enjoy the benefit of the presumption that paid bills are reasonable is speculative, undeveloped, unsupported by evidence, buried in a footnote, and will not be addressed further. *See, e.g., Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) (undeveloped arguments are forfeited); *Long v. Teachers' Retirement Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (arguments made in passing in footnotes are forfeited); *United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008) (unsupported arguments are forfeited). Because Plaintiff's payment of the bills is not seriously challenged, the billed rates, hours spent, and the detail of the billing records are presumptively reasonable.

Defendants attempt to rebut the presumption in numerous ways.[1] First, they argue that the presumption applies only when the party paying the bills is "sophisticated," and assert that Plaintiff DR Distributors' owner, Carlos Bengoa, is "hardly" sophisticated. Leavens Response [466] at 3 n.1. This is another speculative assertion buried in a footnote and unsupported by any argument or evidence. *Schaefer*, 839 F.3d at 607; *Long*, 585 F.3d at 349; *Tockes*, 530 F.3d at 633. In contrast to the unsupported assertion, publicly-available information suggests that Mr. Bengoa built CB Distributors from nothing into a multi-million dollar success. *See In re Marriage of Carlos Bengoa and Vickie Kuhl*, 2019 IL App (2d) 190119-U (Oct. 22, 2019). Remarkably, in their memorandum in support of the derailed summary judgment motion, Defendants themselves asserted that "Carlos Bengoa, was at all times *a sophisticated businessman*." Memorandum in Support of Motion for Partial Summary Judgment [214] at 3 (emphasis added). Moreover, the Court has personally interacted twice with Carlos Bengoa during settlement conferences. The Court has no doubt that Mr. Bengoa is a sophisticated businessperson.

Next, Defendants postulate that the presumption of reasonableness should not apply because Plaintiff knew that it would be reimbursed. Defendants contend that Plaintiff knew as early as April 14, 2018, that it would recover its fees as a sanction award. On that day, Plaintiff presented its motion for sanctions, during which the Court observed that the possible remedies

---

[1] Across the three response briefs, Defendants and former defense counsel present some of the same arguments, join in others' arguments, and on occasion present unique arguments. For ease and because it does not affect the analysis, the Court will for the most part refer to the arguments as having been brought collectively by Defendants.

for failing to produce ESI include "paying attorney fees." Dkt. 267 (Transcript of August 14, 2018, Hearing) at 44. The Court told counsel nothing more than what they already knew from Federal Rules of Civil Procedure 26(g)(3) and 37(a)(5), (b)(2) and (c)(1)(A). Following Defendants' logic, no party investigating another party's potential discovery violations would ever be entitled to the presumption that paid fees are reasonable because Rules 26 and 37 gave them notice that they might recover those fees. Defendants argue that Plaintiff also knew no later than June 4, 2019, that it would recover its fees because on that day, in response to a minute entry from May 31, 2019, *see* Dkt. 302, Plaintiff's counsel stated during a hearing that they had incurred $880,000 in fees through that date attributable to the motion for sanctions. *See* Dkt. 315 (Transcript of June 4, 2019, Hearing) at 45. The Court remarked that fees may be recoverable under Rule 37, *id*. at 55, but again, the Court merely told all counsel what they already knew from the Rules. Neither of those days involved the Court telling Plaintiff that it would be awarded fees or sanctions of any kind. Indeed, at the end of the evidentiary hearing on November 19, 2019, the Court noted that even it did not know yet how it would rule on the motion for sanctions. *See* Dkt. 365 (Transcript of November 19, 2019, Evidentiary Hearing) at 306. The Court's remarks that Rules 26 and 37 may allow for sanctions including attorneys' fees did not mark the end of the presumption that paid bills were reasonable.

