UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DR Distributors, LLC, | ) |
| | ) |
|     Plaintiff-Counterdefendants, | ) |
| | ) |
| v. | ) No. 12 CV 50324 |
| | ) Honorable Iain D. Johnston |
| 21 Century Smoking, Inc., and Brent Duke, | ) |
| | ) |
|     Defendants-Counterclaimants, | ) |
| | ) |
| v. | ) |
| | ) |
| CB Distributors, Inc., and Carlos Bengoa, | ) |
| | ) |
|     Counterdefendants. | ) |

### MEMORANDUM OPINION AND ORDER

### RULING

Plaintiff's motion to strike defendants' expert report, Dkt. 535, is granted. Defendants' motion to strike or, in the alternative, for leave to file a sur-reply, Dkt. 558, is granted in part and denied in part. The Court allows Defendants leave to file the sur-reply, which was attached to the motion. On the Court's own motion, under both its inherent authority and Federal Rule of Civil Procedure 37(b), Defendants and their counsel are sanctioned (jointly and severally) $6,000 total for violating this Court's January 19, 2021, sanctions order by "using any information not disclosed to Plaintiff by June 1, 2015." Dkt. 439, at 9. The sanction is payable

1

to the Clerk of Court for the District Court for the Northern District of Illinois and must be paid by February 13, 2023.

## FACTS

Satellite litigation of satellite litigation—that's the current status of this case. As frustrating as that situation may be, what's more maddening is Defendants' blatant violation of this Court's January 19, 2021, sanctions order. Dkt. 439. And even more maddening is that despite admitting to the facts establishing the violation, Defendants repeatedly argue that they didn't violate the order.

Defendants' colossal discovery errors resulted in this Court's 256-page discovery sanctions order. Dkt. 439; *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839 (N.D. Ill. 2021). Among the sanctions, this Court barred Defendants "from using any information not disclosed to Plaintiff by June 1, 2015" and "preclude[d] Defendants' expert witnesses from testifying that their opinions would not change had they considered the documents and information not disclosed before June 1, 2015." Dkt. 439, at 9; *DR Distribs.*, 513 F. Supp. 3d at 863.

Incredibly, after the sanctions order, Defendants suddenly identified 20 bankers' boxes of documents. That trove of documents was not the subject of the January 19, 2021, sanctions order. This revelation begot Plaintiff's second sanctions motion that is now more than fully briefed. Dkt. 497.

After Plaintiff filed the second sanctions motion, Defendants and their former defense counsel responded. Dkts. 530–33. As part of their response, Defendants

2

included a new expert report by Mr. Brian Brown. According to Defendants, the report's purpose was to contradict Plaintiff's "unsupported opinions and arguments" in the second sanctions motion. Dkt. 559, at 2. Plaintiff did not offer an expert opinion in support of the second sanctions motion.

The new expert report offers three opinions. All three opinions are based upon new analyses using documents *not* disclosed on or before June 1, 2015. The first opinion is essentially a reiteration of an opinion provided in 2016. But notably, the report states, "My prior opinion has not changed." Dkt. 544-1, at 216. The second and third opinions are new. Like the first opinion, these opinions are also based on new analyses conducted by the expert using documents Defendants unabashedly admit were *not* disclosed before June 1, 2015. Dkt. 559, at 5–6 ("The only new materials reviewed and relied upon were the Zen Cart Admin Log Produced by current defense counsel in the March 19, 2021 Production and a copy of the backup log Mr. Brown found in a set of backup server files he downloaded as part of his review of documents for his March 25, 2016 SEO Report."); Dkt. 544-1, at 220–21, 223, 225–26.

Plaintiff's initial response to this report was a motion to strike. Dkt. 535, at 3–5. But, additionally, in its reply, Plaintiff understandably blew a gasket. Among other things, Plaintiff noted that the report violated the Court's sanctions order barring Defendants from using information not disclosed before June 1, 2015, and barring experts from stating that their opinions had not changed after considering information not produced by June 1, 2015. Dkt. 554, at 32–8; Dkt. 439, at 9.

3

So, there's now a motion to strike expert opinions used in response to a second sanctions motion. In an attempt to stop the never-ending filings in this case, the Court ordered Plaintiff's motion to strike to be taken up with the briefing on the second sanctions motion. Dkt. 536.

Not to be outdone, however, more than a month after Plaintiff filed the reply brief, Defendants filed their very own motion to strike. Dkt. 558. In the alternative, Defendants argued that they should be allowed to file a sur-reply to what they perceived were new arguments raised in the reply. *Id.* at 2. Among other things, this filing functioned as a response to the motion to strike. *See* Dkt. 559 (Defendant's Memorandum in Support of Motion to Strike or on the alternative, Defendants' Sur-Reply).