Defendants contend that the presumption of reasonableness also does not apply because of the sheer number of hours Plaintiff's counsel billed. In his brief, Mr. Leavens contends that Plaintiff's counsel's 8,783.3 hours amount to an attorney working full-time for three years straight, which is "beyond eye-opening" and "should shock one's conscience." Leavens Brief [466] at 8. In his brief, Mr. Stamatis notes that Plaintiff's counsel billed more hours than there are in an entire year. Stamatis Brief [465] at 2. Counsel for Defendants also compare it to the number of hours they billed themselves. Mr. Leavens notes that Plaintiff billed 2,700 for summary judgment briefing while his firm billed just 520, yet he admits that does not include the hours of other former defense counsel. Leavens' Brief [466] at 10. And current defense counsel contend that they billed 1,932 hours total during their first year on the case, whereas during that same period Plaintiff's counsel billed 3,347 hours only for the work for which the Court is allowing them to recover fees. Defendants' Brief [461] at 3.

Defendants point the Court to no authority that would limit Plaintiff from recovering fees in excess of what defense counsel incurred. And given the facts of this case, imposing such a limit here would be unreasonable. The work Plaintiff's counsel undertook is far different from the work defense counsel undertook. Defendants' failure to timely produce ESI required far greater attention from Plaintiff's counsel than typical summary judgment briefing. For instance, Defendants' late production of documents the night before response briefs were due reasonably led Plaintiff to file a motion for leave to file an amended motion for summary judgment. *See* Dkt. 239. That March 2018 late production was just the first of a stunning number of revelations of discovery that Defendants failed to timely produce. When confronted, Defendants labeled the accusations as being a "red herring," "a road to nowhere," and that there was "no 'there' there," *see* Dkt. 249 at 21, all of which were not only false but also expanded the task Plaintiff's counsel faced. *See Vega*, 12 F.4th at 701 (court did not abuse its discretion taking into account that large fee award was due in part to opposing party's "scorched-earth litigation approach" that "play a role in inflating the time counsel spent on the case."). This road led not to a red herring but to smoking guns. For the evidentiary hearing, Plaintiff faced far greater work preparing for and

questioning mostly witnesses aligned with Defendants or defense counsel, some of whom the Court determined continued providing unbelievable testimony about the failure to produce ESI. And the Court is keenly aware of the time it and its staff poured into the discovery disputes that arose, including preparing for and presiding over the five days of evidentiary hearing. Had Defendants devoted more time to searching for and producing ESI and investigating the shortcomings in the production when raised by Plaintiff, any disparity between the hours each side incurred would be far less. *See Balcor*, 73 F.3d at 153 ("Walentas is in no position to complain that it induced Balcor to incur *large* legal costs—especially not when the lengthy discovery into the negotiating history was at Walentas's insistence."). Plaintiff possessed the burden of proof to support its sanctions motion. Because of Defendants' actions and inactions, Plaintiff was placed in the unenviable position of trying to establish what went wrong with Defendants' document productions. In contrast, Defendants knew what went wrong. But the jaws of life were needed to extract these facts from them. The parties possessed a knowledge imbalance. So, its unsurprising that Plaintiff expended more hours in an effort to understand the shambolic discovery mess created by Defendants. Moreover, in "reviewing a fee petition, a district court is tasked only with examining whether the rate and hours requested are reasonable; the total amount that the attorney stands to recover must not influence this determination." *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 640 (7th Cir. 2011).

Even though Defendants filed for summary judgment, Defendants also argue that Plaintiff's attorney time should be reduced because seeking summary judgment was unreasonable given the number of genuine issues of material fact that existed. In support, they cite this Court's comment in its sanction order on the number of genuine issues of material fact. *See DR Distributors*, 513 F. Supp. 3d at 863 n.2. But the Court's observation came *after* the filing of cross-motion for summary judgment, including Defendants' own decision to seek summary judgment. The context of the comment reveals that the Court was merely discussing any future motions for summary judgment, not opining on the reasonableness of each party's earlier decision to file motions for summary judgment. It was made at a time after which the Court became far more familiar with the evidence in this case than it was at the time of the earlier summary judgment filings. In addition, Defendants put Plaintiff in the position of seeking summary judgment before it even knew the universe of evidence, given Defendants' repeated failures to produce. Defendants also point out that when counting subparts, Plaintiff filed an excessive number of Rule 56.1 statements of fact, which unreasonably contributed to overall number of hours billed to prepare them. But Defendants' Rule 56.1 statements also included subparts. The common law doctrine of glass houses applies to both of Defendants' arguments. *See Laborers' Pension Fund v. King & Larsen Constr. Inc.*, No. 01 C 6855, 2001 U.S. Dist. LEXIS 16474, at *2 n.1 (N.D. Ill. Oct. 5, 2001) ("Those who live in glass houses surely ought to refrain from throwing stones.).