So, now there are two separate satellite motions to a satellite motion. The Court has already explicitly warned the parties about wasting its time with filings. Dkt. 453 ("This is the final warning. This Court's patience is exhausted. The frivolous and unreasonable filings must end . . . Sanctions made payable to the Court will be imposed going forward."). Although Plaintiff and Defendants apparently have unlimited time and resources, the Court does not. And, in this latest round of filings, Defendants have not heeded this Court's multiple clear warnings.

Defendants' response brief, which attached and relied upon Mr. Brown's second report, plainly violates this Court's January 19, 2021, order. Any attempt to argue the contrary is simply gaslighting.

4

As to Mr. Brown's first opinion, after having reviewed information and conducting an analysis, he explicitly states, "My prior opinion has not changed." And here's what the Court's sanction order barred, among other things: "This bar precludes Defendants' expert witnesses from testifying that their opinions would not change had they considered the documents and information not disclosed before June 1, 2015." Dkt. 439, at 9; *DR Distribs.*, 513 F. Supp. 3d at 863. But, more importantly, this opinion—just like the second and third opinions—relies upon information not disclosed to Plaintiff by June 1, 2015. *Id.*

As to Mr. Brown's first, second, and third opinions, Defendants explicitly admit that he relied upon materials not disclosed by June 1, 2015. Here's the admission:

> Mr. Brown's new opinion relied on the same Zen Cart files that he had previously reviewed in preparing his March 25, 2016 SEO Report. These Zen Cart files were identified and produced to plaintiff during written expert discovery and depositions *at the end of 2015 and early 2016*. The only new materials reviewed or relied upon were the Zen Cart Admin Log produced by current defense counsel *in the March 19, 2021 Production* and a copy of the backup log Mr. Brown found in a set of backup server files he downloaded as part of his review of documents for his March 25, 2016 SEO Report.

Dkt. 559, at 5 (emphasis added).

Again, at the risk of being repetitive, the Court's sanction order stated, "Defendants are barred from using any information not disclosed to Plaintiff by

5

June 1, 2015." Dkt. 439, at 9. And, at the risk of stating the self-evident, "the end of 2015 and early 2016" as well as "March 19, 2021" are *after* June 1, 2015. It doesn't take Captain Obvious to know that this is the direction of time's arrow. *See Runkel v. City of Springfield*, 51 F.4th 736, 745 (7th Cir. 2022).

At a hearing and in a filing, Defendants claimed that Mr. Brown's report and their response brief did not violate the Court's order. At the hearing, counsel did not address either (1) the fact that Mr. Brown's order explicitly stated, "My prior opinion has not changed," or (2) that to reach the new opinions in his report, Mr. Brown admittedly relied upon information not disclosed to Plaintiff by June 1, 2015. Dkt. 549. After not addressing the clear issue head on, counsel asserted, "I don't believe we violated the Court's ruling in terms of him expressing an opinion that the new documents wouldn't change his opinion." Dkt. 549, at 15. In Defendants' filing, they again failed to address either of these points, while still claiming that the report did not violate the Court's order. Dkt. 559, at 2 n.1. Indeed, after admitting that Mr. Brown relied upon documents and information first produced at the end of 2015 and early 2016 and on March 19, 2021—nearly four years after June 1, 2015—Defendants simply stated that the purpose of the report was "to determine if plaintiff's unsupported opinion about the Zen Cart Log was correct. It was not done to further support Mr. Brown's earlier SEO Report opinions." Dkt. 559, at 5. Although that may have been the alleged purpose of the report, it is undisputed that the report itself was based on "information not disclosed to Plaintiff by June 1, 2015."

6

The only argument the Court can tease from Defendants' statements at the hearing and in their filing is that they were somehow operating under the belief that the January 19, 2021, sanctions order only applied when Defendants were disputing the merits of the case. To the extent that's Defendants' argument, it is patently meritless and sanctionable. The order is clear. This argument would read an exception into the order and would have the January 19, 2021, sanctions order include the following additional provision: "Defendants are barred from using <u>on the merits of the case</u> any information not disclosed to Plaintiff by June 1, 2015." But, like statutes, court orders are not interpreted to incorporate exceptions. *Glymph v. District of Columbia*, Cas No. 01-cv-1333, 2018 U.S. Dist. LEXIS 236457, at 14–15 (D.D.C. Apr. 17, 2018) (collecting cases); *see In re Ryan*, 629 B.R. 616, 626 (E.D. Wisc. 2021); *see also United States v. Wright*, 48 F.3d 254, 256 (7th Cir. 1995) (courts do not read exceptions into statutes). Moreover, this argument ignores a repeated underlying basis for the January 19, 2021, sanctions order. In that order, the Court specifically called out the pernicious practice of using documents and information in the middle of briefing when those documents and that information had not been previously produced. *DR Distribs.*, 513 F. Supp. 3d at 941, 956 (describing using undisclosed documents in summary judgment briefing as "dirty pool"). Defendants' reliance on Mr. Brown's report—that relies on information not previously disclosed—is just the latest variation of that pernicious practice.