Next, Defendants contend that the hours Plaintiff's counsel incurred responding to two motions Defendants filed after the evidentiary hearing deserve "significant scrutiny" and should be "significantly reduced." Leavens Response [466] at 11. To repeat, Defendants are grumbling about the time Plaintiff spent responding to *two* post-hearing motions filed by Defendants, both of which the Court denied. The post-hearing motions consisted of one to reopen the evidentiary hearing, Dkt. 370, and one to supplement the record with a written expert opinion, Dkt. 384. Defendants contend that Plaintiff's counsel spent $200,000 litigating those matters, but do not

explain how Defendants calculated that sum. Defendants also do not point to any specific billing records that they contend consist of hours unreasonably incurred. Within their own motion to supplement, defense counsel claimed that they and their consultants and experts spent 250 billable hours themselves on a single issue raised in the post-hearing motions: rebutting the inference that Mr. Duke may have deleted his Yahoo Chats. *See* Motion to Supplement [384] at 5. In light of the significant efforts Defendants put into filing and supporting their post-hearing motions, it was not unreasonable for Plaintiff to expend significant efforts in response.

Defendants also contend that the presumption of reasonableness should not apply because the reasonableness of an attorneys' fees must be measured by Illinois Rule of Professional Conduct 1.5(a). Under that rule, a "lawyer shall not make an agreement for, charge, or collect an unreasonable fee . . .," listing a number of factors relevant to the reasonableness of a fee. But the cases upon which Defendants rely involve the enforceability of contracts between an attorney and his or her client, or other sections of 1.5 entirely, such as the section on fee sharing agreements. At bottom, as one of defendants' cases notes, "Rule 1.5 centers on the interests of the client." *Richards v. SSM Health Care, Inc.*, 311 Ill. App. 3d 560, 564 (1st Dist. 2000). Mr. Bengoa has raised no concerns about his contract with or the bills submitted by Plaintiff's counsel, even after the Defendants raised the issue of Rule 1.5 in their response briefs. In trying to decrease Mr. Bengoa's recovery of attorneys' fees he expended because of Defendants' misconduct, Defendants trot out a rule designed to protect Mr. Bengoa from unnecessary and unreasonable attorneys' fees. Wrongdoers should never attempt to stand in victims' shoes to minimize the consequences of their wrongdoing. Defendants' position is wholly unreasonable.

After considering Defendants' arguments, Mr. Bengoa's familiarity with the work his counsel have performed, the relevant caselaw, and the Court's own extensive familiarity with the proceedings in this case, the Court concludes that Defendants have not rebutted the presumption that the bills Mr. Bengoa paid are reasonable.

**B.     Scope of Work**

Next, Defendants argue that Plaintiff should be unable to recover for some of the work billed because it falls outside the scope of the work for which the Court awarded fees, or because specific time entries are too vague to confirm that they were within the scope of the work allowed.

First, Defendants contend that Plaintiff cannot recover for time entries that were fully redacted because Defendants and the Court cannot confirm that those entries fall within the scope of the work for which the Court is awarding fees. However, Plaintiff is not seeking to recover fees for the fully redacted entries. *See* Reply [469] at 11 (citing Moffit Declaration [470] ¶ 7). Defendants also take issue with "approximately" 49 entries that include partial redactions of work product. Defendants point the Court only to three of those entries: one from December 21, 2017 for legal research and reviewing date for the motion for summary judgment, one from February 3, 2018, for research for the motion for summary judgment, and one from January 29, 2019, for research involving B. Kos. Even with the work product redactions, it is clear from what remains and the dates of the entries that they are bills for work preparing the motion for summary judgment or motion for sanctions. In addition, the Court confirmed as much during an

in-camera review of the unredacted entries. Defendants have established no basis for excluding those bills.