Defendants and counsel were warned. They had an opportunity to respond. The response was meritless. Sanctions are necessary.

7

**REMEDY**

Because Mr. Brown's September 7, 2022, report and Defendants' response brief that relies upon that report plainly violate this Court's January 19, 2021, sanctions order, the report is stricken. The Court will also disregard Defendants' arguments in their response brief relying on the report. Instead of properly arguing against Plaintiff's allegedly unsupported lay opinion about the Zen Cart issue with facts and law, Defendants chose to flagrantly violate a court order. There must be consequences for that choice, especially after the Court has issued warnings.[1]

This Court has authority—both inherent and based on Rule 37(b)—to impose remedial sanctions for violating court orders.[2] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 758 (7th Cir. 2005); *Classic Amenities, Inc. v. Verbeke*, No. 00 C 3326, 2001 U.S. Dist. LEXIS 7465, at *5–6 (N.D. Ill. June 4, 2001); Fed. R. Civ. P. 37(b). Courts are authorized to *sua sponte* impose sanctions under both sources of authority. *Fuery v. City of Chicago*, 900 F.3d 450, 468 (7th Cir. 2018) (*citing Chambers*, 501 U.S. at 49); *Prudential Def. Sols., Inc. v. Graham*, Cas No. 20-11785, 2021 U.S. Dist. LEXIS

---

[1] One consequence is *not*, however, the Court's automatic acceptance of Plaintiff's arguments regarding the Zen Cart issue.

[2] This Court did not solicit a response from Plaintiff to Defendants' motion to strike or in the alternative for leave to file a sur-reply. The Court did so for numerous reasons. First, it doesn't need any more filings in this case. The docket sheet is pushing 600 entries. Second, the Court doesn't need any help determining when one of its orders is so flagrantly violated. Third, the Court has sufficient experience with counsel in this case to know that there is no end. Allowing Plaintiff to file a rejoinder to the sur-reply would likely cause Defendants to seek to file yet another document. Finally, if Plaintiff were allowed to file a response, it would only add to another round of briefing an attorneys' fee petition, and eventually cost Defendants more money. By shortcutting this issue *sua sponte*, the Court has saved Defendants additional monetary sanctions.

198699, at 27–28 (E.D. Mich. Oct. 15, 2021). Sanctions can be imposed when the actions are intentional, in bad faith, or fault exists. *Ramirez v. T&H Lemont, Inc.*, 845 F3d 772, 776 (7th Cir. 2016) (fault is "extraordinary poor judgment" or "gross negligence"); *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). But sanctions under Rule 37(b) only require negligence. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642–43 (7th Cir. 2011). Defendants' actions were intentional, so they easily overcome the fault and negligence standards, and are sufficient to warrant sanctions. Defendants used information they were explicitly prohibited from using.

Over 30 years ago, the cost of federal court time was estimated to be $600 per hour. *Dominguez v. Figel*, 626 F. Supp. 368, 374 (N.D. Ind. 1986). About 20 years ago, in *Maynard v. Nygren*, the Seventh Circuit affirmed a remedial sanctions order calculated at $500 per hour. 332 F.3d 462, 470 (7th Cir. 2003). Obviously, the cost of federal court time has only increased over the years. The Court conservatively estimates that it has spent at least ten hours addressing Defendants' motion and related filings.[3] So, to reimburse the Court for its time on Defendants' frivolous filing in clear violation of a court order, Defendants (and Defendants' counsel) are ordered to pay a total of $6,000.00 to the Court. This sanction is joint and severable. The sanction must be paid to the Clerk of the United States District Court for the Northern District of Illinois by February 13, 2023.

---

[3] Much to the consternation of my former partners but to the great appreciation of my former clients, I was a notorious underbiller, despite always billing and collecting north of 2000 hour per year.

## CONCLUSION

This case has monopolized far too much of the Court's time. The Court has issued warnings that have gone unheeded. Sanctions—including monetary—will continue to be entered as needed.

Entered: January 12, 2023  By:_____
Iain D. Johnston
U.S. District Judge