Second, Defendants contend that Plaintiff should not recover fees for billing entries that contain language that is vague, or repetitive of other entries, or rote, or consist of block billing. For instance, they point to multiple entries that each contain phrases such as "assemble evidence and argument," or multiple other entries that contain some variation of "review defendant's late production of paper documents for purposes of Rule 37 motion for sanctions." They also fault Plaintiff for not tying the billing entries to the specific documents for which the Court is allowing fees. But it is clear from the language quoted and the entries cited, including the dates that the billed work was performed, that the billed hours relate to work for which the Court is awarding fees. Given the magnitude of Defendants' failure to produce discovery and the span of time over which those failures have been the sole focus of this litigation, it is unsurprising that the billing records contain repetitive descriptions. To the extent Defendants contend that the repetitive nature of entries suggests that Plaintiff's counsel spent too much time on particular tasks or issues, the presumption of reasonableness extends to the sufficiency of time descriptions. *See Medcom Holding Co.*, 200 F.3d at 520.

Third, Defendants object to hours spent preparing documents for hearings that were not among the documents or hearings for which the Court is allowing fees. Specifically, Defendants identify 75 hours of time spent responding to their motion to strike Plaintiff's response to its motion for summary judgment. But the Court specifically allowed fees related to Plaintiff' response, which is docket number 238. Defendants contend that 63 hours spent in response to its motion to transfer an evidentiary hearing to Judge Durkin also falls outside the scope of the fees being awarded. But the Court specifically allowed fees for the response, which is docket number 343. Defendants note three additional areas of work they contend fall outside the scope of the work for which the Court is allowing fees: work responding to Defendants' motion for leave to file a successive summary judgment motion, work for a settlement conference, and work performed in response to Defendants' attempt to dismiss their defamation counterclaim. The Court did not include Plaintiff's opposition to Defendants' motion for leave to file a successive summary judgment motion among the documents for which Plaintiff could recover fees—that was an expense Plaintiff would have incurred regardless of how the motion for summary judgment itself proceeded. Those fees of $15,180 (50.6 hours at $300 an hour) will be excluded. The purported settlement conference was actually a status hearing held August 20, 2019, to discuss the possible paths to take in light of the motion for sanctions, an anticipated evidentiary hearing, and Defendants' ongoing search for discovery. That one of the possible paths included an impromptu settlement conference does not take the status hearing outside the scope of allowable time. As for work related to Defendants' attempt to dismiss their defamation counterclaim, Plaintiff notes that the disputed entries—8.4 hours from December 2017 and 2.6 hours from June 2018—were from long before Defendants filed the motion to dismiss in October 2018 and were not related to it. It explains that the December 2017 work was for its motion for summary judgment, so those fees are allowed. The work from June 2018 came after the summary judgment briefs had already been stricken and Plaintiff does not explain how it related to the motion for sanctions, which was filed in March 2019. The $975 in fees for that work (2.6 hours billed at $375 an hour) will be excluded.

The Court will also reduce the fee award requested based on two other valid issues Defendants raised. First, they note that the entry from April 13, 2017, reads "Receipt and review of email from lead counsel and respond to same." At that time, the parties had just completed briefing Defendants' motion for leave to file a successive motion for summary judgment. It is not clear from the entry how the time spent on that e-mail relates to any of the work for which the Court is allowing fees, and therefore the fee award will be reduced by $70.00 for the .2 hours billed. *See* Dkt. 451-2 at 4. Second, Defendants note that on October 18, 2017, attorney Anthony Davis billed three hours' work at a rate of $395 an hour, even though Plaintiff's motion seeks to recover fees at a rate of only $300 an hour for Mr. Davis. Plaintiff does not address this discrepancy. The fee award will be reduced by $285.

Defendants argue that the Court should reduce the fees sought because of duplicate entries from January 24, 2018. Both were for time spent reviewing confidentiality designations and the pertinent local rules, but one entry is for 1.5 hours while the other is for .4 hours. The fact that the entries are worded identically does not mean that the work was not performed, and 1.9 total hours is not unreasonable. Those fees will be allowed. Defendants also contend that they should not be responsible for the costs incurred by Plaintiff's counsel Anthony Davis to travel from New Jersey for court hearings, or for the costs of Plaintiff's electronic research, which they argue is part of a firm's overhead. But they offer no argument or authority in support of their attempt to avoid Mr. Davis' travel costs, and no authority to support their attempt to avoid the costs of electronic research. In fact, the costs of electronic research have long been held to be recoverable under these circumstances. *See Matter of Continental Illinois Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). The travel and electronic research costs will not be excluded.

Finally, former defense counsel Leavens and Stamatis argue that they should not be liable for fees and costs incurred after they withdrew, and the Court's apportionment of the sanctions award should be readjusted for that reason and to more accurately reflect the degree of fault. But the Court already took such concerns into consideration, and they were the reason the Court apportioned the sanctions award in the first place. Moreover, although Leavens and Stamatis eventually withdrew, their conduct—and the consequences of their conduct—while still on the case remained the focus of days of evidentiary hearings and reams of briefs. The apportionment of sanctions shall stand.

## C. Discounts, Unbilled Travel Time, and Multiplier

Plaintiff's motion for fees seeks to recover not only the fees Plaintiff actually paid, but also seeks to recover discounts Plaintiff's counsel had offered Plaintiff, travel time they never billed Plaintiff, and a multiplier to compensate them for the "rare and exceptional circumstances" of this case. The Court found counsel's request to be so tenuous that it told Defendants and former defense counsel that no response was necessary. *See* Dkt. 453.

The additional compensation Plaintiff seeks would amount to a windfall and would fly in the face of the presumption upon which they rely, which is that paid bills are reasonable. The presumption cuts both ways, calling into question the reasonableness of bills not paid, or as in this case that the attorney and client agreed would never be billed in the first place. *See Vega*, 12 F.4th at 704 (hours not properly billed to one's client are also not properly billed to one's

adversary). The Court has already accounted for the rare and exceptional circumstances of this case by awarding sanctions. It awarded them under the cited rules to compensate Plaintiff for the costs and fees it actually incurred attributable to the conduct of Defendants and former defense counsel, and the amount Defendants and former defense counsel will pay are likely to deter others from engaging in similar discovery abuses. All but one of the cases Plaintiff cites supporting its requests for enhancements to the lodestar calculation involve fee-shifting statutes rather than an award of sanctions. The sole case involving sanctions, *Robbins & Meyers, Inc. v. J.M. Huber Corp.*, No. 01 CV 201, 2010 U.S. Dist. LEXIS 108562 (W.D.N.Y. Oct. 12, 2010), discusses a court's discretion to calculate a sanction award to deter others, but this Court has already concluded that the fees awarded—as well as the other sanctions imposed—will serve as a deterrent to others. *See DR Distributors*, 513 F. Supp. 3d at 864 ("The sanctions are likewise designed to deter the type of misconduct found in this order."). Plaintiff's request to recover discounts, unbilled travel time, and a multiplier is denied.

## D.    Ability to Pay

Former counsel Stamatis further argues that the Court should reduce the sanction award because the share allocated to him will be personally devastating. In support, he offers a declaration detailing his personal finances, and noting that his firm's malpractice insurer has already denied coverage for any sanction award. The Court empathizes with the hardship the sanctions award will impose on each of the sanctioned parties. However, all along the Court has expressed concern both with the sanctioned parties' ability to pay as well as Plaintiff's ability to collect any award. It encouraged the parties to minimize their risks by considering settlement discussions and to take other steps to curtail the already burgeoning billing of attorneys' fees. The anticipation of an award no doubt was a factor in one former counsel's decision to pursue bankruptcy. From the time litigation is initiated if not before, Rule 37 and the prospects of sanctions create an incentive for parties and counsel to meet their obligations, and the time to consider their potentially devastating effects is before engaging in conduct that fails to satisfy those obligations. The Court is fully aware of the consequences of its sanctions order, including forcing Mr. Leavens into bankruptcy and the reputational harm to Mr. Stamatis, who had an excellent reputation before this case. Those following the tribulations of this case will recall that before the Court entered the sanctions order, it previewed its decision under seal so that the parties could discuss settlement, which would have negated the entry of the sanctions order. For the reasons stated in its sanction order, sanctions are warranted and shall stand. In light of counsel's stated limited ability to pay, the parties remain free to attempt to resolve counsel's payment of fees on their own.

In summary, the Court reduces the request for an award of attorneys' fees for the allowed work by $16,510 and awards fees totaling $2,401,042.21.

## E.    Fees for Preparing Fee Petition

In addition to fees spent on the motions for summary judgment and for the filings and hearings related to the motion for sanctions, Plaintiff is entitled to recover fees spent on the fee petition—the dreaded fees incurred for chasing fees. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). However, only those fees that were reasonably incurred may

be recovered. *See Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988) ("fee petitions are marvels of misplaced ingenuity and thoroughness, . . . reinforcing our impression that lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue"). None of the parties take issue with either of those propositions. And Defendants and former defense counsel do not object to the hourly rates Plaintiff's counsel seek. Accordingly, the dispute is limited to the reasonableness of the number of hours spent.

Plaintiff seeks to recover attorneys' fees in the amount of $137,889.00 based on a total of 428.9 hours billed by four attorneys and one paralegal preparing the fee petition and supporting materials, reviewing the three separate responses by Defendants and former defense counsel, and preparing the reply brief. According to Plaintiff, about 56% of the work ($76,913.20) was spent on the fee petition, and 44% ($60,975.80) was spent reviewing the response brief of the Defendant and two separate response briefs from former counsel, as well as preparing the reply brief.[2] Also according to Plaintiff, invoices for all of this work were paid by Plaintiff. *See* Dkt. 487-1 (Declaration of Anthony J. Davis) ¶ 26.

Defendants again object to the sheer size of the fees sought. But as discussed earlier, paid bills are presumed reasonable, and it is undisputed that the invoices for the work Plaintiff's counsel performed on the fee petition and reply were paid. Defendants again take issue with vague or block-billed time descriptions, and argue that Plaintiff's counsel's billing records were overly complex, which required Plaintiff's counsel to spend an unreasonable amount of time on their fee petition. But the Court does not find Plaintiff's counsel's billing records to be out of the ordinary, or so complex that they required an unreasonable amount of effort to explain in the fee petition. The presumption of reasonableness extends to the time description in paid bills. *See In re Synthroid Mkt'g Litig.*, 264 F.3d at 722. Moreover, although the amount of fees is large, it involved the review of billing records from the years 2017–20 covering extensive litigation of Defendants' sanctionable conduct, and the fee award sought reasonably reflects the work involved.

However, some of the time that was billed and paid was for work outside the scope of the fees that Court allowed. As discussed earlier, in the fee petition, Plaintiff's counsel devoted more than a negligible effort to recover not only amounts billed and paid, but also amounts never billed or paid because of discounts counsel had offered Plaintiff, travel time counsel never billed, and enhancements to the lodestar calculation that Plaintiff's counsel sought for rare and exceptional circumstances. For the same reasons that awarding fees not billed or paid would be unreasonable, the finds that counsel's efforts to obtain such an award was unreasonable. The Court therefore excludes fees for that effort.

The question then becomes how to quantify the work spent asking to recover discounts, travel time, and lodestar enhancements. Defendants suggest awarding fees for only four pages of

---

[2] Defendants contend that about 64% of the work (273 hours) was spent on the fee petition and opening memorandum and about 36% (156 hours) was spent reviewing the response briefs and preparing the reply. Defendants seem to have achieved that computation by attributing only the bills from April 2021 to reviewing the response briefs and preparing the reply. But the fee petition was filed on February 22, 2021 and so all work from after that in February and March of 2021 would be attributable to reviewing the response briefs and preparing the reply.

the plaintiff's 22-page fee petition because the other 18 pages addressed issues that were undisputed or irrelevant, such as hourly rates or recovering discounts, travel time, and enhancements to the lodestar, without pointing to the specific pages. But more than just four pages raised disputed or potentially disputed issues, and by the Court's count about five pages discussed discounts, travel time, and enhancements. Alternatively, Defendants object to numerous billing entries because their descriptions include work on "potential enhancement," "enhancement factors," and similar descriptions. But Defendants seek to exclude all of the time for each of those entries, even though the descriptions make clear that the time includes work on non-enhancement issues such as analyzing and summarizing invoices, reviewing sample fee petitions, research on the reasonableness of fees, and drafting supporting declarations. Defendants make no attempt to estimate the total amount of time in those entries which was spent on researching or arguing for the recovery of discounts, travel time, and enhancements to the lodestar.

In contrast, Plaintiff reviewed the billing records to calculate an estimated range of fees attributable to its research and arguments for fees in excess of those billed. It concluded that three attorneys worked on that issue, they spent about 15% to 25% of their billed time on that issue, and their bills totaled $54,162. It then estimated that fees that were billed and paid and that are attributable to efforts to recover discounts, travel time, and enhancements fell within the range of $7,311.87 to $12,186.45. *See* Dkt. 487-1 (Declaration of Anthony J. Davis) ¶¶ 14–23.

The Court finds Plaintiff's to be the better approach given that focusing solely on page-counting assumes that the same amount of work went into drafting and supporting each page of the fee petition. As all writers know, sometimes the words blast onto the screen like they're shooting from a fire hose, but, at other times, the words trickle forth like they're seeping from a soaker hose. Having reviewed the fee petition and the time records for the work that went into researching and preparing it, and in an exercise of its discretion, the Court concludes that $12,186.45 is the best available estimate of the fees attributable to Plaintiff's efforts to recover discounts, travel time, and enhancements, and Plaintiff's requests for fees for litigating the fee petition will be reduced by that amount.

In addition to excluding time spent trying to recover discounts, travel time, and enhancements, Defendants offer three other arguments for reducing the fee award. First, Defendants argue that time spent on April 7 and April 10, 2021, analyzing the billing records of defense counsel Kevin Salam should be excluded because Mr. Salam's bills are irrelevant. But it was Defendants in their response brief in opposition to the fee petition who raised the number of hours defense counsel billed in an attempt to show that Plaintiff's counsel's time was unreasonable. *See* Dkt. 461 at 3 ("In that same period, Defendants' current counsel spent a total of 1,932 hours of lawyer time on the case, which includes *all* activities, even those unrelated to the activities for which the Court is allowing Plaintiffs to seek fees."). Given that Defendants raised the issue of Mr. Salam's bills, it was not unreasonable for Plaintiff to review the bills and respond to the argument.

Second, Defendants seek to exclude time Plaintiff's counsel spent preparing for a status hearing on February 17, 2021, because the hearing was set to discuss the production of documents, not the issue of sanctions or an award of fees. In fact, the Court did include an award

of fees among the topics set to be discussed during that status hearing, *see* Dkt. 447 at 2, and the issue was discussed, *see* Dkt. 452 at 39–41 (transcript of Feb. 17, 2021, hearing). Granted, an award of fees was not the sole topic addressed, but preparing for that status hearing was also not the sole task described in the time entries, which also included other work on the fee petition such as legal research. The time will not be reduced.

Finally, Defendants argue that the fees for litigating the fee petition should be apportioned. But as discussed earlier, the Court already provided an apportionment when it apportioned the sanction award as a whole.

In summary, the Court reduces the request for fees by $12,186.45 and awards $125,702.55 for litigating the fee petition.

## CONCLUSION

For the reasons given, the Court awards a total monetary sanction in the amount of $2,526,744.76, which includes $2,401,042.21 for fees incurred for the scope of work allowed plus $125,702.55 for litigating the fee petition.

Date: October 12, 2022          By: _____

Iain D. Johnston
United States District Judge

- 12 -